IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOCKSTAR TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-2020 (SLR) |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| CISCO SYSTEMS, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Counterclaim-Plaintiff, | ) | REDACTED - |
| | ) | PUBLIC VERSION |
| | ) | |
| v. | ) | |
| | ) | |
| BOCKSTAR TECHNOLOGIES LLC, | ) | |
| CONSTELLATION TECHNOLOGIES LLC, | ) | |
| ROCKSTAR CONSORTIUM US LP, | ) | |
| AND SPHERIX INCORPORATED, | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

## CISCO'S AMENDED ANSWER AND
## COUNTERCLAIMS TO BOCKSTAR'S COMPLAINT

OF COUNSEL:

John M. Desmarais
Paul Bondor
Michael P. Stadnick
Jonas R. McDavit
Ameet A. Modi
Karim Z. Oussayef
Dustin F. Guzior
Alex Henriques
Edward Terchunian
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

June 6, 2014 - Original Filing Date
June 13, 2014 - Redacted Filing Date

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOCKSTAR TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-2020 (SLR) |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| CISCO SYSTEMS, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Counterclaim- | ) | REDACTED - |
| Plaintiff, | ) | PUBLIC VERSION |
| | ) | |
| v. | ) | |
| | ) | |
| BOCKSTAR TECHNOLOGIES LLC, | ) | |
| CONSTELLATION TECHNOLOGIES LLC, | ) | |
| ROCKSTAR CONSORTIUM US LP, | ) | |
| AND SPHERIX INCORPORATED, | ) | |
| | ) | |
| Counterclaim- | ) | |
| Defendants. | | |

## CISCO'S AMENDED ANSWER AND
## COUNTERCLAIMS TO BOCKSTAR'S COMPLAINT

Cisco Systems, Inc. ("Cisco") answers Bockstar Technologies LLC's ("Bockstar")

Complaint ("Complaint") as follows:

### THE PARTIES

1.      Cisco lacks knowledge or information sufficient to form a belief about the

truth of the allegations in Complaint paragraph 1 and on that basis denies them.

2.      Cisco admits the allegations in Complaint paragraph 2.

### JURISDICTION AND VENUE

3.      Cisco admits that Bockstar purports to bring an action for patent

infringement.  Cisco states that the remaining allegations in Complaint paragraph 3 contain legal

conclusions that require no answer.  To the extent an answer is required, Cisco admits that the

Court has subject matter jurisdiction over this action, but denies that any factual or legal basis

exists for any of Bockstar's claims against Cisco in this action or that Bockstar is entitled to any

relief whatsoever from Cisco or this Court.

4.      Cisco admits that it is subject to personal jurisdiction in this district in this

action.  Cisco further admits that it has transacted business in the District of Delaware.  Cisco

denies any other or different allegations contained in Complaint paragraph 4.

5.      Cisco denies the allegations contained in Complaint paragraph 5.

6.      Cisco admits that venue is proper in this district.

## BACKGROUND

7.      Cisco lacks knowledge or information sufficient to form a belief about the

truth of the allegations in Complaint paragraph 7 and on that basis denies them.

8.      On information and belief, Cisco admits that Nortel filed for bankruptcy

protection in 2009 and that Nortel sold a portion of its patent assets to a partnership known as

"Rockstar Bidco LP."  Cisco further admits that, on information and belief, Rockstar Bidco LP

subsequently transferred some of those assets acquired from Nortel to a consortium of

technology companies calling themselves Rockstar Consortium US LP.  Cisco has insufficient

knowledge or information to admit or deny any other or different allegations contained in

Complaint paragraph 8 and denies any such allegations on that basis.

9.      Cisco lacks knowledge or information sufficient to form a belief about the

truth of the allegations in Complaint paragraph 9 and on that basis denies them.

**COUNT ONE**
**(INFRINGEMENT OF U.S. PATENT NO. 6,233,245)**

10.     Cisco incorporates by reference its answers to paragraphs 1-9 as if fully set forth herein.

11.     Cisco admits that, according to the records of the U.S. Patent and Trademark Office ("PTO"), on May 15, 2001, the PTO issued the '245 patent with Alan Stanley, John Chapman, and Hsiang-Tsung Kung as the named inventors.  Cisco denies the remaining allegations in the first sentence of Complaint paragraph 11.  Cisco admits that, on information and belief, Exhibit 1 to the Complaint appears to be a copy of the '245 patent.

12.     Cisco lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 12 and on that basis denies them.

13.     Cisco denies the allegations contained in Complaint paragraph 13.

14.     Cisco denies the allegations contained in Complaint paragraph 14.

15.     Cisco denies the allegations contained in Complaint paragraph 15.

**COUNT TWO**
**(INFRINGEMENT OF U.S. PATENT NO. 6,684,241)**

16.     Cisco incorporates by reference its answers to paragraphs 1-15 as if fully set forth herein.

17.     Cisco admits that, according to the records of the U.S. Patent and Trademark Office ("PTO"), on January 27, 2004, the PTO issued the '241 patent with Haldon J. Sandick, Kedarnath Poduri, and Matthew B. Squire as the named inventors.  Cisco denies the remaining allegations in the first sentence of Complaint paragraph 17.  Cisco admits that, on information and belief, Exhibit 2 to the Complaint appears to be a copy of the '241 patent.

18.     Cisco lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 18 and on that basis denies them.

3

19.     Cisco denies the allegations contained in Complaint paragraph 19.

20.     Cisco denies the allegations contained in Complaint paragraph 20.

21.     Cisco denies the allegations contained in Complaint paragraph 21.

**COUNT THREE**
**(INFRINGEMENT OF U.S. PATENT NO. 6,069,895)**

22.     Cisco incorporates by reference its answers to paragraphs 1-21 as if fully set forth herein.

23.     Cisco admits that, according to the records of the U.S. Patent and Trademark Office ("PTO"), on May 30, 2000, the PTO issued the '9895 patent with Siamack Ayandeh as the named inventor.  Cisco denies the remaining allegations in the first sentence of Complaint paragraph 23.  Cisco admits that, on information and belief, Exhibit 3 to the Complaint appears to be a copy of the '9895 patent.

24.     Cisco lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 24 and on that basis denies them.

25.     Cisco denies the allegations contained in Complaint paragraph 25.

26.     Cisco denies the allegations contained in Complaint paragraph 26.

27.     Cisco denies the allegations contained in Complaint paragraph 27.

**COUNT FOUR**
**(INFRINGEMENT OF U.S. PATENT NO. 5,732,080)**

28.     Cisco incorporates by reference its answers to paragraphs 1-27 as if fully set forth herein.

29.     Cisco admits that, according to the records of the U.S. Patent and Trademark Office ("PTO"), on March 24, 1998, the PTO issued the '080 patent with H. Earl Ferguson, Jeffrey Prince, Mike K. Noll, Randy Ryals, and Derek H. Pitcher as the named inventors.  Cisco denies the remaining allegations in the first sentence of Complaint paragraph

29. Cisco admits that, on information and belief, Exhibit 4 to the Complaint appears to be a copy of the '080 patent.

30. Cisco lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 30 and on that basis denies them.

31. Cisco denies the allegations contained in Complaint paragraph 31.

32. Cisco denies the allegations contained in Complaint paragraph 32.

33. Cisco denies the allegations contained in Complaint paragraph 33.

## COUNT FIVE
## (INFRINGEMENT OF U.S. PATENT NO. 6,636,508)

34. Cisco incorporates by reference its answers to paragraphs 1-33 as if fully set forth herein.

35. Cisco admits that, according to the records of the U.S. Patent and Trademark Office ("PTO"), on October 21, 2003, the PTO issued the '508 patent with Xuewen Li and Samuel Henry Christie, IV as the named inventors. Cisco denies the remaining allegations in the first sentence of Complaint paragraph 35. Cisco admits that, on information and belief, Exhibit 5 to the Complaint appears to be a copy of the '508 patent.

36. Cisco lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 36 and on that basis denies them.

37. Cisco denies the allegations contained in Complaint paragraph 37.

38. Cisco denies the allegations contained in Complaint paragraph 38.

39. Cisco denies the allegations contained in Complaint paragraph 39.

## COUNT SIX
## (INFRINGEMENT OF U.S. PATENT NO. 6,778,653)

40. Cisco incorporates by reference its answers to paragraphs 1-39 as if fully set forth herein.

41.     Cisco admits that, according to the records of the U.S. Patent and Trademark Office ("PTO"), on August 17, 2004, the PTO issued the '653 patent with Michel Kallas, James Michael Lyell, and Paul Spencer Dawkins as the named inventors.  Cisco denies the remaining allegations in the first sentence of Complaint paragraph 41.  Cisco admits that, on information and belief, Exhibit 6 to the Complaint appears to be a copy of the '653 patent.

42.     Cisco lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 42 and on that basis denies them.

43.     Cisco denies the allegations contained in Complaint paragraph 43.

44.     Cisco denies the allegations contained in Complaint paragraph 44.

45.     Cisco denies the allegations contained in Complaint paragraph 45.

## PRAYER FOR RELIEF

46.     Cisco denies that Bockstar is entitled to any relief, either as prayed for in its Complaint or otherwise.

## GENERAL DENIAL

47.     Cisco further denies each and every allegation contained in the Complaint to which Cisco has not specifically admitted, denied, or otherwise responded to herein.

## CISCO'S DEFENSES

48.     Cisco asserts the following defenses in response to the allegations of Bockstar's Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

## FIRST DEFENSE – FAILURE TO STATE A CLAIM

49.     Bockstar has failed to state a claim upon which relief may be granted.

**SECOND DEFENSE – PATENT INVALIDITY**

50.     Bockstar's purported claims for infringement of the '245, '241, '9895, '080, '508, and '653 patents are barred because the claims of those patents are invalid for failure to comply with the requirements of Title 35, United States Code, including at least §§ 101, 102, 103, and/or 112.

**THIRD DEFENSE – NON-INFRINGEMENT**

51.     Cisco does not infringe and has not infringed, directly, indirectly, contributorily or by inducement, any valid and enforceable claim of the '245, '241, '9895, '080, '508, and '653 patents.

**FOURTH DEFENSE – MARKING**

52.     Bockstar is barred in whole or in part from recovering damages under 35 U.S.C. § 287.

**FIFTH DEFENSE – GOVERNMENT SALES**

53.     Bockstar's claims for relief and prayer for damages are limited by 28 U.S.C. § 1498(a).

**SIXTH DEFENSE – EQUITABLE DOCTRINES**

54.     Some or all of Bockstar's claims are barred by one or more of the equitable doctrines of waiver, acquiescence, laches, estoppel (including without limitation equitable estoppel, prosecution history estoppel, and implied license by estoppel), and/or unclean hands.

**SEVENTH DEFENSE – EXHAUSTION/IMPLIED LICENSE**

55.     Bockstar's claims are barred, in whole or in part, by the doctrines of exhaustion and/or implied license.

## EIGHTH DEFENSE – LICENSE

56.     Some or all of Bockstar's claims are barred by Cisco's license to one or more of the patents-in-suit.

## NINTH DEFENSE – LACK OF STANDING

57.     Bockstar lacks standing to enforce one or more of the patents-in-suit.

## COUNTERCLAIMS

For its Counterclaims, Cisco alleges the following against Counterclaim Defendants Bockstar, Constellation Technologies LLC ("Constellation"), Rockstar Consortium US LP ("Rockstar"), and Spherix Incorporated ("Spherix"):

## PARTIES

1.     Cisco is a California corporation with its principal place of business located at 170 West Tasman Drive, San Jose, CA 95134.

2.     Bockstar is a Delaware limited liability company that purports to have its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite 250, Plano, TX 75024.

3.     Constellation is a Delaware limited liability company that purports to have its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway, Suite No. 250, Plano, TX 75024.

4.     Rockstar is a Delaware limited partnership that purports to have its principal place of business at Legacy Town Center I, 7160 North Dallas Parkway, Suite 250, Plano, Texas 75024.

5.     Spherix is a Delaware company that purports to have its principal place of business at 7927 Jones Branch Drive Suite 3125, Tysons Corner, Virginia 22102.

## RELATIONSHIP BETWEEN THE PARTIES

6.      Bockstar and Constellation are wholly owned subsidiaries of Rockstar.

7.      On information and belief, Bockstar and Constellation are shell entities that are merely a front for Rockstar and its agents.

8.      John Garland is the Vice President of patent licensing at Rockstar and the president of Constellation Technologies.

9.      David Sasso is Senior Licensing Counsel at Rockstar and the president of Bockstar.

10.     According to Spherix's November 19, 2013, 8-K SEC filing, on July 10, 2013, Spherix entered into an agreement with Rockstar pursuant to which Spherix purchased patents from Rockstar and promised, among other things, that "by August 2, 2013, [Spherix] shall enter into a written engagement with outside litigation counsel to initiate a patent litigation against at least one defendant within ninety (90) days of the Closing Date."  Exhibit 10.1 of Spherix's November 19, 2013, SEC filing is attached as Exhibit 24.

11.     On January 6, 2014, Bloomberg BusinessWeek published an interview with Spherix CEO, Anthony Hayes.  Mr. Hayes stated that Rockstar owns Spherix voting securities with a value of 60 million dollars plus an interest in licensing revenue generated by the Spherix's patents.  He asserted that Spherix obtained from Rockstar "industry standard essential patents on a 20 billion [dollar] space, and that's just for 2012, that's not counting years back and not counting years forward, so the addressable market is exceptionally large" and that Rockstar "took sixty million dollars' worth of our stock for this deal."  He stated that he was "very grateful to be partnering with Rockstar."

12.     According to Spherix's January 2014 Investor Presentation, Rockstar is Spherix's biggest shareholder, owns 28.47% of Spherix, and has transferred over 100 patents to

Spherix.  A copy of Spherix's January 2014 Investor Presentation is attached as Exhibit 25.

## NATURE OF THE ACTION AND JURISDICTIONAL STATEMENT

13.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and under the patent laws of the United States, 35 U.S.C. § 1 et seq.

14.     Bockstar, Constellation, and Rockstar have accused Cisco and/or Cisco's customers of infringing at least the following 29 United States Patents:  5,471,474 (the "'474 Patent") (attached hereto as Exhibit 1), 5,583,862 (the "'862 Patent") (attached hereto as Exhibit 2), 5,732,080 (the "'080 Patent") (Exhibit 4 to Bockstar's Complaint), 5,761,197 (the "'197 Patent") (attached hereto as Exhibit 3), 5,850,397 (the "'0397 Patent") (attached hereto as Exhibit 4), 5,959,990 (the "'990 Patent") (attached hereto as Exhibit 5), 6,069,895 (the "'9895 Patent") (Exhibit 3 to Bockstar's Complaint), 6,128,298 (the "'298 Patent") (attached hereto as Exhibit 6), 6,128,649 (the "'649 Patent") (attached hereto as Exhibit 7), 6,130,893 (the "'893 Patent") (attached hereto as Exhibit 8), 6,192,397 (the "'2397 Patent") (attached hereto as Exhibit 9), 6,233,245 (the "'245 Patent") (Exhibit 1 to Bockstar's Complaint), 6,321,253 (the "'253 Patent") (attached hereto as Exhibit 10), 6,373,923 (the "'923 Patent") (attached hereto as Exhibit 11), 6,496,519 (the "'519 Patent") (attached hereto as Exhibit 12), 6,584,118 (the "'118 Patent") (attached hereto as Exhibit 13), 6,636,508 (the "'508 Patent") (Exhibit 5 to Bockstar's Complaint), 6,684,241 (the "'241 Patent") (Exhibit 2 to Bockstar's Complaint), 6,704,326 (the "'326 Patent") (attached hereto as Exhibit 14), 6,778,653 (the "'653 Patent") (Exhibit 6 to Bockstar's Complaint), 6,816,496 (the "'496 Patent") (attached hereto as Exhibit 15), 6,845,389 (the "'389 Patent") (attached hereto as Exhibit 16), 6,901,048 (the "'048 Patent") (attached hereto as Exhibit 17), 7,154,879 (the "'879 Patent") (attached hereto as Exhibit 18), 7,564,895 (the "'4895 Patent") (attached hereto as Exhibit 19), 8,134,917 (the "'917 Patent") (attached hereto as Exhibit 20), 8,464,299 (the "'299 Patent") (attached hereto as Exhibit 21), RE40,999

(originally, U.S. Patent No. 6,111,876) (the "'999 Patent") (attached hereto as Exhibit 22), 6,650,618 (attached hereto as Exhibit 23) (the "'618 Patent") (collectively, the "Asserted Patents").

15.     The Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1332, 1337, 1338(a), 1367, 2201(a), and 2202.

16.     This Court has personal jurisdiction over Bockstar by virtue of its sufficient minimum contacts with this forum at least as a result of its incorporation under the laws of Delaware and the filing of its case against Cisco in this jurisdiction.

17.     This Court has personal jurisdiction over Constellation by virtue of its sufficient minimum contacts with this forum at least as a result of its incorporation under the laws of Delaware.

18.     This Court has personal jurisdiction over Rockstar by virtue of its sufficient minimum contacts with this forum at least as a result of its incorporation under the laws of Delaware.

19.     This Court has personal jurisdiction over Spherix by virtue of its sufficient minimum contacts with this forum at least as a result of its incorporation under the laws of Delaware and the filing of a patent suit against Cisco in this jurisdiction.  A copy of Spherix's Complaint against Cisco is attached as Exhibit 26.

20.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c).

## FACTS

21.     Prior to its dissolution in 2011, Nortel Networks Corporation was a large supplier of communications and data networking products and services.  Nortel Networks Corporation and its subsidiaries (collectively, "Nortel") sold communications and data networking products and services to a host of commercial and governmental customers,

including cable operators, wireline and wireless telecommunications service providers, Internet service providers, and educational institutions.

22.     By the time Nortel filed for bankruptcy in 2009, it had amassed approximately 8,500 U.S. and foreign patents and patent applications.  During its liquidation in 2011, Nortel packaged the vast majority of its patents and patent applications (approximately 6,000) for auction as a stand-alone patent portfolio.  Nortel described the Nortel patent portfolio as covering, among many other things, "nearly every aspect of telecommunications."  (Ex. 27 at 1.)

## NORTEL'S PARTICIPATION IN SETTING COMMUNICATIONS AND DATA NETWORKING STANDARDS

### THE STANDARD SETTING PROCESS

23.     Technical standards for communications and data networking technologies are usually developed through the efforts of standard development organizations ("SDOs"), whose membership includes industry participants, such as hardware manufacturers, software designers, and service providers.  The standards established by SDOs play a significant role in the development of communications and data networking technologies because they facilitate, for example, adoption of new technologies and the development of interoperable hardware.

24.     For example, IEEE 802.11 is a standard for wireless data networking that consumers in the U.S. use every day.  IEEE 802.11 sets forth specifications through which devices, such as smart phones, tablet personal computers, and notebooks can connect to a Wi-Fi network, regardless of the device's hardware manufacturer.  That standard is ubiquitous because consumers demand interoperable technology.

25.     SDOs promulgate policies and procedures that control the disclosure and licensing of patents held by standard setting participants that may read on standards under consideration.  Those policies and procedures are typically set out in each SDO's bylaws or

intellectual property rights policies ("IPR policies").

26.     IPR policies generally require participants to disclose patents that relate to the standards being considered by the SDO.  Those disclosures allow the SDO and its members to evaluate technologies with full knowledge of patent rights that may affect the industry-wide cost of adopting that technology as part of a new standard.

27.     At the time that a participant discloses patents that might relate to a standard being considered by an SDO, the IPR policy generally requires the participant to commit to provide licenses: (1) to all parties interested in implementing the industry standard, and (2) on fair and/or reasonable and non-discriminatory ("F/RAND") or royalty-free terms.

28.     In the event the patent holder will not commit to those licensing terms, participants in the standards development process have the option to design around the disclosed patent or select a different standard that does not read on the disclosed patent.

NORTEL'S PARTICIPATION IN SDOs AND<br>F/RAND OR ROYALTY-FREE LICENSING COMMITMENTS

29.     Before its bankruptcy, Nortel stated that it participated in "85 global, regional, and national standards organizations, forums and consortia, spanning IT and telecom," including many organizations in which Nortel held a leadership position.  (Ex. 28 at [14].)

30.     The SDOs in which Nortel participated included at least the Institute of Electrical and Electronics Engineers ("IEEE"), the International Telecommunications Union ("ITU"), the Internet Engineering Task Force ("IETF"), the 3rd Generation Partnership Project ("3GPP"), the Alliance for Telecommunication Industry Solutions ("ATIS"), the European Telecommunications Standard Institute ("ETSI"), the World Wide Web Consortium ("W3C"), the Telecommunications Industry Association ("TIA"), and the Broadband Forum.

31.     If the technologies allegedly covered by the Nortel patent portfolio

(whether developed in-house or by acquisition) were standardized and widely adopted, this would give Nortel power to constrain output and/or raise prices of products or services that implemented the standard, a power that the F/RAND commitments it voluntarily agreed to were intended to constrain.

32.     In accordance with the established policies of at least the above-mentioned SDOs in which Nortel participated, Nortel irrevocably committed to license on F/RAND or royalty-free terms at least 57 of the patents from the Nortel patent portfolio.

33.     In accordance with the established policies of at least the above-mentioned SDOs in which Nortel participated, Nortel irrevocably committed to license on F/RAND or royalty-free terms any patents from the Nortel patent portfolio essential to SDO standards.

34.     At all times relevant here, the IPR policies of SDOs in which Nortel participated required participants that owned standard essential patents ("SEPs") to offer licenses to any party interested in practicing the standard on F/RAND or royalty-free terms.

35.     Eleven versions of the Standards Board Bylaws for the IEEE, dated December 1999 through February 2013, are attached as Exhibits 29-39.  Each version of those bylaws provides that:  (1) "IEEE standards may include the known use of essential patents and patent applications provided the IEEE receives assurance[s] from the patent holder," and (2) the assurance provided by the patent holder should be either a disclaimer of enforcement against the standard or a commitment to provide a license on F/RAND terms to "an unrestricted number of applicants."  (Exs. 32-39 at Bylaw 6.)  The IEEE bylaws also provide that assurances are "irrevocable" until "the date of the standard's withdrawal."  (*Id.*).  The IEEE bylaws state that "[t]he Submitter [of any assurances] and all Affiliates (other than those Affiliates excluded in a Letter of Assurance) shall not assign or otherwise transfer any rights in any Essential Patent

Claims that are the subject of such Letter of Assurance that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in such Letter of Assurance." (*Id.*)

36.     Seven versions of the Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC, dated July 1999 through April 2012, are attached as Exhibits 40-46.  Each version of those guidelines generally provides that participants are: (1) required to disclose known patents and patent applications that relate to standards under consideration and (2) encouraged to commit, by declaration, to license SEPs on F/RAND or royalty-free terms. (*See e.g.* Ex. 40[1999] at §§ 2.4 and 2.5; Ex. 45[2007] at §§ 3 and 4.)  Those guidelines attach two forms to allow participants to file licensing declarations: (1) a specific licensing declaration with respect to specific standards and patents and (2) a general licensing declaration with respect to any of the participant's patents and patent applications that are covered by the participant's standard submissions. (*See* Ex. 46 at Annexes 2 and 3.)  Both licensing declarations require the declarant to offer licenses to "an unrestricted number of applicants." (*See id.*).

37.     The Common Patent Policy also states that "[i]n the event a Patent Holder participating in the work of the Organizations assigns or transfers ownership or control of Patents for which the Patent Holder reasonably believes it has made a license undertaking to the ITU/ISO/IEC, the Patent Holder shall make reasonable efforts to notify such assignee or transferee of the existence of such license undertaking. In addition, if the Patent Holder specifically identified patents to ITU/ISO/IEC, then the Patent Holder shall have the assignee or transferee agree to be bound by the same licensing commitment as the Patent Holder for the same patent." (*See id.* at 5).

38.     Five versions of the IPR policy for the IETF, dated March 1992 through March 2005, are attached as Exhibits 47-51.  Each version of that policy provides that participants are: (1) required to disclose known patents and patent applications that they own, directly or indirectly, and that relate to standards under consideration and (2) encouraged to commit to license SEPs on F/RAND or royalty-free terms.  (*See* Exs. 47 and 51 [1992 and 2005] at § 6.)

39.     Four versions of the IPR policy for the 3GPP, dated July 1999 through October 2007, are attached as Exhibits 52-55.  Two versions of the IPR policy for ATIS, dated January 2006 through February 2012, are attached as Exhibits 56-57.  Five versions of the IPR policy for ETSI, dated November 2000 through April 2013, are attached as Exhibits 58-62.

40.     Nortel and its subsidiaries participated in drafting portions of the 3GPP specification concerning IP Multimedia Subsystems ("IMS"), including, for example, section 7.2 "IMS Multimedia Telephony and Supplementary Services (IMSTSS)" of 3GPP Release 8.  (See Exhibit 63).  The 3GPP IPR policies require that participant companies, such as Nortel, be members of certain member organizations, such as ATIS and ETSI, which obligate members to disclose certain patents related to specifications and standards to which they have contributed.  On information and belief, Nortel made representations to ATIS and/or ETSI committing to license any of its patents that read on 3GPP IMS standards on F/RAND and/or royalty-free terms in connection with its participation in drafting the 3GPP IMS specifications.

41.     By specific Letters of Assurance ("LOAs") to each of the IEEE, ITU, and IETF, Nortel made at least 57 commitments to license SEPs on F/RAND or royalty-free terms that were later transferred to Counterclaim Defendants.  Exhibit 64 lists patents from the Nortel patent portfolio that Nortel believed were required to implement industry standards, the industry

16

standard technology that Nortel believed that the patents were required to implement, the SDO to which Nortel bound the patents to be licensed on F/RAND or royalty-free terms, the entity that currently owns the patent, and the Web address at which Nortel's LOA can be found.

42.     As documented in Exhibit 65, Nortel provided a letter of assurance for the '2397 patent with respect to IEEE standard 802.3.  IEEE 802.3 is the IEEE standard for Ethernet generally and standardizes many particular aspects of Ethernet.  Nortel agreed that "[i]n the event the [802.3] standard cannot be practiced without the use of the cited ['2397] patent, Nortel Networks Limited agrees, upon written request, to grant a non-exclusive license under such patent on a non-discriminatory basis and on reasonable terms and conditions."

43.     As documented in Exhibit 67, Nortel provided a letter of assurance for the '618 patent to the extent necessary to practice IEEE standard 802.17.  On information and belief, Nortel acted in accordance with the IEEE guidelines and agreed to either a disclaimer of enforcement against the standard or a commitment to provide a license on F/RAND or royalty-free terms.  802.17 is entitled "Resilient packet ring (RPR) access method and physical layer specifications."

44.     As documented in Exhibits 68-71, Nortel provided letters of assurance for the '496 and '519 patents with respect to ITU standards G.707, G.709, G.783, and G.798, relating to optical networks.  Nortel agreed that "[t]he Patent Holder is prepared to grant—on the basis of reciprocity for the above ITU-T Recommendation—a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use, and sell implementations of the above ITU-T Recommendations."

45.     As documented in Exhibit 72, Nortel provided letters of assurance for the '118 and '326 patents with respect to ITU standard G.7041, relating to optical networks.  Nortel

agreed that "[t]he Patent Holder is prepared to grant—on the basis of reciprocity for the above ITU-T Recommendation—a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use, and sell implementations of the above ITU-T Recommendations."

46.     As documented in Exhibits 73-75, Nortel provided letters of assurance for U.S. Patent Application No. 10/024,020, which issued as the '4895 patent, with respect to ITU standards G.993.2 and G.992.3.  G.993.2 and G.992.3 are standards relating to ADSL2 and VDSL2, used by service providers to deliver broadband internet service to residential subscribers.  Nortel agreed that "[t]he Patent Holder is prepared to grant—on the basis of reciprocity for the above ITU-T Recommendation—a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use, and sell implementations of the above ITU-T Recommendations."

47.     As documented in Exhibit 76, Nortel provided a letter of assurance agreeing to grant licenses to the '990 patent to the extent necessary to practice IEEE standards 802.3ac and 802.1q, relating to Virtual Local Area Networks ("VLANs").  Nortel agreed that "[i]n the event the [802.3ac and 802.1q] Standards are adopted and cannot be practiced without the use of the cited ['990] patent, Nortel Networks agrees upon written request to grant a non-exclusive license under such patent on a non-discriminatory basis and on reasonable terms and conditions."

48.     As documented in Exhibit 77, Nortel provided a letter of assurance agreeing to grant licenses to the '990 patent and U.S. Patent No. 6,111,876 to the extent necessary to practice IEEE standard 802.1ah, related to virtual local area networks ("VLANs").  U.S. Patent No. 6,111,876 was reissued as the '999 patent.  Nortel agreed "to the extent any

claims of either of [the '990 patent or '999 patent] is essential to practice the approved and

adopted IEEE 802.1ah Standard, Nortel Networks Limited declares its licensing position that it is

willing, upon written request, to make available non-exclusive licenses under such patents on a

non-discriminatory basis and under reasonable terms and conditions to comply with such

resulting issued IEEE 802.1ah Standard."

    49. As documented in Exhibit 78, Nortel provided letters of assurance

agreeing to grant licenses to U.S. Patent No. 6,111,876 to the extent necessary to practice IEEE

standard 802.1q, relating to VLANs.  U.S. Patent No. 6,111,876 was reissued as the '999 patent.

Nortel agreed that "[i]n the event the proposed standard is adopted and the standard cannot be

practiced without the use of the cited ['999] patent, Nortel Networks Corporation agrees upon

written request to grant a nonexclusive license under such patent on a nondiscriminatory basis

and on reasonable terms and conditions."

    50. By general LOAs to each of the IEEE, ITU, IETF, ATIS, ETIS, TIA, and

Broadband Forum SDOs, Nortel made general commitments to license on F/RAND or royalty-

free terms all of its patents that are essential to implement particular standards or, in the case of

the IETF, all of its patents that are essential to implement any IETF standard to which Nortel

contributed.  Exhibit 79 lists the SDOs to which Nortel made a general licensing commitment,

the standard(s) for which Nortel made the general licensing commitment, an excerpt of the

licensing commitment language, and the Web address at which Nortel's LOAs can be found.

    51. As documented in Exhibit 80, Nortel Networks made a commitment to

"grant a nonexclusive license to Nortel patent claims that are essential for implementation of an

existing IEEE 802.3 Standard on a nondiscriminatory basis and on reasonable terms and

conditions . . . ."  The technology for Ethernet Passive Optical Networks ("EPON") is an existing

802.3 Standard.

52.    As documented in Exhibit 81, Nortel Networks made the following commitment to the IETF:  "Nortel Networks may seek patent rights on technology described in a document which Nortel Networks contributes for use in IETF standards discussions or standards track specifications. If such patented technology is essential for the implementation, use, and distribution, of an IETF standard, Nortel Networks is willing to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, to the extent such technology is essential to comply with such IETF standard."

53.    Nortel employees had leadership roles in the IETF and, on information and belief, Nortel contributed to the IETF standards for RFC 4090, "Fast Reroute Extensions to RSVP-TE for LSP Tunnels," and RFC 4364, "BGP/MPLS IP Virtual Private Networks (VPNs)."

54.    On information and belief, Nortel also acquired patents from other companies that were encumbered by commitments to license on F/RAND or royalty-free terms. Discovery will show the full extent to which patents in the Nortel patent portfolio were bound to F/RAND or royalty-free licensing commitments.

55.    Nortel benefitted in numerous ways from having its technologies adopted by SDOs for inclusion in standards.  For example, standardization of Nortel's technologies by SDOs led to wide adoption of those technologies in the communications industry—with the use of those technologies required by all manufacturers and service providers that implement that standard.  Standardization also increased the size of the market available to Nortel as a developer of telecommunications equipment.

56.    Cisco products are regularly certified for compliance with industry standards.  For example, Cisco is a leader in the development of routers, which are certified for

20

compliance with a large number of standards created by the IEEE, the ITU, the IETF, and other

SDOs.  Indeed, many Cisco products are certified for compliance with dozens of different

standards created by dozens of SDOs.

57.     Industry participants, such as Cisco and its customers, who adopt an

industry standard set by an SDO, are intended third-party beneficiaries of F/RAND or royalty-

free licensing commitments that a patent holder makes to the SDO.

## DOCSIS AND PACKETCABLE ROYALTY-FREE LICENSING ENCUMBRANCES ON CERTAIN PATENTS IN THE NORTEL PATENT PORTFOLIO

58.     Nortel and/or its affiliates also committed to provide royalty-free licenses

to certain patents in the Nortel patent portfolio that concern the Data Over Cable Service

Interface Specification ("DOCSIS") standards and related PacketCable standards to Cable

Television Laboratories, Inc. ("CableLabs"), and gave CableLabs the right to grant royalty-free

sublicenses to implementers of the DOCSIS or PacketCable standards.

59.     CableLabs is a non-profit research and development consortium that is

dedicated to pursuing new cable communications technologies and helping its cable operator

members integrate those technical advancements into their business objectives.

60.     In 1998, CableLabs created a royalty-free pool for intellectual property

rights essential to the DOCSIS standards.  Companies that signed a DOCSIS License Agreement

("DOCSIS Licensors") granted CableLabs a non-transferable, worldwide, non-exclusive,

royalty-free license, with the right to sublicense, to all current and future patents owned by it or

its affiliates essential for compliance with current or future versions of DOCSIS ("DOCSIS

Standards").  In return, DOCSIS Licensors and their affiliates obtained from CableLabs a non-

transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the

right to license or sublicense to the extent necessary for compliance with the DOCSIS Standards.

61.     Cisco became a DOCSIS Licensor in 1998.  A copy of the DOCSIS License Agreement, dated October 1998 and signed by Cisco, is attached as Exhibit 82.

62.     LANcity Corp. ("LANcity"), an affiliate of Nortel, became a DOCSIS Licensor on July 2, 1998.  A copy of the DOCSIS License Agreement, dated July 2, 1998 and signed by LANcity, is attached as Exhibit 83.

63.     At the time LANcity became a DOCSIS Licensor, it had the right to license the '474 patent.

64.     Bay Networks ("Bay"), an affiliate of Nortel, became a DOCSIS Licensor prior to October 1, 1998.  A copy of a letter agreement between Bay and CableLabs whereby Bay agrees to sign the DOCSIS License Agreement and agrees to join the patent pool for DOCSIS Version 1.1, dated October 1, 1998 and signed by Bay, is attached as Exhibit 84.

65.     At the time Bay became a DOCSIS Licensor, it had the right to license the '197 patent.

66.     At the time LANcity and Bay Networks became DOCSIS Licensors, Nortel was an affiliate of LANcity and Bay Networks.

67.     As a result, Nortel contributed any patents that were necessary to comply with the DOCSIS standard to the PacketCable patent pool and was, in return, granted licenses to other necessary patents in the DOCSIS patent pool.

68.     At the time LANcity and Bay Networks became DOCSIS Licensors, Nortel had the right to license the '474, '197, '893, '253, and '298 patents.

69.     On information and belief, Nortel became a DOCSIS Licensor in or around 1998 and thus explicitly agreed to license its patents on a royalty-free basis.

70.     At the time Nortel became a DOCSIS Licensor, it had the right to license

the '474, '197, '893, '253, and '298 patents.

71.     Nortel held itself out as a DOCSIS Licensor starting at least as early as 1998.  In an October 14, 1998, letter to CableLabs, for example, Nortel equated itself with Bay Networks, who had already signed the DOCSIS license agreement by describing itself as "Nortel Networks (Bay Networks)."  Nortel also stated: "Nortel Networks, and the other Licensors, have set aside parochial interests and contributed their intellectual property to create a standard that would spawn a major new business for cable operators and a level play field for vendors."  A copy of the October 14, 1998, letter is attached as Exhibit 85.

72.     In the early 2000s, Nortel identified itself as a DOCSIS Licensor by advertising its products as having received DOCSIS certifications.  Copies of two such advertisements are attached as Exhibits 86 and 87.

73.     By becoming DOCSIS Licensors, Nortel, LANcity, and/or Bay Networks contributed at least the '474, '197, '298, '893, and '253 patents to the DOCSIS patent pool.

74.     By becoming a DOCSIS Licensor, Cisco was granted a license to the DOCSIS patent pool, including the '474, '197, '298, '893, and '253 patents.

75.     Cisco continues to be a DOCSIS Licensor in good standing today.

76.     As new versions of DOCSIS have been released, Cisco has been granted sublicenses that cover those new versions of DOCSIS pursuant to the terms of the 1998 DOCSIS license agreement.  Accordingly, Cisco is licensed to practice at least DOCSIS versions 1.0, 1.1, 2.0, 3.0, and 3.1.

77.     CableLabs also created a royalty-free pool for intellectual property rights essential to the PacketCable standards.  Companies that signed a PacketCable License Agreement ("PacketCable Licensors") granted CableLabs a non-transferable, worldwide, non-

exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by it or its affiliates essential for compliance with current or future versions of PacketCable ("PacketCable Standards").  In return, PacketCable Licensors obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense to extent necessary for compliance with the PacketCable Standards.

78.     Cisco became a PacketCable Licensor on May 2, 1999.  A copy of the PacketCable License Agreement, dated March 2, 1999 and signed by Cisco, is attached as Exhibit 88.

79.     LANcity became a PacketCable Licensor in or about 1998.  A copy of the PacketCable License Agreement, dated October 9, 1998, and signed by LANcity, is attached as Exhibit 89.

80.     On information and belief, at the time LANcity became a PacketCable Licensor, it had the right to license the '474 patent.

81.     On information and belief, Bay became a PacketCable Licensor in or about 1998.

82.     At the time Bay became a PacketCable Licensor, it had the right to license the '197 patent.

83.     Nortel Network Cable Solutions, Inc. ("Nortel Cable"), an affiliate of Nortel, became a PacketCable Licensor in or about 2000.  A copy of the PacketCable License Agreement, dated February 29, 2000, and signed by Nortel Cable, is attached as Exhibit 90.

84.     A copy of the PacketCable IPR Signatories from the CableLabs website is attached as Exhibit 91.

85.     At the time LANcity, Bay Networks, and Nortel Cable became PacketCable Licensors, Nortel was an affiliate of LANcity, Bay Networks, and Nortel Cable.

86.     As a result, Nortel contributed any patents that were necessary to comply with the PacketCable standard to the PacketCable patent pool and was, in return, granted licenses to other necessary patents in the PacketCable patent pool.

87.     At the time LANcity, Bay Networks, and Nortel Cable became PacketCable Licensors, Nortel had the right to license the '474, '197, '298, '893, and '253 patents.

88.     On information and belief, Nortel signed a PacketCable License in 1998 and thus explicitly agreed to license its patents on a royalty-free basis.  In the early 2000s, Nortel identified itself as a PacketCable Licensor by advertising its products as having received PacketCable certifications.  A copy of an advertisement from Nortel Networks from July 30, 2003, is attached as Exhibit 92.

89.     At the time Nortel became a PacketCable Licensor, it had the right to license the '474, '197, '298, '893, and '253 patents.

90.     By becoming PacketCable Licensors, Nortel, LANcity, and/or Bay Networks contributed at least the '474, '197, '298, '893, and '253 patents to the PacketCable patent pool.

91.     By becoming a PacketCable Licensor, Cisco was granted a license to the PacketCable patent pool, including the '474, '197, '298, '893, and '253 patents.

92.     Cisco continues to be a PacketCable Licensor in good standing today.

93.     As new versions of PacketCable have been released, Cisco has been granted sublicenses that cover those new versions.  Accordingly, Cisco is licensed to practice at

25

least PacketCable versions 1.0 and 1.5.

94.     Cisco's sells hardware and software that are certified for compliance with the DOCSIS and PacketCable Standards, including:

a.     Cisco Cable Modem Termination Systems ("CMTSs"),

b.     Cisco Cable Modems ("CMs"),

c.     Cisco Set-Top Boxes ("STBs"),

d.     Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

e.     Cisco Cable Cards, and

f.     Cisco Routers.

95.     Pursuant to the DOCSIS and PacketCable License Agreements, Cisco and its customers who purchase such products are sublicensed to any patent previously owned by Nortel or a Nortel affiliate to the extent a license to that patent is necessary to practice the DOCSIS and/or PacketCable Standards.

96.     According to the CableLabs website, www.cablelabs.com, among the Cisco customers that are CableLabs members are the following: ███████████ Cable One, Inc., ████████████████ Charter Communications, Inc., Suddenlink ("Cequel III"), and Time Warner Cable.  On information and belief, those CableLabs members are DOCSIS and PacketCable licensees and each is sublicensed to any patent previously owned by Nortel or a Nortel affiliate to the extent a license to that patent is necessary to practice the DOCSIS and/or PacketCable Standards.

97.     Nevertheless, Rockstar has asserted that the use of DOCSIS or PacketCable by Cisco and/or its customers infringes the '474, '197, '893, '253, and '298 patents.

98.     By representing itself as a "Licensor" to the DOCSIS and/or PacketCable

License Agreements, Nortel obtained the benefit of joining the DOCSIS and/or PacketCable patent pools.

99.     Nortel Networks and its subsidiaries benefitted from joining DOCSIS and/or PacketCable because they were able to develop, market, and sell products that were compatible with DOCSIS and/or PacketCable Standards.

## ROCKSTAR ACQUIRES THE NORTEL PATENT PORTFOLIO AND, TOGETHER WITH ITS SUBSIDIARIES AND PARTNERS, ASSERTS THEM AGAINST CISCO AND CISCO'S CUSTOMERS

100.     On January 14, 2009, Nortel filed for bankruptcy protection in the United States, Canada, and the United Kingdom.

101.     During bankruptcy proceedings, Nortel auctioned various business units and other assets.  The last major asset to be liquidated in the bankruptcy proceedings was Nortel's patent portfolio.

102.     The Nortel patent portfolio consisted of approximately 6,000 U.S. patents, foreign patents, and patent applications, and related to a wide range of technologies including wireless, wireless 4G, data networking, optical, voice, Internet, and semiconductors.

103.     A consortium of companies, including Apple and Microsoft, won the auction and acquired the Nortel patent portfolio, which included the Asserted Patents.

104.     When the consortium of companies acquired the Nortel patent portfolio from the Nortel bankruptcy estate, based on the terms of the bankruptcy sale order, the consortium assumed certain encumbrances that included commitments made to SDO and industry groups.  As a result, they were obligated to offer licenses in accordance with Nortel's F/RAND and royalty-free licensing commitments to SDOs, and the CableLabs DOCSIS and PacketCable agreements.

105.     After the consortium of companies won the auction for the Nortel patent

27

portfolio, some of the patents from the Nortel patent portfolio were transferred to Rockstar.

106.     In an interview with Wired magazine, published on May 21, 2012, John Veschi, the CEO of Rockstar, stated that Rockstar was a "separate" company from Apple, Microsoft, and the other member companies of the consortium, and that promises and commitments made by those member companies did "not apply" to Rockstar.  The *Wired* article is attached as Exhibit 93.

107.     In the same interview, Mr. Veschi stated that "[p]retty much anybody out there is infringing, I would think.  It would be hard for me to envision that there are high-tech companies out there that don't use some of the patents in our portfolio."

108.     Rockstar subsequently transferred some of the patents to its subsidiaries, Bockstar and Constellation, and to its partner, Spherix.  Through a campaign to enforce the Nortel patent portfolio, Rockstar, directly and through its subsidiary, Constellation, has accused several Cisco customers in the communications, cable and/or wireline industries of infringing certain patents obtained from the Nortel patent portfolio.

109.     Additionally, Rockstar, through its subsidiary Bockstar, filed this suit against Cisco, alleging that Cisco infringes certain patents obtained from the Nortel patent portfolio.

110.     Additionally, Rockstar's partner, Spherix, filed suit against Cisco directly, alleging that Cisco infringes certain patents Rockstar obtained from the Nortel patent portfolio and transferred to Spherix.  A copy of Spherix's Complaint is attached as Exhibit 26.

111.     Rockstar and Constellation have accused at least the following Cisco customers of patent infringement: Knology, Inc. ("Knology"), WideOpenWest Finance LLC a/k/a WOW! Internet, Cable, & Phone ("WOW"), ██████████████████ Cable

One, Inc. ("Cable One"), ███████████████████████████████ Cequel

Communications, LLC d/b/a Suddenlink Communications ("Suddenlink"), ██████████████

████████████, Charter Communications, Inc. ("Charter"), ████████████████████

██████████ ████████████████████████████ Time Warner Cable Inc. ("TWC"),

and Windstream Communications, Inc. ("Windstream") (collectively the "Known Accused

Customers").

     112.    Rockstar's and Constellation's allegations of patent infringement against

the Known Accused Customers are based on at least the following products and services:

    a.   Whole House DVR;

    b.   Optical Ethernet Services;

    c.   High-Speed Internet Services;

    d.   Switched Digital Video Services;

    e.   Video on Demand;

    f.   Digital Cable Television; and

    g.   Phone Services and e-MTAs.

     113.    Rockstar's and Constellation's allegations of patent infringement against

the Known Accused Customers are based on at least the following standards:

    a.   DOCSIS 2.0;

    b.   DOCSIS 3.0;

    c.   Packet Cable 1.0;

    d.   Packet Cable 1.5;

    e.   MoCA;

    f.   Ethernet, GigE, and 10GigE, specifically, on information and belief, as specified

by the IEEE 802.3 standard;

g.  Layer 3 VPN Services (BGP/MPLS), specifically, on information and belief, as specified by the IETF RFC 4364 standard;

h.  Resilient Packet Ring optical networks, specifically, on information and belief, as specified by the IEEE 802.17 standard;

i.  Virtual Local Area Networks ("VLANs"), specifically, on information and belief, as specified by the IEEE 802.1ah, 802.1ac, and/or 802.1q standards;

j.  IP Multimedia Subsystem ("IMS"), specifically, on information and belief, as specified by the G3PP, ATIS, and ETSI standards;

k.  Ethernet Passive Optical Networks ("EPON"), specifically, on information and belief, as specified by the IEEE 802.3 standard;

l.  ADSL, ADSL2, and VDSL, specifically, on information and belief, as specified by the ITU G.993.2 and G.992.3 standards;

m.  MPLS, specifically, on information and belief, as specified by the IETF RFC 4090 standard.

114.    On information and belief, the Known Accused Customers collectively use at least the following Cisco products to implement the accused products and services, or comply with the accused standards (collectively the "Implicated Cisco Products"):

a.  Cisco Cable Modem Termination Systems ("CMTSs");

b.  Cisco Cable Modems ("CMs");

c.  Cisco Set-Top Boxes ("STBs");

d.  Cisco Embedded Multimedia Terminal Adapters ("eMTAs");

e.  Cisco Cable Cards;

f.   Cisco Routers, including ISR, ASR (e.g., ASR9K), 7600 Series, and CRS
Routers;

g.   Cisco ONS 15xxx Series Multiservice Platforms;

h.   Cisco Switches, including Cisco ME 3400 and ME 3600 Series switches;

i.   Cisco Video Servers;

j.   Cisco Universal Session and Resource Manager ("USRM");

k.   Cisco Digital Subscriber Line Access Multiplexers ("DSLAMs"); and

l.   Cisco DSL Modems.

115.   Customers purchase the Implicated Cisco Products under terms and
conditions which also set forth the conditions under which Cisco is obligated to indemnify
claims for patent infringement.

116.   In response to Rockstar's and/or Constellation's allegations of
infringement, Known Accused Customers have asked Cisco for indemnification and/or
assistance.

### ROCKSTAR ASSERTS THAT KNOLOGY, WOW, CABLE ONE, SUDDENLINK, AND CHARTER BROADLY INFRINGE ITS "PATENT ESTATE"

117.   In patent assertion letters to Knology, WOW, Cable One, Suddenlink, and
Charter, Rockstar informed those companies that: (1) Rockstar owns thousands of patents and
patent applications, "most notably in communications and networking," (2) Rockstar believes
that they require a "license to [its] patents" or its "patent estate," and (3) Rockstar believes that
those companies offer "certain products and services that infringe patents owned by Rockstar."
(Exs. 93-98.)

118.   Similarly, Rockstar sent a patent assertion letter to TWC the day after
Constellation filed a patent infringement lawsuit against TWC.  In that patent assertion letter,

31

Rockstar informed TWC that Constellation "has a large portfolio of patents that are relevant to the telecommunications and cable industry," and that "Constellation believes that TWC has built the fundamental aspects of its business on inventions from the Nortel Family," including certain exemplary patents.  In that letter, Rockstar also invited TWC to participate in "licensing discussions for all or part of Constellation's portfolio."  (Ex. 99.)

119.    TWC objected to Rockstar's misleading and overly broad allegations in a response letter dated December 26, 2013.  (Ex. 100.)  In that letter, TWC also expressed disappointment that:  (1) Rockstar and Constellation filed a patent infringement lawsuit against TWC before discussing the patents-in-suit with TWC (especially with respect to any allegedly SEPs) and (2) Rockstar and Constellation unilaterally withdrew from any licensing negotiations.

120.    In its patent assertion letters, Rockstar identifies "exemplary patents that inform [its] opinion," but cautions the companies to "keep in mind that the [exemplary] patents [] are part of a much larger portfolio."  Rockstar also informs each company that it "has an affirmative responsibility to ensure that it has secured all necessary patent rights to sell the products and services listed above, *as well as others that might be infringing Rockstar's intellectual property*."  (Exs. 93-98 (emphasis added).)

121.    By those patent assertion letters, Rockstar vaguely accuses any number of each company's products and services of infringing a "patent estate" that consists of thousands of patents.

122.    Rockstar suggests that each company has the burden of implicating itself in patent infringement, apparently by sifting through thousands upon thousands of Rockstar's patents and "ensur[ing] that it has secured all necessary patent rights."  Rockstar further suggests that each company make those determinations while the size and composition of Rockstar's

patent portfolio is in flux. Rockstar constantly shifts patents to and among various wholly-owned subsidiaries and partners, so at any point in time the patent assignment records do not accurately reflect who owns what.

123.    Rockstar's patent assertion letters are bad faith threats comprised of baseless allegations that potentially implicate every product or service each company offers. Rockstar leaves it to each company to determine what patents Rockstar owns and implicate itself in infringement of specific patents.

124.    In those patent assertion letters, Rockstar either:  (1) knows but conceals which Rockstar patents are infringed by which specific products or services offered by each company or (2) does not know which Rockstar patents are infringed by which specific products or services offered by each company, but nonetheless accuses any number of products and services of infringing any number, if not all, of the patents from Rockstar's "patent estate."

125.    In either case, Rockstar has cast a broad patent infringement cloud over each company's products and services, including products and services that its suppliers, such as Cisco, provide.

<u>ROCKSTAR ASSERTS ITS PATENTS AGAINST CISCO'S CUSTOMERS, KNOLOGY AND WOW</u>

126.    Knology and WOW purchase the Cisco products under terms and conditions which also set forth the conditions under which Cisco is obligated to indemnify claims for patent infringement ████████████████████████████████████ ████████████████

127.    On March 13, 2012, Rockstar wrote Knology and stated that "our analysis reveals that Knology, Inc. is currently offering certain products and services that infringe patents owned by Rockstar."  As examples, Rockstar accused Knology High Speed Internet and

DOCSIS 3.0 of infringing the '474 and '197 patents.  A copy of Rockstar's March 13, 2012,
letter to Knology is attached as Exhibit 94.

128.    On October 29, 2012, Rockstar wrote WOW and stated that "our analysis
reveals that WOW and Knology, are currently offering certain products and services that infringe
patents owned by Rockstar."

129.    Rockstar's October 29, 2012, letter accused the following
"Technolog[ies], Product[s] and/or Service[s]" of infringing the '474 and '197 patents:

    a.    WOW! Digital TV,

    b.    WOW! Ultra TV,

    c.    WOW! Internet Xcite, Xpress, Xtreme, Xtreme System Turbo,

    d.    WOW! Essential Phone,

    e.    WOW! Advanced Phone,

    f.    DOCSIS 2.0, and

    g.    DOCSIS 3.0.

130.    On information and belief, WOW and Knology use the following Cisco
products to implement the Knology High Speed Internet, WOW! Digital TV, WOW! Ultra TV,
WOW! Internet Xcite, Xpress, Xtreme, Xtreme System Turbo, WOW! Essential Phone, and/or
WOW! Advanced Phone, compliant with DOCSIS 2.0 and/or DOCSIS 3.0:

    a.    Cisco Set-Top Boxes ("STBs"),

    b.    Cisco Cable Modems ("CMs"),

    c.    Cisco Cable Cards, and

    d.    Cisco Embedded Multimedia Terminal Adapters ("eMTAs").

131.    Rockstar's October 29, 2012 letter accused the following "Technolog[ies],

Product[s] and/or Service[s]" of infringing the '893 patent:

    a.    WOW! Essential Phone,

    b.    WOW! Advanced Phone,

    c.    WOW! Business Phone,

    d.    eMTA, and

    e.    Packet Cable 1.5.

    132.    On information and belief, WOW and Knology use the following Cisco products to implement the WOW! Essential Phone, WOW! Advanced Phone, and/or WOW! Business Phone, using eMTAs and/or compliant with PacketCable 1.5:

    a.    Cable Modems ("CMs") and

    b.    Cisco Embedded Multimedia Terminal Adapters ("eMTAs").

    133.    Rockstar's October 29, 2012 letter accused the following "Technolog[ies], Product[s] and/or Service[s]" of infringing the '253 patent:

    a.    WOW! Internet Xcite,

    b.    Xpress, Xtreme, Xtreme,

    c.    System Turbo,

    d.    WOW! Essential Phone,

    e.    WOW! Advanced Phone,

    f.    WOW! Business Phone,

    g.    eMTA, and

    h.    Packet Cable 1.0.

    134.    On information and belief, WOW and Knology use the following Cisco products to implement WOW! Internet Xcite, Xpress, Xtreme, Xtreme, System Turbo, WOW!

Essential Phone, WOW! Advanced Phone, and/or WOW! Business Phone using eMTAs and/or compliant with PacketCable 1.0:

      a.      Cisco Cable Modems ("CMs"), and

      b.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs").

135.    A copy of Rockstar's October 29, 2012, letter is attached as Exhibit 95.

<u>ROCKSTAR ASSERTS ITS PATENTS AGAINST CISCO'S CUSTOMER,</u> █████

136.    ████ purchases Cisco products under terms and conditions which also set forth the conditions under which Cisco is obligated to indemnify claims for patent infringement.



137.    On March 13, 2012, Rockstar wrote ████████████████ and stated that "our analysis reveals that ████████ is currently offering certain products and services that infringe patents owned by Rockstar." As examples, Rockstar accused ████ High-Speed Internet Service, DOCSIS 2.0, ████████████████, and DOCSIS 3.0 of infringing the '474 and '197 patents. A copy of Rockstar's March 13, 2012, letter to ███ is attached as Exhibit 103.

138.    On information and belief, ████ uses Cisco CMs and eMTAs to implement the ████ High-Speed Internet and Wideband/Broadband Services, compliant with DOCSIS 2.0 and/or 3.0.

139.    On information and belief, Rockstar later accused the following technologies, products, and/or services of infringing the '298, '893, '253, and '0397 patents:

      a.      Cable Modems,

      b.      eMTAs,

      c.      eRouters,

      d.      Edge Routers,  and

e.     CMTS equipment.

140.    On information and belief, ███ uses Cisco CMs, eMTAs, Routers, and CMTSs to implement the technologies, products, and services accused of infringing the '474, '197, '298, '893, '253, and '0397 patents.

141.    On August 2, 2013, ███ wrote a letter to Cisco concerning Rockstar's assertion against ███ stating that Rockstar had accused ███ of infringing the '474, '197, '298, '893, '253, and '0397 patents for using Cisco devices including CMs, eMTAs, eRouters, edge routers, and CMTS equipment.  ███ requested that Cisco indemnify ███ for Rockstar's claims of patent infringement.

ROCKSTAR ASSERTS ITS PATENTS AGAINST CISCO'S CUSTOMER, CABLE ONE

142.    Cable One purchases Cisco products under terms and conditions which also set forth the conditions under which Cisco is obligated to indemnify claims for patent infringement. ██████████████████████████████████ ████████

143.    On March 13, 2012, Rockstar wrote Cable One and stated that "our analysis reveals that Cable ONE, Inc. is currently offering certain products and services that infringe patents owned by Rockstar."  As examples, Rockstar accused Cable One's Cable One High Speed Internet, DOCSIS 2.0, Cable One High Speed Internet with Elite and Preferred services, and DOCSIS 3.0, as allegedly infringing the '474 and '197 patents.  A copy of Rockstar's March 13, 2012, letter is attached as Exhibit 96.

144.    On information and belief, Cable One uses Cisco CMTSs to implement Cable One's Cable One High Speed Internet and Cable One High Speed Internet with Elite and Preferred services, compliant with DOCSIS 2.0/3.0, OpenCable (Tru2way), Packet Cable 1.5, and/or eRouter technology.

37

145.     On March 1, 2013, Cable One notified Cisco that Rockstar accused it of patent infringement and that Cable One believed that certain of the equipment and processes identified by Rockstar, such as CMTS equipment, were provided by Cisco.  Cable One requested assistance and reserved the right to seek indemnification.

<u>ROCKSTAR ASSERTS ITS PATENTS AGAINST CISCO'S CUSTOMER,</u> █████████

146.     █████████ purchases Cisco products under terms and conditions which also set forth the conditions under which Cisco is obligated to indemnify claims for patent infringement. ████████████████████████

████████████████████████

████████████████████████

████████████████████

147.     On March 13, 2012, Rockstar wrote █████████ and stated that "our analysis reveals that ████████████ is currently offering certain products and services that infringe patents owned by Rockstar."  As examples, Rockstar accused Whole House DVR and MOCA of infringing the '879 patent, and █████████ High Speed Internet Service and DOCSIS 3.0 of infringing the '474 and '197 patents.  A copy of Rockstar's March 13, 2012, letter to █████████ is attached as Exhibit 111.

148.     On information and belief, █████████ uses Cisco STBs to implement Whole House DVR, using MOCA and Cisco CMTSs to implement the █████████ High Speed Internet Service, compliant with DOCSIS 3.0.

149.     On July 31, 2012, █████████ informed Cisco that Rockstar's March 13, 2012, letter "appears to implicate products which █████████ purchased from [Cisco] as a Time Warner Cable Inc. affiliate, and . . . Cisco will be expected to indemnify [█████████] against all such claims."  A copy of █████████ July 31, 2012, letter to Cisco is attached as

Exhibit 112.

ROCKSTAR ASSERTS ITS PATENTS AGAINST CISCO'S CUSTOMER, SUDDENLINK

150.    Suddenlink purchases Cisco products under terms and conditions which also set forth the conditions under which Cisco is obligated to indemnify claims for patent infringement. ████████████████████████████████████

████████

151.    On March 13, 2012, Rockstar wrote Suddenlink, stating that "our analysis reveals that [Suddenlink] is currently offering certain products and service that infringe patents owned by Rockstar."  As examples, Rockstar accused Suddenlink High Speed Internet, Suddenlink Business Internet, and DOCSIS 3.0 of infringing the '474 and '197 patents.  A copy of Rockstar's March 13, 2012, letter to Suddenlink is attached as Exhibit 97.

152.    On information and belief, Suddenlink uses Cisco CMTSs and Routers to implement Suddenlink High Speed Internet and Business Internet, compliant with DOCSIS 3.0.

153.    Suddenlink subsequently informed Cisco that it believed Cisco was a vendor of the accused equipment and requested assistance.

ROCKSTAR ASSERTS ITS PATENTS AGAINST CISCO'S CUSTOMER, ████████

154.    ████████ Cisco products under terms and conditions which also set forth the conditions under which Cisco is obligated to indemnify claims for patent infringement.



155.    On March 13, 2012, Rockstar wrote ████████ and stated that "our analysis reveals tha ████████. is currently offering certain products and services that infringe patents owned by Rockstar."  As examples, Rockstar accused ████████ Service and Ethernet over optical transport of infringing the '519, '496, '118, and '326 patents. A copy of Rockstar's March 13, 2012, letter to ████████ is attached as Exhibit 115.

156.    On information and belief, Rockstar's assertions against ███████████

███ Service and/or Ethernet over optical transport are based on ITU G.7041, G.707, G.709,

G.783, and/or G.798 standards.

157.    On information and belief, ███████ uses Cisco ME 3600X Series

Ethernet Access Switches to implement ███████████ Service and Cisco ONS 15xxx

Series Multiservice Platforms to implement Ethernet over optical transport services.

158.    On May 4, 2012, ███████ informed Cisco that it "believe[d] the

claims in the [March 13, 2012] letter related specifically to standard Cisco equipment purchased

by ███████ , including but not limited to Cisco's 15-xxx series" and requested

indemnification ████████████████████████████ A copy of ███████

May 4, 2012, letter to Cisco is attached as Exhibit 116.

159.    On September 6, 2012, Rockstar wrote ███████ again and stated that

"███████ is currently offering certain products and services that infringe patents in Rockstar's

patent portfolio, which today consists of ~4,000 US patents and pending applications related to

telecommunications and networking services."  Rockstar additionally accused ███████

Managed IP VPN Service of infringing the '862 patent, ███████ Business Ethernet Services

of infringing the '999 patent, and ███████████ Services of infringing the '2397

patent.  A copy of Rockstar's September 6, 2012, letter to ███████ is attached as Exhibit

117.

160.    On information and belief, ███████ uses Cisco products, such as

Cisco ISR and ASR Routers to implement ███████ Managed IP VPN Service, compliant

with IEEE 802.1ah and/or 802.1q, Cisco ME 3600X Series Ethernet Access Switches to

implement ███████ Business Ethernet Services, compliant with RFC 4364, and Cisco ISR

and ASR Routers to implement ████████████ Services, compliant with IEEE 802.3.

161.    Bockstar now claims to own the same '496, '118, and '326 patents that Rockstar asserted against █████ (*See* D.I. 18, Exhibit A).

## ROCKSTAR ASSERTS ITS PATENTS AGAINST CISCO'S CUSTOMER, CHARTER

162.    Charter purchases Cisco products under terms and conditions which also set forth the conditions under which Cisco is obligated to indemnify claims for patent infringement. ████████████████████████████████████

████████

163.    On March 13, 2012, Rockstar wrote Charter stating that "our analysis reveals that Charter Communications, Inc. is currently offering certain products and service that infringe patents owned by Rockstar."

164.    Rockstar's March 13, 2012, letter accused Charter TV Multiroom DVR service and MOCA of infringing the '879 patent and Charter Business Optical Ethernet Service and VLAN of infringing the '999 and '990 patents.

165.    On information and belief, Charter uses Cisco Switches to implement Charter Business Optical Ethernet Service and VLAN technology.

166.    On information and belief, Rockstar's assertions against VLAN are based on the IEEE 802.1ah, 802.1ac, and 802.1q standards.

167.    Rockstar's March 13, 2012, letter also accused other services offered by Charter using Cisco products, specifically GigE, Charter Business Fiber Internet, and 10GigE of infringing the '2397 patent.

168.    On information and belief, Charter uses the following Cisco products to implement Charter Business Fiber Internet, compliant with GigE and/or 10GigE:

a.      Cisco Routers, including CRS-3, ASR9K, and 7600 series routers, and

41

b.      Cisco Switches, including ME3400 and ME3600 series switches.

169.    On information and belief, Rockstar's assertions against GigE, Charter Business Fiber Internet, and 10GigE are based on the IEEE 802.3 standard, which includes specification for GigE and 10GigE.

170.    Rockstar's March 13, 2012, letter also accused Charter Internet Service and DOCSIS 3.0 and 2.0 of infringing the '474 and '197 patents.

171.    On information and belief, Charter uses the following Cisco products to implement Chart Internet Service complaint with DOCSIS 2.0 and/or 3.0:

a.      Cisco Cable Modem Termination Systems ("CMTSs"),  and

b.      Cisco Cable Modems ("CMs").

172.    A copy of Rockstar's March 13, 2013, letter to Charter is attached as Exhibit 98. On November 8, 2013, Rockstar emailed Charter stating "please find 3 additional Rockstar patents that are used with the indicated Charter service and products."  A copy of Rockstar's November 8, 2013, email to Charter is attached as Exhibit 119.

173.    Rockstar's November 8, 2013, email accused Charter Business Level 3 VPN Service (BGP/MPLS) of infringing the '862 patent.

174.    On information and belief, Rockstar's assertions against Charter Business Level 3 VPN Service (BGP/MPLS) are based on one or more IETF standards, including RFC 4364, titled "BGP/MPLS IP Virtual Private Networks (VPNs)."

175.    On information and belief, Charter uses Cisco CRS and 7600 Series Routers and Cisco ME 3400 Series Switches to implement Charter Business Level 3 VPN Service (BGP/MPLS), compliant with RFC 4364.

176.    Rockstar's November 8, 2013, email also accused Charter Phone Service

and Charter supplied MTA's of infringing the '893 patent.

177.   On information and belief, Charter uses Cisco CMTSs and CMs to implement Charter Phone Service.

178.   Rockstar's November 8, 2013, email also accused Charter Phone Services, Charter Internet Services (PacketCable 1.5 and E-MTAs) of infringing the '253 patent.

179.   On information and belief, Charter uses Cisco CMTSs and CMs to implement the Charter Phone Services and Charter Internet Services.

180.   Despite asserting the '999 patent against ███████ and Charter in 2012 and asserting the '990 patent against Charter in 2012, Rockstar now claims that Spherix owns the '999 and '990 patents. *See* D.I. 20 at n. 7.

181.   According to Spherix's April 2014 Investor Presentation, Spherix acquired many of its patents from Nortel who "contributed to most international standards committees, including IEEE; IETF; ITU; 3GPP." According to the presentation, Spherix's "patent portfolio includes standard essential patents" relating to "aspects of IEEE standards 802 and virtual LAN (VLAN) tagging on a network." A copy of the Spherix's April 2014, Investor Presentation is attached as Exhibit 120.

ROCKSTAR ASSERTS ITS PATENTS AGAINST CISCO'S CUSTOMER, ███████

182.   ███████ purchases the Cisco products under terms and conditions which also set forth the conditions under which Cisco is obligated to indemnify claims for patent infringement. ████████████████████████████████████ ████████

183.   On June 15, 2012, Rockstar wrote ███████ and stated that "our analysis reveals that ██████████████████ is currently offering certain products and services that infringe patents owned by Rockstar." As examples, Rockstar accused

███████ services ██████████████████████████████████████

██████████████████ of infringing the '474, '197, '893, '2397, and '253 patents.  A copy

of Rockstar's June 15, 2012, letter to ███████ is attached as Exhibit 122.

       184.    On information and belief, ██████████ uses at least Cisco CMTSs to

implement ████████████████████████████████████████

█████████████ technologies.

**ROCKSTAR ASSERTS ITS PATENTS AGAINST CISCO'S CUSTOMER,** ███████

       185.    ████ purchases Cisco products under terms and conditions which also set

forth the conditions under which Cisco is obligated to indemnify claims for patent infringement.

███████████████████████████████████████████

███████████████████████████████████████████

████

       186.    On September 28, 2012, Rockstar wrote ████ and stated that "our analysis

reveals that ███████████ is currently offering certain products and services that infringe patents

owned by Rockstar."  As examples, Rockstar accused ████ of infringing the '862 patent through

its provision of Layer 3 VPNs and of infringing the '297 and '4985 patents through its provision

of ADSL2.  A copy of Rockstar's September 28, 2012, letter to ████ is attached as Exhibit 124.

       187.    On information and belief, Rockstar's assertions against ADSL2 are based

on the ITU standard G.992.3, titled "Asymmetric digital subscriber line transceivers 2 (ADSL)."

       188.    On information and belief, ████ uses Cisco products, such as Cisco

Routers, to implement Layer 3 VPN technologies, products, and/or services to its customers.

**ROCKSTAR BRINGS A PATENT SUIT AGAINST CISCO'S CUSTOMER, TWC**

       189.    TWC purchases Cisco products under terms and conditions which also set

forth the conditions under which Cisco is obligated to indemnify claims for patent infringement.



190.    On December 11, 2013, Rockstar assigned the '649, '299, '048, '917, '879, '389, '618, and '4895 patents to Constellation.

191.    On the same day, Constellation brought suit against TWC for alleged patent infringement of the '649, '299, '048, '917, '879, and '389 patents.  A copy of Constellation's complaint against TWC ("Constellation's TWC Complaint") is attached as Exhibit 125.

192.    Constellation has since served infringement contentions against TWC. The cover pleading for Constellations' infringement contentions is attached as Exhibit 126.

193.    Constellation's infringement contentions accused TWC's switched digital video, video on demand, and IP cable television instrumentalities of infringing the '649 and '299 patents.

194.    On information and belief, TWC uses Cisco STBs, Cisco Video Servers, and Universal Session and Resource Manager ("USRM") to implement switched digital video services, video on demand, and/or IP cable television.

195.    Constellation's infringement contentions accused TWC's s IP multimedia subsystem ("IMS") instrumentalities of infringing the '389 patent.

196.    On information and belief, Constellation's infringement contentions against TWC's IMS instrumentalities are based on IMS, as standardized by various 3GPP Releases.

197.    On information and belief, TWC uses Cisco's eMTAs and Routers to implement TWC's IMS instrumentalities.

198.    Constellation's infringement contentions accused TWC's MPLS instrumentalities of infringing the '048 and '917 patents by using Fast Reroute technology.

199.    On information and belief Constellation's infringement contentions against TWC's use of Fast Reroute are based on TWC's alleged implementation of Fast Reroute, as described in IETF standard 4090, titled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels."

200.    On information and belief, TWC uses Cisco Routers to comply with MPLS.

201.    Constellation's infringement contentions accused TWC's Ethernet Passive Optical Networks ("EPON") and whole-house entertainment networks of infringing the '879 patent.

202.    On information and belief, Constellation's infringement contentions against TWC's use of EPON are based on EPON as standardized by the IEEE 802.3.

203.    On information and belief, TWC uses Cisco's STBs to implement the whole-house entertainment networks.

204.    On January 21, 2014, TWC informed Cisco of Constellation's Complaint and provided notice to Cisco pursuant to the indemnification provisions ████████████

████████████████    A copy of TWC's January 21, 2014, letter to Cisco is attached as

Exhibit 127.

## ROCKSTAR BRINGS A PATENT SUIT AGAINST CISCO'S CUSTOMER, WINDSTREAM

205. Windstream purchases Cisco products under terms and conditions which also set forth the conditions under which Cisco is obligated to indemnify claims for patent infringement. ████████████████████████████████

████████████████████████████████████████

████████████████████████████

206. On December 11, 2013, Rockstar assigned the '879, 917, '923, '618, and '4895 patents to Constellation.

207. On the same day, Constellation brought a patent suit against Windstream Communications ("Windstream"), alleging infringement of the '879, '917, '923, '618, and '4895 patents.

208. Constellation accused Windstream's ADSL and VDSL internet services of infringing the '923 and '4895 patents.

209. Upon information and belief Windstream uses Cisco DSL Modems and Digital Subscriber Line Access Multiplexers ("DSLAMs") to implement DSL services.

210. Constellation accused Windstream's Resilient Packet Ring optical networks of infringing the '618 patent.

211. Upon information and belief, Windstream uses Cisco ONS 15xxx Series Multiservice Platform to implement its Resilient Packet Ring optical networks.

212. Constellation accused Windstream's use of MPLS of infringing the '917 patent.

213. Upon information and belief, Windstream uses Cisco routers to comply with MPLS.

214.    A copy of Constellation's Complaint against Windstream is attached at Exhibit 129.

215.    Constellation has since served infringement contentions against Windstream.  The cover pleading for Constellations' infringement contentions against Windstream is attached as Exhibit 130.

216.    On information and belief, Counterclaim Defendants have asserted their patents against other Cisco customers besides the Known Accused Customers.

217.    Counterclaim Defendants' allegations of infringement, threats of litigation, and lawsuits have cast a cloud of uncertainty over Cisco's business requiring the declaratory relief sought in its Counterclaims.

218.    Counterclaim Defendants have refused to enter into negotiations with the Known Accused Customers with respect to Asserted Patents unless those entities execute non-disclosure agreements.

219.    Counterclaim Defendants' strategy of requiring non-disclosure agreements has concealed the scope of Counterclaim Defendants' assertions and further cast a cloud of uncertainty over Cisco's business requiring the declaratory relief sought herein.

220.    These activities by or on behalf of Rockstar, Bockstar, Constellation, and Spherix create an immediate, definite, concrete, and substantial dispute regarding the alleged infringement by Cisco and Cisco's customers of patents in the portfolios of Rockstar, Bockstar, Constellation, and Spherix.

### WHILE ASSERTING ITS PATENTS AGAINST CISCO AND ITS CUSTOMERS, ROCKSTAR AND ITS WHOLLY OWNED SUBSIDIARIES BREACHED THEIR F/RAND AND ROYALTY-FREE LICENSING OBLIGATIONS

221.    After receiving Rockstar's assertion letters, some of Cisco's customers opened a dialogue with Rockstar in an attempt to learn more about the patent portfolio and, if

necessary, to negotiate a license to portions of the portfolio.

222.     Rockstar demanded that each Cisco customer execute a non-disclosure agreement before Rockstar would agree to engage in discussions or provide additional information about its assertions.  The non-disclosure agreements imposed onerous restrictions on the ability of Cisco's customers to disclose discussions with Rockstar to third-parties.  In some cases, Cisco's customers were prohibited from disclosing the substance of licensing negotiations to any third party for any purpose whatsoever.  As a result, Cisco's customers were impeded or prohibited from seeking information about the role that Cisco's products in their networks were asserted to have played in the alleged infringement or from seeking assistance and indemnification based on any theories that Rockstar provided under NDA.

223.     Some of Cisco's customers declined to execute Rockstar's proposed agreement and were consequently excluded from meaningful licensing negotiations, even with respect to SEPs that Rockstar claimed to own.

224.     Rockstar threatened to file or did file patent infringement actions against Cisco's customers based on the following alleged SEPs:  the '2397, '497, '519, '118, '326, '4895,'879, '862, '990, '999, '618, '048, '917, '389 patents (the "Asserted Alleged SEPs").

225.     On information and belief, Rockstar required parties to execute non-disclosure agreements so that Rockstar could conduct its improper licensing campaign in secrecy, and therefore reduce the risk of it becoming more widely known that Rockstar was violating its F/RAND and royalty-free obligations.  In particular, if parties could not disclose the terms on which Rockstar offered to license SEPs, it would be difficult for other companies Rockstar accused of infringing to detect Rockstar's breach of its F/RAND obligations.

226.     Rockstar and/or wholly-owned subsidiaries and instrumentalities of

49

Rockstar have repeatedly accused Cisco's customers of patent infringement.  Cisco has

attempted to engage Rockstar in negotiations on behalf of its customers.  An October 25, 2013,

letter from Cisco asking Rockstar to negotiate directly with Cisco is attached as Exhibit 131.

However, Rockstar and/or its wholly-owned subsidiaries and instrumentalities have refused to

negotiate with Cisco regarding a license for Cisco and its customers for any of its patents,

included the asserted SEPs.

227.    Cisco agrees to be bound by any final, non-appealable judgment

determining F/RAND or royalty-free licensing terms for any SEP that is valid, enforceable, and

infringed by Cisco, provided such license fully protects Cisco's direct and indirect customers.

<u>Ownership of Rockstar Asserted Patents</u>

228.    As described above, Rockstar has insisted that Cisco and its customers

infringe at least the '474, '862, '197, '397, '990, '298, '649, '893, '2397, '253, '923, '519, '118,

'326, '496, '389, '048, '879, '4895, '917, '299, '999, and '618 patents, and has demanded that

each pay for a license to those patents.

229.    During the discussions set forth above, Rockstar represented that it was

the owner and/or had the authority to negotiate licenses in connection with all of the patents in its

portfolio.  Rockstar, to this day, continues to communicate with one or more of Cisco's

customers in an effort to license the entire portfolio of patents.

230.    Constellation alleges that it is now the assignee of one or more of the

patents that were originally included in the Rockstar portfolio, and that it owns all rights title,

and interest in those patents, including at least the '474, '862, '197, '9895 '649, '893, '253, '389,

'048, '879, '917, '299, '4895, and '618 patents.

231.    Bockstar alleges that it is now the assignee of one or more of the patents

that were originally included in the Rockstar portfolio, and that it owns all rights title, and interest in those patents, including at least the '245, '895, '241, '653, '508, '080, '118, '241, '326, and '496 patents.

232. On information and belief, Constellation and Bockstar are shell entities that are merely fronts for Rockstar and its agents. For example, as described above, John Garland is the Vice President of patent licensing at Rockstar and the president of Constellation. Furthermore, Rockstar formed Constellation one month before Constellation initiated two patent infringement lawsuits in the Eastern District of Texas. Likewise, as described above, David Sasso is Senior Licensing Counsel at Rockstar and the president of Bockstar. Furthermore, Rockstar formed Bockstar one month before Bockstar initiated this suit. The Northern District of California has ruled that Rockstar's formation of another entity under similar circumstances (MobileStar Technologies, LLC) "strongly suggest that Rockstar formed Mobilestar as a sham entity. . . ." *Google Inc. v. Rockstar Consortium U.S. LP*, 2014 WL 1571807, at *4 (N.D. Cal. Apr. 17, 2014).

233. By engaging in negotiations to license not only its own patents but also those it has apparently assigned to Constellation and Bockstar, Rockstar representatives were purporting to act not only on behalf of itself, but also on behalf of Constellation and Bockstar.

234. In a recent press release, Spherix also claims to be the assignee of a substantial number of patents that were originally part of the Rockstar portfolio. A copy of Spherix's press release is attached as Exhibit 132. For instance, Spherix alleges that it is now the assignee of the '990 and '999 patents, and that it owns all rights, title, and interest in those patents.

235.    By engaging in negotiations to license not only its own patents but also those it has apparently assigned to Spherix, Rockstar representatives were purporting to act not only on behalf of itself, but also on behalf of Spherix.

236.    Moreover, as described above, Spherix is Rockstar's partner, with Rockstar owning 60 million dollars in Spherix's voting securities and an interest in revenue generated by the licensing of Spherix's patents.  Rockstar is also Spherix's biggest shareholder, owning 28.47% of Spherix.  Furthermore, pursuant to the Rockstar-Spherix patent purchase agreement, Rockstar required Spherix to enter into a written engagement with outside litigation counsel to initiate patent litigations within 90 days of the agreement.  Rockstar maintains substantial control over Spherix, including approval and veto rights over litigation, its funding, and choice and terms of engagement of outside litigation counsel.

### FIRST CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,233,245 (AGAINST BOCKSTAR)

237.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

238.    Bockstar claims to own all rights, title, and interest in the '245 Patent.

239.    Bockstar has brought suit against Cisco, alleging infringement of the '245 Patent.

240.    Absent a declaration that Cisco's Catalyst 2950, 3560, and 3750 switches do not infringe the '245 Patent, Bockstar will continue to wrongfully assert the '245 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

241.    A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether Cisco's products infringe the '245 Patent.

242.     Based on the foregoing, Cisco hereby requests a declaration from the Court that Cisco's products (and/or their use by Cisco and its customers), including at least Cisco's Catalyst 2950, 3560, and 3750 switches do not directly or indirectly infringe any claim of the '245 Patent.

## SECOND CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,684,241 (AGAINST BOCKSTAR)

243.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

244.     Bockstar claims to own all rights, title, and interest in the '241 Patent.

245.     Bockstar has brought suit against Cisco, alleging infringement of the '241 Patent.

246.     Absent a declaration that Cisco's Catalyst 3750-E, 3750, 3560-E, 3560, 2975, and 2960 switches, and Cisco's "Smart Install" feature do not infringe the '241 Patent, Bockstar will continue to wrongfully assert the '241 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

247.     A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether Cisco's products infringe the '241 Patent.

248.     Based on the foregoing, Cisco hereby requests a declaration from the Court that Cisco's products (and/or their use by Cisco and its customers), including at least Cisco's Catalyst 3750-E, 3750, 3560-E, 3560, 2975, and 2960 switches, and Cisco's "Smart Install" feature do not directly or indirectly infringe any claim of the '241 Patent.

## THIRD CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,069,895 (AGAINST BOCKSTAR)

249.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

250.     Bockstar claims to own all rights, title, and interest in the '9895 Patent.

251.     Bockstar has brought suit against Cisco, alleging infringement of the '9895 Patent.

252.     Absent a declaration that Cisco's 12000 Series and XR 12000 Series routers, and CRS-1 products do not infringe the '9895 Patent, Bockstar will continue to wrongfully assert the '9895 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

253.     A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether Cisco's products infringe the '9895 Patent.

254.     Based on the foregoing, Cisco hereby requests a declaration from the Court that Cisco's products (and/or their use by Cisco and its customers), including at least Cisco's 12000 Series and XR 12000 Series routers, and CRS-1 products do not directly or indirectly infringe any claim of the '9895 Patent.

## FOURTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,732,080 (AGAINST BOCKSTAR)

255.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

256.     Bockstar claims to own all rights, title, and interest in the '080 Patent.

257.     Bockstar has brought suit against Cisco, alleging infringement of the '080 Patent.

258.     Absent a declaration that Cisco's Catalyst 6500 Series, Catalyst 4500

54

Series, ASR 1000 Series, ASR 9000 Series, CRS-1, and 7600 Series router products do not infringe the '080 Patent, Bockstar will continue to wrongfully assert the '080 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

259.    A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether Cisco's products infringe the '080 Patent.

260.    Based on the foregoing, Cisco hereby requests a declaration from the Court that Cisco's products (and/or their use by Cisco and its customers), including at least Cisco's Catalyst 6500 Series, Catalyst 4500 Series, ASR 1000 Series, ASR 9000 Series, CRS-1, and 7600 Series router products, do not directly or indirectly infringe any claim of the '080 Patent.

**FIFTH CLAIM FOR RELIEF**

DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,636,508
(AGAINST BOCKSTAR)

261.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

262.    Bockstar claims to own all rights, title, and interest in the '508 Patent.

263.    Bockstar has brought suit against Cisco, alleging infringement of the '508 Patent.

264.    Absent a declaration that Cisco's Unified CallManager software does not infringe the '508 Patent, Bockstar will continue to wrongfully assert the '508 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

265.    A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether Cisco's products infringe the '508 Patent.

266.    Based on the foregoing, Cisco hereby requests a declaration from the

Court that Cisco's products (and/or their use by Cisco and its customers), including at least Cisco's Unified CallManager software, do not directly or indirectly infringe any claim of the '508 Patent.

## SIXTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,778,653 (AGAINST BOCKSTAR)

267.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

268.    Bockstar claims to own all rights, title, and interest in the '653 Patent.

269.    Bockstar has brought suit against Cisco, alleging infringement of the '653 Patent.

270.    Absent a declaration that Cisco's Unified Contact Center Express does not infringe the '653 Patent, Bockstar will continue to wrongfully assert the '653 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

271.    A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether Cisco's products infringe the '653 Patent.

272.    Based on the foregoing, Cisco hereby requests a declaration from the Court that Cisco's products (and/or their use by Cisco and its customers), including at least Cisco's Unified Contact Center Express, do not directly or indirectly infringe any claim of the '653 Patent.

## SEVENTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,471,474 (AGAINST ROCKSTAR AND CONSTELLATION)

273.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

56

274.     Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '474 Patent by using at least the following technologies, products, and/or services:

a.     High-Speed Internet,

b.     DOCSIS 2.0,

c.     DOCSIS 3.0,

d.     MSO Digital TV Services, and

e.     MSO Phone Services.

275.     On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.     Cisco Set-Top Boxes ("STBs"),

b.     Cisco Cable Modems ("CMs"),

c.     Cisco Cable Cards,

d.     Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

e.     Cisco Cable Modem Termination Systems ("CMTSs"), and

f.     Cisco Routers.

276.     Absent a declaration that Cisco's Accused Products do not infringe the '474 Patent, Rockstar and Constellation will continue to wrongfully assert the '474 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

277.     A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '474 Patent.

278.     Based on the foregoing, Cisco hereby requests a declaration from the

57

Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '474 Patent:

      a.       Cisco Set-Top Boxes ("STBs"),

      b.       Cisco Cable Modems ("CMs"),

      c.       Cisco Cable Cards,

      d.       Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

      e.       Cisco Cable Modem Termination Systems ("CMTSs"), and

      f.       Cisco Routers.

## EIGHTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,583,862 (AGAINST ROCKSTAR AND CONSTELLATION)

279.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

280.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '862 Patent by using at least the following technologies, products, and/or services:

      a.       Managed VPN services.

281.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

      a.       Cisco Routers, including ISR and ASR Routers.

282.    Absent a declaration that Cisco's Accused Products do not infringe the '862 Patent, Rockstar and Constellation will continue to wrongfully assert the '862 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

283.     A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '862 Patent.

284.     Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '862 Patent:

a.     Cisco Routers, including ISR and ASR Routers.

## NINTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,761,197 (AGAINST ROCKSTAR AND CONSTELLATION)

285.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

286.     Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '197 Patent by using at least the following technologies, products, and/or services:

a.     High-Speed Internet,

b.     DOCSIS 2.0,

c.     DOCSIS 3.0,

d.     MSO Digital TV Services, and

e.     MSO Phone Services.

287.     On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.     Cisco Set-Top Boxes ("STBs"),

b.     Cisco Cable Modems ("CMs"),

    c.      Cisco Cable Cards,

    d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

    e.      Cisco Cable Modem Termination Systems ("CMTSs"), and

    f.      Cisco Routers.

288.    Absent a declaration that Cisco's Accused Products do not infringe the '197 Patent, Rockstar and Constellation will continue to wrongfully assert the '197 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

289.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '197 Patent.

290.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '197 Patent:

    a.      Cisco Set-Top Boxes ("STBs"),

    b.      Cisco Cable Modems ("CMs"),

    c.      Cisco Cable Cards,

    d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

    e.      Cisco Cable Modem Termination Systems ("CMTSs"), and

    f.      Cisco Routers.

## TENTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,850,397 (AGAINST CONSTELLATION AND ROCKSTAR)

291.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

292.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has

accused the Known Accused Customers of infringing the '0397 Patent by using at least the following technologies, products, and/or services:

  a.  DOCSIS 2.0/3.0,

  b.  OpenCable (Tru2way),

  c.  Packet Cable 1.5, and

  d.  eRouters.

  293.  On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

  a.  Cisco Cable Modems ("CM"),

  b.  Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

  c.  Cisco Cable Modem Termination Systems ("CMTSs"), and

  d.  Cisco Routers.

  294.  Absent a declaration that Cisco's Accused Products do not infringe the '0397 Patent, Rockstar and Constellation will continue to wrongfully assert the '0397 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

  295.  A substantial, immediate, and real controversy therefore exists between Cisco, Rockstar, and Cosntellation as to whether Cisco's products infringe the '0397 Patent.

  296.  Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '0397 Patent:

  a.  Cisco Cable Modems ("CM"),

  b.  Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

c.      Cisco Cable Modem Termination Systems ("CMTSs"), and

d.      Cisco Routers.

**ELEVENTH CLAIM FOR RELIEF**

DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,959,990
(AGAINST ROCKSTAR AND SPHERIX)

297.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

298.    Rockstar, for itself and on behalf of its partner, Spherix, has accused the Known Accused Customers of infringing the '990 Patent by using at least the following technologies, products, and/or services:

a.      Ethernet Services, and

b.      VLAN Technology.

299.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.      Cisco Switches.

300.    Absent a declaration that Cisco's Accused Products do not infringe the '990 Patent, Rockstar and Spherix will continue to wrongfully assert the '990 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

301.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Spherix as to whether Cisco's products infringe the '990 Patent.

302.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '990 Patent:

a.      Cisco switches.

## TWELFTH CLAIM FOR RELIEF

DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,128,298
(AGAINST ROCKSTAR)

303.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

304.    Rockstar claims to own all rights, title, and interest in the '298 Patent.

305.    Rockstar has accused the Known Accused Customers of infringing the '298 Patent.

306.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.      Cisco Cable Modems ("CM"),

b.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

c.      Cisco Cable Modem Termination Systems ("CMTSs"), and

d.      Cisco Routers.

307.    Absent a declaration that Cisco's Accused Products do not infringe the '298 Patent, Rockstar will continue to wrongfully assert the '298 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

308.    A substantial, immediate, and real controversy therefore exists between Cisco and Rockstar as to whether Cisco's products infringe the '298 Patent.

309.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '298 Patent:

63

      a.        Cisco Cable Modems ("CM"),

      b.        Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

      c.        Cisco Cable Modem Termination Systems ("CMTSs"), and

      d.        Cisco Routers.

## THIRTEENTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,128,649 (AGAINST ROCKSTAR AND CONSTELLATION)

310.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

311.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '649 Patent by using at least the following technologies, products, and/or services:

      a.        Switched Digital Video.

312.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

      a.        Cisco Set-Top Boxes ("STBs"),

      b.        Cisco Video Servers, and

      c.        Cisco Universal Session and Resource Manager ("USRM").

313.    Absent a declaration that Cisco's Accused Products do not infringe the '649 Patent, Rockstar and Constellation will continue to wrongfully assert the '649 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

314.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '649 Patent.

315.     Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '649 Patent:

a.     Cisco Set-Top Boxes ("STBs"),

b.     Cisco Video Servers, and

c.     Cisco Universal Session and Resource Manager ("USRM").

**FOURTEENTH CLAIM FOR RELIEF**

DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,130,893
(AGAINST ROCKSTAR AND CONSTELLATION)

316.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

317.     Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '893 Patent by using at least the following technologies, products, and/or services:

a.     Cable Phone Service,

b.     Multimedia Terminal Adapters,

c.     PacketCable 1.5,

d.     High-Speed Internet,

e.     DOCSIS 2.0/3.0,

f.     OpenCable (Tru2way), and

g.     eRouter.

318.     On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

      a.      Cisco Cable Modems ("CMs"),

      b.      Cisco Cable Modem Termination Systems ("CMTSs"),

      c.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"), and

      d.      Cisco Routers.

319.     Absent a declaration that Cisco's Accused Products do not infringe the '893 Patent, Rockstar and Constellation will continue to wrongfully assert the '893 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

320.     A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '893 Patent.

321.     Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '893 Patent:

      a.      Cisco Cable Modems ("CMs"),

      b.      Cisco Cable Modem Termination Systems ("CMTSs"),

      c.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"), and

      d.      Cisco Routers.

## FIFTEENTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,192,397 (AGAINST ROCKSTAR)

322.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

323.     Rockstar claims to own all rights, title, and interest in the '2397 Patent.

324.     Rockstar has accused the Known Accused Customers of infringing the '2397 Patent by using at least the following technologies, products, and/or services:

a.      High-Speed Internet,

b.      GigE,

c.      10GigE, and

d.      Converged Services.

325.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.      Cisco Cable Modems ("CMs"), and

b.      Cisco Routers, including uBR10000, ISR, and ASR series.

326.    Absent a declaration that Cisco's Accused Products do not infringe the '2397 Patent, Rockstar will continue to wrongfully assert the '2397 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

327.    A substantial, immediate, and real controversy therefore exists between Cisco and Rockstar as to whether Cisco's products infringe the '2397 Patent.

328.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '2397 Patent:

a.      Cisco Cable Modems ("CMs"), and

b.      Cisco Routers, including uBR10000, ISR, and ASR series.

**SIXTEENTH CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,321,253
(AGAINST ROCKSTAR AND CONSTELLATION)**

329.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

67

330.     Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '253 Patent by using at least the following technologies, products, and/or services:

a.     Cable Phone Service,

b.     High-Speed Internet,

c.     PacketCable 1.0/1.5,

d.     Embedded Multimedia Terminal Adapters, and

e.     DOCSIS 2.0/3.0.

331.     On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.     Cisco Cable Modems ("CM"),

b.     Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

c.     Cisco Cable Modem Termination Systems ("CMTSs"), and

d.     Cisco Routers.

332.     Absent a declaration that Cisco's Accused Products do not infringe the '253 Patent, Rockstar and Constellation will continue to wrongfully assert the '253 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

333.     A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '253 Patent.

334.     Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '253 Patent:

    a.    Cisco Cable Modems ("CM"),

    b.    Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

    c.    Cisco Cable Modem Termination Systems ("CMTSs"), and

    d.    Cisco Routers.

**SEVENTEENTH CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,373,923
(AGAINST ROCKSTAR AND CONSTELLATION)**

335.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

336.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '923 Patent by using at least the following technologies, products, and/or services:

    a.    DSL Internet Services.

337.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

    a.    Cisco DSL Modems, and

    b.    Cisco Digital Subscriber Line Access Multiplexers ("DSLAMs").

338.    Absent a declaration that Cisco's Accused Products do not infringe the '923 Patent, Rockstar and Constellation will continue to wrongfully assert the '923 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

339.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '923 Patent.

340.    Based on the foregoing, Cisco hereby requests a declaration from the

69

Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '923 Patent:

      a.      Cisco DSL Modems, and

      b.      Digital Subscriber Line Access Multiplexers ("DSLAMs").

## EIGHTEENTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,496,519 (AGAINST ROCKSTAR AND CONSTELLATION)

341.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

342.     Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '519 Patent by using at least the following technologies, products, and/or services:

      a.      Ethernet WAN, and

      b.      Ethernet Over Optical Transport.

343.     On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

      a.      Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

      b.      Cisco ONS 15xxx Series Multiservice Platform.

344.     Absent a declaration that Cisco's Accused Products do not infringe the '519 Patent, Rockstar and Constellation will continue to wrongfully assert the '519 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

345.     A substantial, immediate, and real controversy therefore exists between

Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '519 Patent.

346.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '519 Patent:

a.    Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

b.    Cisco ONS 15xxx Series Multiservice Platform.

## NINETEENTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,584,118 (AGAINST ROCKSTAR AND BOCKSTAR)

347.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

348.    Rockstar, for itself and on behalf of its subsidiary, Bockstar, has accused the Known Accused Customers of infringing the '118 Patent by using at least the following technologies, products, and/or services:

a.    Ethernet WAN, and

b.    Ethernet Over Optical Transport.

349.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.    Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

b.    Cisco ONS 15xxx Series Multiservice Platform.

350.    Absent a declaration that Cisco's Accused Products do not infringe the

'118 Patent, Rockstar and Bockstar will continue to wrongfully assert the '118 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

351.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Bockstar as to whether Cisco's products infringe the '118 Patent.

352.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '118 Patent:

a.    Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

b.    Cisco ONS 15xxx Series Multiservice Platform.

## TWENTIETH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,704,326 (AGAINST ROCKSTAR AND BOCKSTAR)

353.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

354.    Rockstar, for itself and on behalf of its subsidiary, Bockstar, has accused the Known Accused Customers of infringing the '326 Patent by using at least the following technologies, products, and/or services:

a.    Ethernet WAN, and

b.    Ethernet Over Optical Transport.

355.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.    Cisco Switches, including ME 3600X Series Ethernet Access Switches,

and

     b.     Cisco ONS 15xxx Series Multiservice Platform.

356.     Absent a declaration that Cisco's Accused Products do not infringe the '326 Patent, Rockstar and Bockstar will continue to wrongfully assert the '326 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

357.     A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Bockstar as to whether Cisco's products infringe the '326 Patent.

358.     Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '326 Patent:

     a.     Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

     b.     Cisco ONS 15xxx Series Multiservice Platform.

**TWENTY-FIRST CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,816,496
(AGAINST ROCKSTAR AND BOCKSTAR)**

359.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

360.     Rockstar, for itself and on behalf of its subsidiary, Bockstar, has accused the Known Accused Customers of infringing the '496 Patent by using at least the following technologies, products, and/or services:

     a.     Ethernet WAN, and

     b.     Ethernet Over Optical Transport.

361.     On information and belief, the Known Accused Customers use the

73

following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.      Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

b.      Cisco ONS 15xxx Series Multiservice Platform.

362.    Absent a declaration that Cisco's Accused Products do not infringe the '496 Patent, Rockstar and Bockstar will continue to wrongfully assert the '496 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

363.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Bockstar as to whether Cisco's products infringe the '496 Patent.

364.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '496 Patent:

a.      Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

b.      Cisco ONS 15xxx Series Multiservice Platform.

### TWENTY-SECOND CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,845,389 (AGAINST ROCKSTAR AND CONSTELLATION)

365.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

366.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '389 Patent by using at least the following technologies, products, and/or services:

      a.      IP Multimedia Subsystem.

367.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

      a.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"), and

      b.      Cisco Routers.

368.    Absent a declaration that Cisco's Accused Products do not infringe the '389 Patent, Rockstar and Constellation will continue to wrongfully assert the '389 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

369.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '389 Patent.

370.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '389 Patent:

      a.      Embedded Multimedia Terminal Adapters ("eMTAs"), and

      b.      Cisco Routers.

## TWENTY-THIRD CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,901,048 (AGAINST ROCKSTAR AND CONSTELLATION)

371.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

372.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '048 Patent by using at least the following technologies, products, and/or services:

      a.      MPLS Networks.

373.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

      a.      Cisco Routers.

374.    Absent a declaration that Cisco's Accused Products do not infringe the '048 Patent, Rockstar and Constellation will continue to wrongfully assert the '048 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

375.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '048 Patent.

376.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '048 Patent:

      a.      Cisco Routers.

## **TWENTY-FOURTH CLAIM FOR RELIEF**

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,154,879 (AGAINST ROCKSTAR AND CONSTELLATION)

377.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

378.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '879 Patent by using at least the following technologies, products, and/or services:

      a.      Ethernet Passive Optical Networks, and

      b.      Whole-house Entertainment Networks.

379.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.    Cisco Set-Top Boxes ("STBs").

380.    Absent a declaration that Cisco's Accused Products do not infringe the '879 Patent, Rockstar and Constellation will continue to wrongfully assert the '879 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

381.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '879 Patent.

382.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '879 Patent:

a.    Cisco Set-Top Boxes ("STBs").

## **TWENTY-FIFTH CLAIM FOR RELIEF**

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,564,895 (AGAINST ROCKSTAR AND CONSTELLATION)

383.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

384.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '4895 Patent by using at least the following technologies, products, and/or services:

a.    DSL Internet Services.

385.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the

77

above technologies:

     a.     Cisco DSL Modems, and

     b.     Cisco Digital Subscriber Line Access Multiplexers ("DSLAMs").

     386.     Absent a declaration that Cisco's Accused Products do not infringe the '4895 Patent, Rockstar and Constellation will continue to wrongfully assert the '4895 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

     387.     A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '4895 Patent.

     388.     Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '4895 Patent:

     a.     Cisco DSL Modems, and

     b.     Cisco Digital Subscriber Line Access Multiplexers ("DSLAMs").

## **TWENTY-SIXTH CLAIM FOR RELIEF**

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,134,917 (AGAINST ROCKSTAR AND CONSTELLATION)

     389.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

     390.     Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '917 Patent by using at least the following technologies, products, and/or services:

     a.     MPLS Networks.

     391.     On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the

above technologies:

      a.      Cisco Routers.

      392.      Absent a declaration that Cisco's Accused Products do not infringe the '917 Patent, Rockstar and Constellation will continue to wrongfully assert the '917 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

      393.      A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '917 Patent.

      394.      Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '917 Patent:

      a.      Cisco Routers.

**TWENTY-SEVENTH CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,464,299 (AGAINST ROCKSTAR AND CONSTELLATION)**

      395.      Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

      396.      Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '299 Patent by using at least the following technologies, products, and/or services:

      a.      Switched Digital Video,

      b.      Video On Demand, and

      c.      IP Cable Television.

      397.      On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the

above technologies:

    a.      Cisco Set-Top Boxes ("STBs"),

    b.      Cisco Video Servers, and

    c.      Cisco Universal Session and Resource Managers ("USRMs").

    398.    Absent a declaration that Cisco's Accused Products do not infringe the '299 Patent, Rockstar and Constellation will continue to wrongfully assert the '299 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

    399.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '299 Patent.

    400.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '299 Patent:

    a.      Cisco Set-Top Boxes ("STBs"),

    b.      Cisco Video Servers, and

    c.      Cisco Universal Session and Resource Managers ("USRMs").

**TWENTY-EIGHTH CLAIM FOR RELIEF**

DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. RE40,999
(AGAINST ROCKSTAR AND SPHERIX)

    401.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

    402.    Rockstar, for itself and on behalf of its partner, Spherix, has accused the Known Accused Customers of infringing the '999 Patent by using at least the following technologies, products, and/or services:

    a.      Ethernet services, and

b.      VLAN technology.

403.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.      Cisco Switches, including Cisco ME 3600X Series Ethernet Access Switches.

404.    Absent a declaration that Cisco's Accused Products do not infringe the '999 Patent, Rockstar and Spherix will continue to wrongfully assert the '999 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

405.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Spherix as to whether Cisco's products infringe the '999 Patent.

406.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '999 Patent:

a.      Cisco Switches, including Cisco ME 3600X Series Ethernet Access Switches.

## TWENTY-NINTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,650,618 (AGAINST ROCKSTAR AND CONSTELLATION)

407.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

408.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '618 Patent by using at least the following technologies, products, and/or services:

a.      Resilient Packet Ring Networks.

409.    On information and belief, the Known Accused Customers use the following Cisco products to implement the above products and services, and/or comply with the above technologies:

a.      Cisco ONS 15xxx Series Multiservice Platform.

410.    Absent a declaration that Cisco's Accused Products do not infringe the '618 Patent, Rockstar and Constellation will continue to wrongfully assert the '618 Patent against Cisco and/or its customers and thereby cause Cisco irreparable harm and injury.

411.    A substantial, immediate, and real controversy therefore exists between Cisco, and Rockstar and Constellation as to whether Cisco's products infringe the '618 Patent.

412.    Based on the foregoing, Cisco hereby requests a declaration from the Court that at least the following Cisco products (and/or their use by Cisco and its customers) do not directly or indirectly infringe any claim of the '618 Patent:

a.      Cisco ONS 15xxx Series Multiservice Platform.

**THIRTIETH CLAIM FOR RELIEF**

DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,233,245
(AGAINST BOCKSTAR)

413.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

414.    Bockstar claims to own all rights, title, and interest in the '245 Patent.

415.    Bockstar has accused Cisco of infringing the '245 Patent in this litigation.

416.    The claims of the '245 Patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least in view of RFC 970: On Packet Switches With Infinite Storage, attached as Exhibit 133.

417.    Absent a declaration that the claims of the '245 Patent are invalid, Bockstar will continue to wrongfully assert the '245 Patent against Cisco and thereby cause Cisco irreparable harm and injury.

418.    A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether the claims of the '245 Patent are invalid.

419.    Based on the foregoing, Cisco hereby requests a declaration from the Court that the claims of the '245 Patent are invalid.

## THIRTY-FIRST CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,684,241 (AGAINST BOCKSTAR)

420.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

421.    Bockstar claims to own all rights, title, and interest in the '241 Patent.

422.    Bockstar has accused Cisco of infringing the '241 Patent in this litigation.

423.    The claims of the '241 Patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least in view of Cisco Systems AGS Reference Manual, Software Version 6.1, Manual Revision A, attached as Exhibit 134.

424.    Absent a declaration that the claims of the '241 Patent are invalid, Bockstar will continue to wrongfully assert the '241 Patent against Cisco and thereby cause Cisco irreparable harm and injury.

425.    A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether the claims of the '241 Patent are invalid.

426.    Based on the foregoing, Cisco hereby requests a declaration from the

Court that the claims of the '241 Patent are invalid.

## THIRTY-SECOND CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,069,895 (AGAINST BOCKSTAR)

427.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

428.    Bockstar claims to own all rights, title, and interest in the '9895 Patent.

429.    Bockstar has accused Cisco of infringing the '9895 Patent in this litigation.

430.    The claims of the '9895 Patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least in view of IP Switching and Gigabit Routers by Peter Newman, Greg Minshall, Tom Lyon, and Larry Huston ("Newman"), attached as Exhibit 135.

431.    Absent a declaration that the claims of the '9895 Patent are invalid, Bockstar will continue to wrongfully assert the '9895 Patent against Cisco and thereby cause Cisco irreparable harm and injury.

432.    A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether the claims of the '9895 Patent are invalid.

433.    Based on the foregoing, Cisco hereby requests a declaration from the Court that the claims of the '9895 Patent are invalid.

## THIRTY-THIRD CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 5,732,080 (AGAINST BOCKSTAR)

434.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

435.    Bockstar claims to own all rights, title, and interest in the '080 Patent.

436.    Bockstar has accused Cisco of infringing the '080 Patent in this litigation.

437.    The claims of the '080 Patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least in view of the prior invention and/or use of StrataCom LightStream 1010 and 2020 products and Cisco 7000, 7500, and GSR 12000 products.

438.    Absent a declaration that the claims of the '080 Patent are invalid, Bockstar will continue to wrongfully assert the '080 Patent against Cisco and thereby cause Cisco irreparable harm and injury.

439.    A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether the claims of the '080 Patent are invalid.

440.    Based on the foregoing, Cisco hereby requests a declaration from the Court that the claims of the '080 Patent are invalid.

## THIRTY-FOURTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,636,508 (AGAINST BOCKSTAR)

441.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

442.    Bockstar claims to own all rights, title, and interest in the '508 Patent.

443.    Bockstar has accused Cisco of infringing the '508 Patent in this litigation.

444.    The claims of the '508 Patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least in view of U.S. Patent No. 6,021,136.

445.    Absent a declaration that the claims of the '508 Patent are invalid,

Bockstar will continue to wrongfully assert the '508 Patent against Cisco and thereby cause Cisco irreparable harm and injury.

446.    A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether the claims of the '508 Patent are invalid.

447.    Based on the foregoing, Cisco hereby requests a declaration from the Court that the claims of the '508 Patent are invalid.

## THIRTY-FIFTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,778,653 (AGAINST BOCKSTAR)

448.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

449.    Bockstar claims to own all rights, title, and interest in the '653 Patent.

450.    Bockstar has accused Cisco of infringing the '653 Patent in this litigation.

451.    The claims of the '653 Patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least in view of U.S. Patent No. 6,016,336.

452.    Absent a declaration that the claims of the '653 Patent are invalid, Bockstar will continue to wrongfully assert the '653 Patent against Cisco and thereby cause Cisco irreparable harm and injury.

453.    A substantial, immediate, and real controversy therefore exists between Cisco and Bockstar as to whether the claims of the '653 Patent are invalid.

454.    Based on the foregoing, Cisco hereby requests a declaration from the Court that the claims of the '653 Patent are invalid.

## THIRTY-SIXTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE IEEE TO LICENSE '2397 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR)

455.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

456.     Nortel provided a letter of assurance to the IEEE agreeing to grant F/RAND licenses to the '2397 patent to the extent necessary to practice IEEE standard 802.3. (*See* Exhibit 64).  IEEE 802.3 is the IEEE standard for Ethernet.

457.     Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOAs submitted to the IEEE and in accordance with IEEE's IPR policies.

458.     IEEE's policy, as amended over time, constitutes a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the IEEE, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

459.     As industry participants that would potentially implement the standards established by the IEEE, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IEEE.

460.     RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar is obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

461.     As a result, Rockstar is obligated to offer F/RAND or royalty-free licenses to Cisco for the '2397 patent to the extent necessary to practice Ethernet, as standardized by the IEEE 802.3 standard.

462.     Rockstar has accused Cisco's customers of infringing the '2397 patent based on their alleged use of GigE and 10GigE, as standardized by IEEE 802.3.

463.     By accusing Cisco customers of infringing the '2397 patent based solely on the use of technologies standardized in the IEEE 802.3 standard, Rockstar has alleged that the '2397 patent is essential to the use of the IEEE 802.3 standard.

464.     Rockstar has breached its express and implied F/RAND and royalty-free licensing commitments to license the '2397 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.     Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.     Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

c.     Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.     Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.     Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

f.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

465.     Through the foregoing acts, Rockstar breached the express and implied

commitments Nortel and other entities made to the IEEE to license the '2397 patent on F/RAND or royalty-free terms.

466.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

467.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar of its obligations to provide licenses to the '2397 patent on F/RAND or royalty-free licensing terms.

468.    As an additional remedy for Rockstar's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## THIRTY-SEVENTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE ITU TO LICENSE '496 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND BOCKSTAR)

469.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

470.    Nortel provided letters of assurance to the ITU for the '496 patent with respect to ITU standards G.707, G.709, G.783, and G.798.  (*See* Exhibits 68-71).

471.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOAs submitted to the ITU and in accordance with ITU's IPR policies.

472.    ITU's policy, as amended over time, constitutes a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the ITU, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

473.    As industry participants that would potentially implement the standards

established by the ITU, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the ITU.

474.    F/RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Bockstar are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

475.    As a result, Rockstar and Bockstar are obligated to offer F/RAND or royalty-free licenses to Cisco for the '496 patent to the extent necessary to practice the optical networks standardized in ITU standards G.707, G.709, G.783, and G.798.

476.    On information and belief, Rockstar and Bockstar have accused Cisco's customers of infringing the '496 patent based on their use of ITU standards G.707, G.709, G.783, and G.798.

477.    By accusing Cisco customers of infringing the '496 patent based solely on the use of technologies standardized in ITU standards G.707, G.709, G.783, and G.798, Rockstar and Bockstar have alleged that the '496 patent is essential to the use of ITU standards G.707, G.709, G.783, and G.798.

478.    Rockstar and Bockstar have breached their express and implied F/RAND and royalty-free licensing commitments to license the '496 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.      Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.      Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

f.    Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.    Transferring the '496 patent to Bockstar with the knowledge that Bockstar would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

479.    Through the foregoing acts, Rockstar and Bockstar breached the express and implied commitments Nortel and other entities made to the ITU to license the '496 patent on F/RAND or royalty-free terms.

480.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

481.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Bockstar of their obligations to provide licenses to the '496 patent on F/RAND or royalty-free licensing terms.

482.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## THIRTY-EIGHTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE ITU TO LICENSE '519 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

483.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

484.    Nortel provided letters of assurance to the ITU for the '519 patent with respect to ITU standards G.707, G.709, G.783, and G.798.  (*See* Exhibits 68-71).

485.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOAs submitted to the ITU and in accordance with ITU's IPR policies.

486.    ITU's policy, as amended over time, constitutes a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the ITU, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

487.    As industry participants that would potentially implement the standards established by the ITU, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the ITU.

488.    RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

489.    As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Cisco for the '519 patent to the extent necessary to practice the optical networks standardized in ITU standards G.707, G.709, G.783, and G.798.

490.     On information and belief, Rockstar and Constellation have accused Cisco's customers of infringing the '519 patent based on their use of ITU standards G.707, G.709, G.783, and G.798.

491.     By accusing Cisco customers of infringing the '519 patent based solely on the use of technologies standardized in ITU standards G.707, G.709, G.783, and G.798, Rockstar and Constellation have alleged that the '519 patent is essential to the use of ITU standards G.707, G.709, G.783, and G.798.

492.     Rockstar and Constellation have breached their express and implied F/RAND and royalty-free licensing commitments to license the '519 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.     Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.     Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

c.     Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.     Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.     Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

f.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of

applicants on nondiscriminatory terms and conditions.

g.      Transferring the '519 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

493.    Through the foregoing acts, Rockstar and Constellation breached the express and implied commitments Nortel and other entities made to the ITU to license the '519 patent on F/RAND or royalty-free terms.

494.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

495.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '519 patent on F/RAND or royalty-free licensing terms.

496.    As an additional remedy for Rockstar's and Constellation's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## THIRTY-NINTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE ITU TO LICENSE '118 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND BOCKSTAR)

497.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

498.    Nortel provided a letter of assurance to the ITU for the '118 patent with respect to ITU standard G.7041.  (*See* Exhibit 72).  G.7041 is a standards relating to optical networks.

499.    Nortel was contractually obligated to offer a license to its SEPs in a

manner consistent with the representations contained in the above LOA submitted to the ITU and in accordance with ITU's IPR policies.

500.    ITU's policy, as amended over time, constitutes a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the ITU, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

501.    As industry participants that would potentially implement the standards established by the ITU, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the ITU.

502.    RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Bockstar are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

503.    As a result, Rockstar and Bockstar are obligated to offer F/RAND or royalty-free licenses to Cisco for the '118 patent to the extent necessary to practice the optical networks standardized in ITU standard G.7041.

504.    On information and belief, Rockstar and Bockstar have accused Cisco's customers of infringing the '118 patent based on their use of ITU standard G.7041.

505.    By accusing Cisco customers of infringing the '118 patent based solely on the use of technologies standardized in ITU standard G.7041, Rockstar and Bockstar have alleged that the '118 patent is essential to the use of ITU standard G.7041.

506.    Rockstar and Bockstar have breached their express and implied F/RAND and royalty-free licensing commitments to license the '118 patent on F/RAND or royalty-free

terms by engaging in at least the following acts:

        a.      Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

        b.      Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

        c.      Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

        d.      Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

        e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

        f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

        g.      Transferring the '118 patent to Bockstar with the knowledge that Bockstar would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

        507.    Through the foregoing acts, Rockstar and Bockstar breached the express and implied commitments Nortel and other entities made to the ITU to license the '118 patent on F/RAND or royalty-free terms.

        508.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

        509.    As a remedy for those breaches, Cisco respectfully requests the equitable

remedy of specific performance by Rockstar and Bockstar of their obligations to provide licenses to the '118 patent on F/RAND or royalty-free licensing terms.

510.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FORTIETH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE ITU TO LICENSE '326 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND BOCKSTAR)

511.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

512.    Nortel provided a letter of assurance to the ITU for the '326 patent with respect to ITU standard G.7041.  (*See* Exhibit 72).  G.7041 is a standards relating to optical networks.

513.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOA submitted to the ITU and in accordance with ITU's IPR policies.

514.    ITU's policy, as amended over time, constitutes a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the ITU, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

515.    As industry participants that would potentially implement the standards established by the ITU, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the ITU.

516.    RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Bockstar are

obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

517.    As a result, Rockstar and Bockstar are obligated to offer F/RAND or royalty-free licenses to Cisco for the '326 patent to the extent necessary to practice the optical networks standardized in ITU standard G.7041.

518.    On information and belief, Rockstar and Bockstar have accused Cisco's customers of infringing the '326 patent based on their use of ITU standard G.7041.

519.    By accusing Cisco customers of infringing the '326 patent based solely on the use of technologies standardized in ITU standard G.7041, Rockstar and Bockstar have alleged that the '326 patent is essential to the use of ITU standard G.7041.

520.    Rockstar and Bockstar have breached their express and implied F/RAND and royalty-free licensing commitments to license the '326 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that

have adopted well-established digital telecommunication standards; and

       f.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

       g.     Transferring the '326 patent to Bockstar with the knowledge that Bockstar would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

       521.     Through the foregoing acts, Rockstar and Bockstar breached the express and implied commitments Nortel and other entities made to the ITU to license the '326 patent on F/RAND or royalty-free terms.

       522.     As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

       523.     As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Bockstar of their obligations to provide licenses to the '326 patent on F/RAND or royalty-free licensing terms.

       524.     As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FORTY-FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE ITU TO LICENSE '4895 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

       525.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

       526.     Nortel provided letters of assurance to the ITU for the '4895 patent with respect to ITU standards G.993.2 and G.992.3.  (*See* Exhibits 73-75).  G.993.2 and G.992.3 are standards that relate to ADSL2 and VDSL2 technology.

527.     Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOAs submitted to the ITU and in accordance with ITU's IPR policies.

528.     ITU's policy, as amended over time, constitutes a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the ITU, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

529.     As industry participants that would potentially implement the standards established by the ITU, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the ITU.

530.     RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

531.     As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Cisco for the '4895 patent to the extent necessary to practice the optical networks standardized in ITU standards G.993.2 and G.992.3.

532.     On information and belief, Rockstar and Constellation have accused Cisco's customers of infringing the '4895 patent based on their use of ITU standards G.993.2 and G.992.3.

533.     By accusing Cisco customers of infringing the '4895 patent based solely on the use of technologies standardized in ITU standards G.993.2 and G.992.3, Rockstar and Constellation have alleged that the '4895 patent is essential to the use of ITU standards G.993.2

and G.992.3.

534.    Rockstar and Constellation has breached their express and implied F/RAND and royalty-free licensing commitments to license the '4895 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

f.    Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.    Transferring the '4895 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

535.    Through the foregoing acts, Rockstar and Constellation breached the express and implied commitments Nortel and other entities made to the ITU to license the '4895

patent on F/RAND or royalty-free terms.

536.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

537.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '4895 patent on F/RAND or royalty-free licensing terms.

538.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## **FORTY-SECOND CLAIM FOR RELIEF**

### BREACH OF CONTRACT WITH THE IEEE TO LICENSE '990 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND SPHERIX)

539.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

540.    Nortel provided a letter of assurance to the IEEE agreeing to grant F/RAND licenses to the '990 patent to the extent necessary to practice IEEE standards 802.3ac, 802.1ah, and 802.1q, which standardize technology for VLANs.  (*See* Exhibits 76-77).

541.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOAs submitted to the IEEE and in accordance with the IEEE's IPR policies.

542.    IEEE's policy, as amended over time, constitutes a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the IEEE, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

543.    As industry participants that would potentially implement the standards

established by the IEEE, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IEEE.

544.    RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Spherix are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

545.    As a result, Rockstar and Spherix are obligated to offer F/RAND or royalty-free licenses to Cisco for the '990 patent to the extent necessary to practice the optical networks standardized in IEEE standards 802.3ac, 802.1ah, and 802.1q.

546.    On information and belief, Rockstar, of behalf of its partner, Spherix, has accused Cisco's customers of infringing the '990 patent based on Plaintiff's use of VLANs, as standardized by IEEE standards 802.3ac, 802.1ah, and 802.1q.

547.    By accusing Cisco customers of infringing the '990 patent based solely on the use of technologies standardized in IEEE standards 802.3ac, 802.1ah, and 802.1q, Rockstar and Spherix have alleged that the '990 patent is essential to the use of IEEE standards 802.3ac, 802.1ah, and 802.1q.

548.    Rockstar and Spherix have breached their express and implied F/RAND and royalty-free licensing commitments to license the '990 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.      Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.      Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

   c.  Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

   d.  Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

   e.  Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

   f.  Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

   549.  Transferring the '990 patent to Spherix with the knowledge that Spherix would not honor its F/RAND or royalty-free licensing obligations as a successor in interest. According to Spherix's November 19, 2013 SEC filing, Rockstar warranted that "Seller has not made any commitments to any standards or other organization (including any open source organization) regarding licensing or not asserting the Patents, and Seller has not entered into any agreement or other arrangement which would otherwise obligate it to license or refrain from asserting the Patents." (*See* Exhibit 24 at 8).  Rockstar is in breach of the explicit language of the IEEE bylaws, which state that "[t]he Submitter [of any assurances] and all Affiliates (other than those Affiliates excluded in a Letter of Assurance) shall not assign or otherwise transfer any rights in any Essential Patent Claims that are the subject of such Letter of Assurance that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in such Letter of Assurance." (*See* Exhibit 39 at 16).

   550.  Spherix also breached its express and implied F/RAND licensing

commitments to license the '990 patent on F/RAND terms by engaging in at least the following acts:

a.      Spherix's CEO publicly stated that he attributed 60 million dollars of value to licenses to the SEP patents, reflecting a value far above F/RAND rates.

b.      Spherix acquired F/RAND encumbered patents, including the '990 and '999 patents, under an agreement to promptly bring a patent infringement suit.  This agreement to sue, rather than offer licenses on F/RAND terms as required by the commitments given by Nortel to the IEEE, is an attempt by Rockstar and Spherix to circumvent their obligations to license the '990 and '999 patents on F/RAND or royalty-free terms.

551.    Through the foregoing acts, Rockstar and Spherix breached the express and implied commitments Nortel and other entities made to the IEEE to license the '990 patent on F/RAND or royalty-free terms.

552.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

553.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Spherix of their obligations to provide licenses to the '990 patent on F/RAND or royalty-free licensing terms.

554.    As an additional remedy for Rockstar's and Spherix's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

**FORTY-THIRD CLAIM FOR RELIEF**

**BREACH OF CONTRACT WITH THE IEEE TO LICENSE '999 PATENT ON F/RAND TERMS**
**(AGAINST ROCKSTAR AND SPHERIX)**

555.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

556.    Nortel provided a letter of assurance to the IEEE agreeing to grant F/RAND licenses to the U.S. Patent No. 6,111,876 which reissued as the '999 patent to the extent necessary to practice IEEE standards 802.1q and 802.1ah, which standardize technology for VLANs.  (*See* Exhibits 77-78).

557.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOAs submitted to the IEEE and in accordance with the IEEE's IPR policies.

558.    IEEE's policy, as amended over time, constitutes a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the IEEE, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

559.    As industry participants that would potentially implement the standards established by the IEEE, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IEEE.

560.    RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Spherix are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

561.    As a result, Rockstar and Spherix are obligated to offer F/RAND or royalty-free licenses to Cisco for the '999 patent to the extent necessary to practice the optical networks standardized in IEEE standards 802.1q and 802.1ah.

562.    On information and belief, Rockstar, of behalf of its partner, Spherix, has accused Cisco's customers of infringing the '999 patent based on Plaintiff's use of VLANs, as

standardized by IEEE standards 802.1ah, and 802.1q.

563.     By accusing Cisco customers of infringing the '999 patent based solely on the use of technologies standardized in IEEE standards 802.1ah and 802.1q, Rockstar and Spherix have alleged that the '999 patent is essential to the use of IEEE standards 802.1ah and 802.1q.

564.     Rockstar and Spherix have breached its express and implied F/RAND and royalty-free licensing commitments to license the '999 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.     Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.     Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

c.     Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.     Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.     Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

f.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.     Transferring the '999 patent to Spherix with the knowledge that Spherix

107

would not honor its F/RAND or royalty-free licensing obligations as a successor in interest. According to Spherix's November 19, 2013 SEC filing, Rockstar warranted that "Seller has not made any commitments to any standards or other organization (including any open source organization) regarding licensing or not asserting the Patents, and Seller has not entered into any agreement or other arrangement which would otherwise obligate it to license or refrain from asserting the Patents." (*See* Exhibit 24 at 8). Rockstar is in breach of the explicit language of the IEEE bylaws, which state that "[t]he Submitter [of any assurances] and all Affiliates (other than those Affiliates excluded in a Letter of Assurance) shall not assign or otherwise transfer any rights in any Essential Patent Claims that are the subject of such Letter of Assurance that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in such Letter of Assurance." (*See* Exhibit 39 at 16).

565.    Spherix also breached its express and implied F/RAND licensing commitments to license the '999 patent on F/RAND terms by engaging in at least the following acts:

a.    Spherix's CEO publicly stated that he attributed 60 million dollars of value to licenses to the SEP patents, reflecting a value far above F/RAND rates.

b.    Spherix acquired F/RAND encumbered patents, including the '990 and '999 patents, under an agreement to promptly bring a patent infringement suit. This agreement to sue, rather than offer licenses on F/RAND terms as required by the commitments given by Nortel to the IEEE, is an attempt by Rockstar and Spherix to circumvent their obligations to license the '990 and '999 patent on F/RAND or royalty-free terms.

566.    Through the foregoing acts, Rockstar and Spherix breached the express and implied commitments Nortel and other entities made to the IEEE to license the '999 patent

on F/RAND or royalty-free terms.

567.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

568.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Spherix of their obligations to provide licenses to the '999 patent on F/RAND or royalty-free licensing terms.

569.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FORTY-FOURTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE IEEE TO LICENSE '879 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

570.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

571.    Nortel provided a letter of assurance to the IEEE agreeing to "grant a nonexclusive license to Nortel patent claims that are essential for implementation of an existing IEEE 802.3 Standard on a nondiscriminatory basis and on reasonable terms and conditions . . . ." (*See* Exhibit 80).

572.    The IEEE standard for "Ethernet-based Passive Optical Networks" ("EPON") is an existing IEEE 802.3 Standard.

573.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOA submitted to the IEEE and in accordance with IEEE's IPR policies.

574.    IEEE's IPR policies, as amended over time, constitute a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the

109

IEEE, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

575.    As industry participants that would potentially implement the standards established by the IEEE, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IEEE.

576.    RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

577.    As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Cisco for the '879 patent to the extent necessary to practice EPON, as an existing IEEE 802.3 standard.

578.    Constellation has accused Cisco's customer, TWC, of infringing the '879 patent based on its use of EPON.

579.    By accusing TWC of infringing the '879 patent based solely on the use of technologies standardized in IEEE 802.3, Rockstar and Constellation have alleged that the '879 patent is essential to the use of IEEE 802.3 standards.

580.    Rockstar and Constellation have breached their express and implied F/RAND and royalty-free licensing commitments to license the '879 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco and/or its customers on

F/RAND or royalty-free terms;

c.      Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.      Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.      Transferring the '879 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

581.    Constellation breached its obligations when it brought suit against TWC in an attempt to circumvent its obligations to license the '879 patent on F/RAND or royalty-free terms.

582.    Through the foregoing acts, Rockstar and Constellation breached the express and implied commitments Nortel and other entities made to the IEEE to license the '879 patent on F/RAND or royalty-free terms.

583.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

584.    As a remedy for those breaches, Cisco respectfully requests the equitable

remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '879 patent on F/RAND or royalty-free licensing terms.

585.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

### FORTY-FIFTH CLAIM FOR RELIEF

BREACH OF CONTRACT WITH THE IETF TO LICENSE '862 PATENT ON F/RAND
TERMS
(AGAINST ROCKSTAR AND CONSTELLATION)

586.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

587.    Nortel provided a letter of assurance to the IETF agreeing to grant licenses to patents essential to any IETF, including RFC 4364, titled "BGP/MPLS IP Virtual Private Networks (VPNs)."  (*See* Exhibit 81).

588.    Nortel also provided a letter of assurance agreeing to grant licenses to any patent essential to any IETF standard.

589.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOAs submitted to the IETF and in accordance with IETF's IPR policies.

590.    IETF's policy, as amended over time, constitutes a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the IETF, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

591.    As industry participants that would potentially implement the standards established by the IETF, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IETF.

112

592.     RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

593.     As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Cisco and its customers for the '862 patent to the extent necessary to practice BGP/MPLS IP Virtual Private Networks (VPNs) technology, as standardized in RFC 4364.

594.     On information and belief, Constellation has accused Cisco's customers of infringing the '862 patent based on their use of RFC 4364.

595.     By accusing Cisco customers of infringing the '862 patent based solely on the use of technologies standardized in IETF standard RFC 4364, Rockstar and Constellation have alleged that the '862 patent is essential to the use of IETF standard RFC 4364.

596.     Rockstar and Constellation have breached their express and implied F/RAND and royalty-free licensing commitments to license the '862 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.     Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.     Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

c.     Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.     Requiring Cisco and/or its customers to execute non-disclosure

agreements intended to achieve licenses having non-uniform terms and obligations;

      e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

      f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

      g.      Transferring the '862 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

      597.      Through the foregoing acts, Rockstar and Constellation breached the express and implied commitments Nortel and other entities made to the IETF to license the '862 patent on F/RAND or royalty-free terms.

      598.      As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

      599.      As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '862 patent on F/RAND or royalty-free licensing terms.

      600.      As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FORTY-SIXTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE IEEE TO LICENSE '618 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

      601.      Cisco realleges and incorporates by reference the allegations set forth in

the other sections of its Counterclaims.

602.    Nortel provided a letter of assurance to the IEEE agreeing to grant licenses to patents essential to IEEE standard 802.17, titled "Resilient packet ring (RPR) access method and physical layer specifications."  (*See* Exhibit 67).

603.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOA submitted to the IEEE and in accordance with IEEE's IPR policies.

604.    IEEE's policy, as amended over time, constitutes a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the IEEE, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

605.    As industry participants that would potentially implement the standards established by the IEEE, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IEEE.

606.    RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

607.    As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Cisco and its customers for the '618 patent to the extent necessary to practice IEEE standard 802.17.

608.    On information and belief, Constellation has accused Cisco's customers of infringing the '618 patent based on their use of Resilient Packet Rings, as standardized by IEEE

standard 802.17, "Resilient packet ring (RPR) access method and physical layer specifications."

609.    By accusing Cisco customers of infringing the '618 patent based solely on the use of technologies standardized in IEEE standard 802.17, Rockstar and Constellation have alleged that the '618 patent is essential to the use of IEEE standard 802.17.

610.    Rockstar and Constellation have breached their express and implied F/RAND and royalty-free licensing commitments to license the '618 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

f.    Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.    Transferring the '618 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in

116

interest.

611.     Constellation breached its obligations when it brought suit against Windstream in an attempt to circumvent its obligations to license the '618 patent on F/RAND or royalty-free terms.

612.     Through the foregoing acts, Rockstar and Constellation breached the express and implied commitments Nortel and other entities made to the IEEE to license the '618 patent on F/RAND or royalty-free terms.

613.     As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

614.     As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '618 patent on F/RAND or royalty-free licensing terms.

615.     As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FORTY-SEVENTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE IETF TO LICENSE '048 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

616.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

617.     Nortel provided a letter of assurance to the IETF agreeing to grant licenses to patents essential to any IETF standard, including RFC 4090, titled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels."  (*See* Exhibit 81).

618.     Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOA in accordance with

117

IETF's IPR policies.

619.    IETF's policies, as amended over time, constitute a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the IETF, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

620.    As industry participants that would potentially implement the standards established by the IETF, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IETF.

621.    RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

622.    As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Cisco and its customers for the '048 patent to the extent necessary to practice Fast Reroute Extensions to RSVP-TE for LSP Tunnels technology, as standardized in RFC 4090.

623.    On information and belief, Constellation has accused Cisco's customers of infringing the '048 patent based on their use of RFC 4090.

624.    By accusing Cisco customers of infringing the '048 patent based solely on the use of technologies standardized in IETF standard RFC 4090, Rockstar and Constellation have alleged that the '048 patent is essential to the use of IETF standard RFC 4090.

625.    Rockstar and Constellation have breached their express and implied F/RAND and royalty-free licensing commitments to license the '048 patent on F/RAND or

royalty-free terms by engaging in at least the following acts:

        a.      Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

        b.      Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

        c.      Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

        d.      Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

        e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

        f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

        g.      Transferring the '048 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

        626.      Through the foregoing acts, Rockstar and Constellation breached the express and implied commitments Nortel and other entities made to the IETF to license the '048 patent on F/RAND or royalty-free terms.

        627.      As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

628.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '048 patent on F/RAND or royalty-free licensing terms.

629.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FORTY-EIGHTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE IETF TO LICENSE '917 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

630.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

631.    Nortel provided a letter of assurance to the IETF agreeing to grant licenses to patents essential to any IETF standard, including RFC 4090, titled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels."  (*See* Exhibit 81).

632.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOA in accordance with IETF's IPR policies.

633.    IETF's policies, as amended over time, constitute a contractual commitment to offer SEPs in accordance with the terms of those policies.  By participating in the IETF, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

634.    As industry participants that would potentially implement the standards established by the IETF, Cisco and its customers are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IETF.

635.     RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

636.     As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Cisco and its customers for the '917 patent to the extent necessary to practice Fast Reroute Extensions to RSVP-TE for LSP Tunnels technology, as standardized in RFC 4090.

637.     On information and belief, Constellation has accused Cisco's customers of infringing the '917 patent based on their use of RFC 4090.

638.     By accusing Cisco customers of infringing the '917 patent based solely on the use of technologies standardized in IETF standard RFC 4090, Rockstar and Constellation have alleged that the '917 patent is essential to the use of IETF standard RFC 4090.

639.     Rockstar and Constellation have breached their express and implied F/RAND and royalty-free licensing commitments to license the '917 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.     Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.     Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

c.     Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.      Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.      Transferring the '917 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

640.    Through the foregoing acts, Rockstar and Constellation breached the express and implied commitments Nortel and other entities made to the IETF to license the '917 patent on F/RAND or royalty-free terms.

641.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

642.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '917 patent on F/RAND or royalty-free licensing terms.

643.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FORTY-NINTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH 3GPP, ATIS, AND ETSI TO LICENSE '389 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

644.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

645.    Nortel and its subsidiaries participated in drafting portions of the 3GPP specification concerning IP Multimedia Subsystems ("IMS"), including, for example, section 7.2 "IMS Multimedia Telephony and Supplementary Services (IMSTSS)" of 3GPP Release 8.  The 3GPP IPR policies require that participant companies, such as Nortel, be members of certain member organizations, such as ATIS and ETSI, which obligate members to disclose certain patents related to specifications and standards to which they have contributed.  On information and belief, Nortel made representations to ATIS and/or ETSI committing to license any of its patents that read on 3GPP IMS standards on F/RAND and/or royalty-free terms in connection with its participation in drafting the 3GPP IMS specifications.

646.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations it made to the 3GPP, ATIS and/or ETSI and in accordance with the 3GPP, ATIS, and ETSI IPR policies.

647.    The policies of the 3GPP, ATIS, and ETSI, as amended over time, constitute a contractual commitment on the part of participants in standards development at 3GPP to offer SEPs in accordance with the terms of those policies.  By participating in the 3GPP, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer SEPs on F/RAND or royalty-free terms.

648.    As industry participants that would potentially implement the standards established by the 3GPP, Cisco and its customers are intended third-party beneficiaries of

Nortel's and other entities' contractual commitments to the 3GPP, ATIS, and ETSI.

649.    RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

650.    As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Cisco and its customers for the '389 patent to the extent necessary to practice IMS technology, as standardized in various 3GPP Releases.

651.    On information and belief, Constellation has accused Cisco's customers of infringing the '389 patent based on their use of IMS as standardized in various 3GPP Releases.

652.    By accusing Cisco customers of infringing the '389 patent based solely on the use of IMS technology standardized in 3GPP Releases, Rockstar and Constellation have alleged that the '389 patent is essential to the use of IME technology standardized in 3GPP Releases.

653.    Rockstar and Constellation have breached their express and implied F/RAND and royalty-free licensing commitments to license the '389 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco and/or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.      Requiring Cisco and/or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, that have adopted well-established digital telecommunication standards; and

f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.      Transferring the '389 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

654.    Through the foregoing acts, Rockstar and Constellation breached the express and implied commitments Nortel and other entities made to the 3GPP, ATIS, and ETSI to license the '389 patent on F/RAND or royalty-free terms.

655.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

656.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '389 patent on F/RAND or royalty-free licensing terms.

657.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FIFTIETH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IEEE TO LICENSE '2397 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR)

658.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

659.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '2397 patent, on F/RAND or royalty-free terms. (*See* Exhibits 65-66).

660.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

661.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

662.    As a successor in interest to the Nortel patent portfolio, Rockstar was obligated to honor F/RAND, or royalty-free licensing commitments with respect to the '2397 patent and all other SEPs in the Nortel patent portfolio.

663.    Rockstar has breached the covenant of good faith and fair dealing implied in its agreement with the IEEE to license the '2397 patent on F/RAND terms by engaging in at least the following acts:

126

a.      Making or having made public statements to the effect that Nortel's

F/RAND or royalty-free licensing commitments would not be honored;

b.      Refusing to offer to license SEPs to Cisco or its customers on F/RAND or

royalty-free terms;

c.      Refusing to enter into licensing negotiations with Cisco or its customers in

the absence of highly-restrictive non-disclosure agreements;

d.      Requiring Cisco or its customers to execute non-disclosure agreements

intended to achieve licenses having non-uniform terms and obligations;

e.      Using the protections afforded it under non-disclosure agreements to

conduct its campaign to extort industry participants, including Cisco or its customers, that have

adopted well-established digital telecommunication standards; and

f.      Refusing to make the terms of existing license agreements and

commitments publicly available or to offer such arrangements to an unrestricted number of

applicants on nondiscriminatory terms and conditions.

664.    Through the foregoing acts, Rockstar unfairly and in bad faith, arbitrarily

and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers

under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers

from receiving the benefits they were entitled to receive under commitments to license the '2397

patent on F/RAND or royalty-free terms.

665.    As a result of the foregoing breaches, Cisco has been injured in its

business or property, and is threatened by imminent loss of profits, loss of customers, and loss of

goodwill.

666.    As a remedy for those breaches, Cisco respectfully requests the equitable

remedy of specific performance by Rockstar of its obligations to provide licenses to the '2397 patent on F/RAND or royalty-free licensing terms.

667.    As an additional remedy for Rockstar's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FIFTY-FIRST CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE ITU TO LICENSE '496 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR AND BOCKSTAR)

668.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

669.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '496 patent, on F/RAND or royalty-free terms. (*See* Exhibits 68-71).

670.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

671.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

672.    As successors in interest to the Nortel patent portfolio, Rockstar and Bockstar were obligated to honor F/RAND, or royalty-free licensing commitments with respect

to the '496 patent and all other SEPs in the Nortel patent portfolio.

673.    Rockstar and Bockstar have breached the covenant of good faith and fair deadline implied in its agreement with the ITU to license the '496 patent on F/RAND terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco or its customers in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have adopted well-established digital telecommunication standards; and

f.    Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.    Transferring the '496 patent to Bockstar with the knowledge that Bockstar would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

674.    Through the foregoing acts, Rockstar and Bockstar unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and

its customers from receiving the benefits they were entitled to receive under commitments to license the '496 patent on F/RAND or royalty-free terms.

675.    As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

676.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Bockstar of their obligations to provide licenses to the '496 patent on F/RAND or royalty-free licensing terms.

677.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FIFTY-SECOND CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE ITU TO LICENSE '519 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

678.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

679.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '519 patent, on F/RAND or royalty-free terms. (*See* Exhibits 68-71).

680.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual

commitments.

681.    At all relevant times, Cisco and its customers have duly performed all

material conditions, covenants, and promises on their part to be performed under Nortel's

contractual commitments.

682.    As successors in interest to the Nortel patent portfolio, Rockstar and

Constellation were obligated to honor F/RAND, or royalty-free licensing commitments with

respect to the '519 patent and all other SEPs in the Nortel patent portfolio.

683.    Rockstar and Constellation have breached the covenant of good faith and

fair dealing implied in their agreement with the ITU to license the '519 patent on F/RAND terms

by engaging in at least the following acts:

a.      Making or having made public statements to the effect that Nortel's

F/RAND or royalty-free licensing commitments would not be honored;

b.      Refusing to offer to license SEPs to Cisco or its customers on F/RAND or

royalty-free terms;

c.      Refusing to enter into licensing negotiations with Cisco or its customers in

the absence of highly-restrictive non-disclosure agreements;

d.      Requiring Cisco or its customers to execute non-disclosure agreements

intended to achieve licenses having non-uniform terms and obligations;

e.      Using the protections afforded it under non-disclosure agreements to

conduct its campaign to extort industry participants, including Cisco or its customers, that have

adopted well-established digital telecommunication standards; and

f.      Refusing to make the terms of existing license agreements and

commitments publicly available or to offer such arrangements to an unrestricted number of

applicants on nondiscriminatory terms and conditions.

       g.    Transferring the '519 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

       684.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '519 patent on F/RAND or royalty-free terms.

       685.    As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

       686.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '519 patent on F/RAND or royalty-free licensing terms.

       687.    As an additional remedy for Rockstar's and Constellation's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

### FIFTY-THIRD CLAIM FOR RELIEF

#### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE ITU TO LICENSE '118 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR AND BOCKSTAR)

       688.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

       689.    As discussed above, Nortel entered several specific licensing

commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '118 patent, on F/RAND or royalty-free terms. (*See* Exhibit 72).

690.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

691.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

692.    As successors in interest to the Nortel patent portfolio, Rockstar and Bockstar were obligated to honor F/RAND or royalty-free licensing commitments with respect to the '118 patent and all other SEPs in the Nortel patent portfolio.

693.    Rockstar and Bockstar have breached the covenant of good faith and fair dealing in their agreement with the ITU to license the '118 patent on F/RAND terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco or its customers in

the absence of highly-restrictive non-disclosure agreements;

       d.      Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

       e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have adopted well-established digital telecommunication standards; and

       f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

       g.      Transferring the '118 patent to Bockstar with the knowledge that Bockstar would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

       694.      Through the foregoing acts, Rockstar and Bockstar unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '118 patent on F/RAND or royalty-free terms.

       695.      As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

       696.      As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Bockstar of their obligations to provide licenses to the '118 patent on F/RAND or royalty-free licensing terms.

       697.      As an additional remedy for those breaches, Cisco respectfully requests

restitution and/or expectancy damages in an amount to be proven at trial.

**FIFTY-FOURTH CLAIM FOR RELIEF**

<u>BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN
CONTRACT WITH THE ITU TO LICENSE '326 PATENT ON F/RAND TERMS
(AGAINST ROCKSTAR AND BOCKSTAR)</u>

698.    Cisco realleges and incorporates by reference the allegations set forth in
the other sections of its Counterclaims.

699.    As discussed above, Nortel entered several specific licensing
commitments and general licensing commitments that obligated Nortel and its successors to
provide licenses to certain patents, including the '326 patent, on F/RAND or royalty-free terms.
(*See* Exhibit 72).

700.    Nortel's contractual commitments contain a covenant implied by law that
Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and
with fair dealing, would take no action that would deprive Cisco and its customers of their
benefits under Nortel's contractual commitments, and would take such actions as were necessary
to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual
commitments.

701.    At all relevant times, Cisco and its customers have duly performed all
material conditions, covenants, and promises on their part to be performed under Nortel's
contractual commitments.

702.    As successors in interest to the Nortel patent portfolio, Rockstar and
Bockstar were obligated to honor F/RAND or royalty-free licensing commitments with respect to
the '326 patent and all other SEPs in the Nortel patent portfolio.

703.    Rockstar and Bockstar have breached the covenant of good faith and fair
dealing implied in its agreement with the ITU to license the '326 patent on F/RAND terms by

135

engaging in at least the following acts:

      a.      Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

      b.      Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

      c.      Refusing to enter into licensing negotiations with Cisco or its customers in the absence of highly-restrictive non-disclosure agreements;

      d.      Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

      e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have adopted well-established digital telecommunication standards; and

      f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

      g.      Transferring the '326 patent to Bockstar with the knowledge that Bockstar would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

704.     Through the foregoing acts, Rockstar and Bockstar unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '326 patent on F/RAND or royalty-free terms.

705.     As a result of the foregoing breaches, Cisco has been injured in its

business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

706.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Bockstar of their obligations to provide licenses to the '326 patent on F/RAND or royalty-free licensing terms.

707.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FIFTY-FIFTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE ITU TO LICENSE '4895 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

708.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

709.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '4895 patent, on F/RAND or royalty-free terms. (*See* Exhibits 73-75).

710.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

711.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's

137

contractual commitments.

712.    As successors in interest to the Nortel patent portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the '4895 patent and all other SEPs in the Nortel patent portfolio.

713.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the ITU to license the '4895 patent on F/RAND terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco or its customers in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have adopted well-established digital telecommunication standards; and

f.    Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.    Transferring the '4895 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in

interest.

714.     Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '4895 patent on F/RAND or royalty-free terms.

715.     As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

716.     As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '4895 patent on F/RAND or royalty-free licensing terms.

717.     As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FIFTY-SIXTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IEEE TO LICENSE '990 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR AND SPHERIX)

718.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

719.     As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '990 patent, on F/RAND or royalty-free terms. (*See* Exhibits 76-77).

720.     Nortel's contractual commitments contain a covenant implied by law that

139

Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

721.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

722.    As successors in interest to the Nortel patent portfolio, Rockstar and Spherix were obligated to honor F/RAND or royalty-free licensing commitments with respect to the '990 patent and all other SEPs in the Nortel patent portfolio.

723.    Rockstar and Spherix have breached the covenant of good faith and fair dealing implied in their agreement with the IEEE to license the '990 patent on F/RAND terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco or its customers in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to

140

conduct its campaign to extort industry participants, including Cisco or its customers, that have

adopted well-established digital telecommunication standards; and

       f.      Refusing to make the terms of existing license agreements and

commitments publicly available or to offer such arrangements to an unrestricted number of

applicants on nondiscriminatory terms and conditions.

       g.      Transferring the '990 patent to Spherix with the knowledge that Spherix

would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

Rockstar warranted that "Seller has not made any commitments to any standards or other

organization (including any open source organization) regarding licensing or not asserting the

Patents, and Seller has not entered into any agreement or other arrangement which would

otherwise obligate it to license or refrain from asserting the Patents."  (*See* Exhibit 24 at 8).

Rockstar is in breach of the explicit language of the IEEE bylaws, which state that "[t]he

Submitter [of any assurances] and all Affiliates (other than those Affiliates excluded in a Letter

of Assurance) shall not assign or otherwise transfer any rights in any Essential Patent Claims that

are the subject of such Letter of Assurance that they hold, control, or have the ability to license

with the intent of circumventing or negating any of the representations and commitments made

in such Letter of Assurance."  (*See* Exhibit 39 at 16).

       724.      Spherix also breached its express and implied F/RAND licensing

commitments to license the '990 patent on F/RAND terms by engaging in at least the following

acts:

       a.      Spherix's CEO publicly stated that he attributed 60 million dollars of

value to licenses to the SEP patents, reflecting a value far above F/RAND rates.

       b.      Spherix acquired F/RAND encumbered patents, including the '990 and

'999 patents, under an agreement to promptly bring a patent infringement suit. This agreement

to sue, rather than offer licenses on F/RAND terms as required by the commitments given by

Nortel to the IEEE, is an attempt by Rockstar and Spherix to circumvent their obligations to

license the '990 and '999 patents on F/RAND or royalty-free terms.

725.    Through the foregoing acts, Rockstar and Spherix unfairly and in bad

faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and

its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and

its customers from receiving the benefits they were entitled to receive under commitments to

license the '990 patent on F/RAND or royalty-free terms.

726.    As a result of the foregoing breaches, Cisco has been injured in its

business or property, and is threatened by imminent loss of profits, loss of customers, and loss of

goodwill.

727.    As a remedy for those breaches, Cisco respectfully requests the equitable

remedy of specific performance by Rockstar and Spherix of their obligations to provide licenses

to the '990 patent on F/RAND or royalty-free licensing terms.

728.    As an additional remedy for Rockstar's and Spherix's breaches, Cisco

respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

**FIFTY-SEVENTH CLAIM FOR RELIEF**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN
CONTRACT WITH THE IEEE TO LICENSE '999 PATENT ON F/RAND TERMS
(AGAINST ROCKSTAR AND SPHERIX)**

729.    Cisco realleges and incorporates by reference the allegations set forth in

the other sections of its Counterclaims.

730.    As discussed above, Nortel entered several specific licensing

commitments and general licensing commitments that obligated Nortel and its successors to

142

provide licenses to certain patents, including the '999 patent, on F/RAND or royalty-free terms. (*See* Exhibits 76-77).

731.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

732.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

733.    As successors in interest to the Nortel patent portfolio, Rockstar and Spherix were obligated to honor F/RAND or royalty-free licensing commitments with respect to the '999 patent and any other SEPs in the Nortel patent portfolio.

734.    Rockstar and Spherix have breached the covenant of good faith and fair dealing implied in their agreement with the IEEE to license the '999 patent on F/RAND terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco or its customers in the absence of highly-restrictive non-disclosure agreements;

d.      Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have adopted well-established digital telecommunication standards; and

f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.      Transferring the '999 patent to Spherix with the knowledge that Spherix would not honor its F/RAND or royalty-free licensing obligations as a successor in interest. Rockstar warranted that "Seller has not made any commitments to any standards or other organization (including any open source organization) regarding licensing or not asserting the Patents, and Seller has not entered into any agreement or other arrangement which would otherwise obligate it to license or refrain from asserting the Patents."  (*See* Exhibit 24 at 8). Rockstar is in breach of the explicit language of the IEEE bylaws, which state that "[t]he Submitter [of any assurances] and all Affiliates (other than those Affiliates excluded in a Letter of Assurance) shall not assign or otherwise transfer any rights in any Essential Patent Claims that are the subject of such Letter of Assurance that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in such Letter of Assurance."  (*See* Exhibit 39 at 16).

735.    Spherix also breached its express and implied F/RAND licensing commitments to license the '999 patent on F/RAND terms by engaging in at least the following acts:

a.     Spherix's CEO publicly stated that he attributed 60 million dollars of value to licenses to the SEP patents, reflecting a value far above F/RAND rates.

b.     Spherix acquired F/RAND encumbered patents, including the '990 and '999 patents, under an agreement to promptly bring a patent infringement suit.  This agreement to sue, rather than offer licenses on F/RAND terms as required by the commitments given by Nortel to the IEEE, is an attempt by Rockstar and Spherix to circumvent their obligations to license the '990 and '999 patents on F/RAND or royalty-free terms.

736.     Through the foregoing acts, Rockstar and Spherix unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '999 patent on F/RAND or royalty-free terms.

737.     As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

738.     As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Spherix of their obligations to provide licenses to the '999 patent on F/RAND or royalty-free licensing terms.

739.     As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FIFTY-EIGHTH CLAIM FOR RELIEF

BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN
CONTRACT WITH THE IEEE TO LICENSE '879 PATENT ON F/RAND TERMS
(AGAINST ROCKSTAR AND CONSTELLATION)

740.    Cisco realleges and incorporates by reference the allegations set forth in
the other sections of its Counterclaims.

741.    As discussed above, Nortel entered several specific licensing
commitments and general licensing commitments that obligated Nortel and its successors to
provide licenses to certain patents, including the '879 patent, on F/RAND or royalty-free terms.
(*See* Exhibit 80).

742.    Nortel's contractual commitments contain a covenant implied by law that
Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and
with fair dealing, would take no action that would deprive Cisco and its customers of their
benefits under Nortel's contractual commitments, and would take such actions as were necessary
to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual
commitments.

743.    At all relevant times, Cisco and its customers have duly performed all
material conditions, covenants, and promises on their part to be performed under Nortel's
contractual commitments.

744.    As successors in interest to the Nortel patent portfolio, Rockstar and
Constellation were obligated to honor F/RAND or royalty-free licensing commitments with
respect to the '879 patent and any other SEPs in the Nortel patent portfolio.

745.    Rockstar and Constellation have breached the covenant of good faith and
fair dealing implied in their agreement with the IEEE to license the '879 patent on F/RAND
terms by engaging in at least the following acts:

146

a.      Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.      Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.      Refusing to enter into licensing negotiations with Cisco or its customers in the absence of highly-restrictive non-disclosure agreements;

d.      Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have adopted well-established digital telecommunication standards; and

f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.      Transferring the '879 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

746.    Constellation breached the implied covenant of good faith and fair dealing when it brought suit against TWC in an attempt to circumvent its obligations to license the '879 patent on F/RAND or royalty-free terms.

747.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco

and its customers from receiving the benefits they were entitled to receive under commitments to license the '879 patent on F/RAND or royalty-free terms.

748.    As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

749.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '879 patent on F/RAND or royalty-free licensing terms.

750.    As an additional remedy for Rockstar's and Constellation's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FIFTH-NINTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IETF TO LICENSE '862 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

751.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

752.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '862 patent, on F/RAND or royalty-free terms. (*See* Exhibit 81).

753.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary

to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

754.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

755.    As successors in interest to the Nortel patent portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the '862 patent and any other SEPs in the Nortel patent portfolio.

756.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the IETF to license the '862 patent on F/RAND terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco or its customers in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have adopted well-established digital telecommunication standards; and

f.    Refusing to make the terms of existing license agreements and

149

commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.      Transferring the '862 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

757.   Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '862 patent on F/RAND or royalty-free terms.

758.   As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

759.   As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '862 patent on F/RAND or royalty-free licensing terms.

760.   As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## SIXTIETH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IEEE TO LICENSE '618 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

761.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

762.   As discussed above, Nortel entered several specific licensing

150

commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '618 patent, on F/RAND or royalty-free terms. (*See* Exhibit 67).

763.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

764.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

765.    As successors in interest to the Nortel patent portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the '618 patent and any other SEPs in the Nortel patent portfolio.

766.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the IEEE to license the '618 patent on F/RAND terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco or its customers in

the absence of highly-restrictive non-disclosure agreements;

        d.      Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

        e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have adopted well-established digital telecommunication standards; and

        f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

        g.      Transferring the '618 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

        767.      Constellation breached the implied covenant of good faith and fair dealing when it brought suit against Windstream in an attempt to circumvent its obligations to license the '618 patent on F/RAND or royalty-free terms.

        768.      Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '618 patent on F/RAND or royalty-free terms.

        769.      As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

770.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '618 patent on F/RAND or royalty-free licensing terms.

771.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## SIXTY-FIRST CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IETF TO LICENSE '048 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

772.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

773.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '048 patent, on F/RAND or royalty-free terms. (*See* Exhibit 81).

774.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

775.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

776.    As successors in interest to the Nortel patent portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the '048 patent and any other SEPs in the Nortel patent portfolio.

777.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the IETF to license the '048 patent on F/RAND terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco or its customers in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have adopted well-established digital telecommunication standards; and

f.    Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.    Transferring the '048 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

778.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '048 patent on F/RAND or royalty-free terms.

779.    As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

780.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '048 patent on F/RAND or royalty-free licensing terms.

781.    As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

<u>**SIXTY-SECOND CLAIM FOR RELIEF**</u>

<u>BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IETF TO LICENSE '917 PATENT ON F/RAND TERMS (AGAINST ROCKSTAR AND CONSTELLATION)</u>

782.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

783.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '917 patent, on F/RAND or royalty-free terms. (*See* Exhibit 81).

784.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and

155

with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

785.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

786.    As successors in interest to the Nortel patent portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the '917 patent and any other SEPs in the Nortel patent portfolio.

787.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the IETF to license the '917 patent on F/RAND terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Cisco or its customers in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have

adopted well-established digital telecommunication standards; and

      f.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

      g.     Transferring the '917 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

      788.     Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '917 patent on F/RAND or royalty-free terms.

      789.     As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

      790.     As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '917 patent on F/RAND or royalty-free licensing terms.

      791.     As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## SIXTY-THIRD CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH 3GPP, ATIS, AND ETSI TO LICENSE '389 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

792.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

793.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '389 patent, on F/RAND or royalty-free terms.

794.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under Nortel's contractual commitments.

795.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

796.    As successors in interest to the Nortel patent portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the '389 patent and any other SEPs in the Nortel patent portfolio.

797.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the 3GPP, ATIS, and/or ETIS to license the '389 patent on F/RAND terms by engaging in at least the following acts:

158

a.      Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.      Refusing to offer to license SEPs to Cisco or its customers on F/RAND or royalty-free terms;

c.      Refusing to enter into licensing negotiations with Cisco or its customers in the absence of highly-restrictive non-disclosure agreements;

d.      Requiring Cisco or its customers to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco or its customers, that have adopted well-established digital telecommunication standards; and

f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to an unrestricted number of applicants on nondiscriminatory terms and conditions.

g.      Transferring the '389 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor in interest.

798.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under these F/RAND or royalty-free licensing commitments, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '389 patent on F/RAND or royalty-free terms.

799.    As a result of the foregoing breaches, Cisco has been injured in its

business or property, and is threatened by imminent loss of profits, loss of customers, and loss of

goodwill.

800.    As a remedy for those breaches, Cisco respectfully requests the equitable

remedy of specific performance by Rockstar and Constellation of their obligations to provide

licenses to the '389 patent on F/RAND or royalty-free licensing terms.

801.    As an additional remedy for those breaches, Cisco respectfully requests

restitution and/or expectancy damages in an amount to be proven at trial.

### SIXTY-FOURTH CLAIM FOR RELIEF

**DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '2397 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR)**

802.    Cisco realleges and incorporates by reference the allegations set forth in

the other sections of its Counterclaims.

803.    As discussed above, Nortel voluntarily agreed with the IEEE that it would

provide licenses to the '2397 patent on F/RAND or royalty-free terms.  (*See* Exhibit 65).  The

agreement binds all successors in interest to the '2397 patent.

804.    As a subsequent owner to the Nortel patent portfolio, Rockstar is obligated

to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with

respect to the '2397 patent.

805.    Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-

free licensing commitments with respect to the '2397 patent by, among other things asserting its

patents against Gigabit Ethernet.

806.    A dispute therefore exists between the parties concerning whether

Rockstar is obligated to offer licenses for the '2397 patent on F/RAND or royalty-free terms.

160

807.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

808.    Cisco seeks a declaratory judgment that Rockstar has not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

809.    Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '2397 patent.

810.    Cisco further seeks a declaratory judgment that if Rockstar refuses to offer licenses to the '2397 patent to Cisco on F/RAND or royalty-free terms, the '2397 patent shall be unenforceable as to Cisco and its customers.

## SIXTY-FIFTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '496 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND BOCKSTAR)

811.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

812.    As discussed above, Nortel voluntarily agreed with the ITU that it would provide licenses to the '496 patent on F/RAND or royalty-free terms.  (*See* Exhibis 68-71).  The agreement binds all successors in interest to the '496 patent.

813.    As subsequent owners to the Nortel patent portfolio, Rockstar and Bockstar are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '496 patent.

814.    Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-free licensing commitments with respect to the '496 patent by, among other things, asserting its patents against optical networks as standardized by ITU standards G.707, G.709, G.783, and G.798.

161

815.     A dispute therefore exists between the parties concerning whether Rockstar and Bockstar are obligated to offer licenses for the '496 patent on F/RAND or royalty-free terms.

816.     The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

817.     Cisco seeks a declaratory judgment that Rockstar and Bockstar have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

818.     Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '496 patent.

819.     Cisco further seeks a declaratory judgment that if Rockstar or Bockstar refuse to offer licenses to the '496 patent to Cisco on F/RAND or royalty-free terms, the '496 patent shall be unenforceable as to Cisco and its customers.

## SIXTY-SIXTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '519 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

820.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

821.     As discussed above, Nortel voluntarily agreed with the ITU that it would provide licenses to the '519 patent on F/RAND or royalty-free terms.  (*See* Exhibits 68-71).  The agreement binds all successors in interest to the '519 patent.

822.     As subsequent owners to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '519 patent.

162

823.    Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-free licensing commitments with respect to the '519 patent by, among other things, asserting its patents against optical networks as standardized by ITU standards G.707, G.709, G.783, and G.798.

824.    A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '519 patent on F/RAND or royalty-free terms.

825.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

826.    Cisco seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

827.    Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '519 patent.

828.    Cisco further seeks a declaratory judgment that if Rockstar or Constellation refuse to offer licenses to the '519 patent to Cisco on F/RAND or royalty-free terms, the '519 patent shall be unenforceable as to Cisco and its customers.

## SIXTY-SEVENTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '118 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND BOCKSTAR)

829.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

830.    As discussed above, Nortel voluntarily agreed with the ITU that it would provide licenses to the '118 patent on F/RAND or royalty-free terms.  (*See* Exhibit 72).  The

agreement binds all successors in interest to the '118 patent.

831.    As subsequent owners to the Nortel patent portfolio, Rockstar and Bockstar are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '118 patent.

832.    Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-free licensing commitments with respect to the '118 patent by, among other things, asserting its patents against optical networks standardized by, among other things, asserting its patents against optical networks as standardized by ITU standard G.7041.

833.    A dispute therefore exists between the parties concerning whether Rockstar and Bockstar are obligated to offer licenses for the '118 patent on F/RAND or royalty-free terms.

834.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

835.    Cisco seeks a declaratory judgment that Rockstar and Bockstar have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

836.    Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '118 patent.

837.    Cisco further seeks a declaratory judgment that if Rockstar or Bockstar refuse to offer licenses to the '118 patent to Cisco on F/RAND or royalty-free terms, the '118 patent shall be unenforceable as to Cisco and its customers.

## SIXTY-EIGHTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '326 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND BOCKSTAR)

838.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

839.    As discussed above, Nortel voluntarily agreed with the ITU that it would provide licenses to the '326 patent on F/RAND or royalty-free terms.  (*See* Exhibit 72).  The agreement binds all successors in interest to the '326 patent.

840.    As subsequent owners to the Nortel patent portfolio, Rockstar and Bockstar are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '326 patent.

841.    Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-free licensing commitments with respect to the '326 patent, among other things, asserting its patents against optical networks as standardized by ITU standard G.7041.

842.    A dispute therefore exists between the parties concerning whether Rockstar and Bockstar are obligated to offer licenses for the '326 patent on F/RAND or royalty-free terms.

843.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

844.    Cisco seeks a declaratory judgment that Rockstar and Bockstar have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

845.    Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '326 patent.

846.   Cisco further seeks a declaratory judgment that if Rockstar or Bockstar refuse to offer licenses to the '326 patent to Cisco on F/RAND or royalty-free terms, the '326 patent shall be unenforceable as to Cisco and its customers.

### SIXTY-NINTH CLAIM FOR RELIEF

<u>DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '4895 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)</u>

847.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

848.   As discussed above, Nortel voluntarily agreed with the ITU that it would provide licenses to the '4895 patent on F/RAND or royalty-free terms.  (*See* Exhibits 73-75). The agreement binds all successors in interest to the '4895 patent.

849.   As subsequent owners to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '4895 patent by, among other things, asserting it against ADSL2 and VDSL2 technology as standardized by ITU standards G.993.2 and G.992.3.

850.   Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-free licensing commitments with respect to the '4895 patent.

851.   A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '4895 patent on F/RAND or royalty-free terms.

852.   The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

853.   Cisco seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free

terms.

854.    Cisco further seeks a declaratory judgment setting forth the F/RAND or

royalty-free terms for the '4895 patent.

855.    Cisco further seeks a declaratory judgment that if Rockstar or

Constellation refuse to offer licenses to the '4895 patent to Cisco on F/RAND or royalty-free

terms, the '4895 patent shall be unenforceable as to Cisco and its customers.

### SEVENTIETH CLAIM FOR RELIEF

DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '990 PATENT ON
F/RAND OR ROYALTY-FREE TERMS
(AGAINST ROCKSTAR AND SPHERIX)

856.    Cisco realleges and incorporates by reference the allegations set forth in

the other sections of its Counterclaims.

857.    As discussed above, Nortel voluntarily agreed with the IEEE that it would

provide provide licenses to the '990 patent on F/RAND or royalty-free terms.  (*See* Exhibits 76-

77).  The agreement binds all successors in interest to the '990 patent.

858.    As subsequent owners to the Nortel patent portfolio, Rockstar and Spherix

are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing

commitments with respect to the '990 patent.

859.    Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-

free licensing commitments with respect to the '990 patent by, among other things, asserting it

against VLANs as standardized by IEEE standards 802.3ac, 802.1q, and/or 802.1h.

860.    A dispute therefore exists between the parties concerning whether

Rockstar and Spherix are obligated to offer licenses for the '990 patent on F/RAND or royalty-

free terms.

861.    The dispute is of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment.

862.   Cisco seeks a declaratory judgment that Rockstar and Spherix have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

863.   Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '990 patent.

864.   Cisco further seeks a declaratory judgment that if Rockstar or Spherix refuse to offer licenses to the '990 patent to Cisco on F/RAND or royalty-free terms, the '990 patent shall be unenforceable as to Cisco and its customers.

## SEVENTY-FIRST CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '999 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND SPHERIX)

865.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

866.   As discussed above, Nortel voluntarily agreed with the IEEE that it would provide licenses to the '999 patent on F/RAND or royalty-free terms.  (*See* Exhibit 76-77).  The agreement binds all successors in interest to the '999 patent.

867.   As subsequent owners to the Nortel patent portfolio, Rockstar and Spherix are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '999 patent.

868.   Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-free licensing commitments with respect to the '999 patent by, among other things, asserting it against VLANs as standardized by IEEE standards 802.1q, and/or 802.1h.

869.   A dispute therefore exists between the parties concerning whether

168

Rockstar and Spherix are obligated to offer licenses for the '999 patent on F/RAND or royalty-free terms.

870.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

871.    Cisco seeks a declaratory judgment that Rockstar and Spherix have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

872.    Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '999 patent.

873.    Cisco further seeks a declaratory judgment that if Rockstar or Spherix refuse to offer licenses to the '990 patent to Cisco on F/RAND or royalty-free terms, the '999 patent shall be unenforceable as to Cisco and its customers.

**SEVENTY-SECOND CLAIM FOR RELIEF**

DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '879 PATENT ON
F/RAND OR ROYALTY-FREE TERMS
(AGAINST ROCKSTAR AND CONSTELLATION)

874.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

875.    As discussed above, Nortel voluntarily agreed to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of IEEE 802.3 standards.  (*See* Exhibit 80).

876.    As subsequent owners to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments.

169

877.     Rockstar and Constellation have publicly repudiated their duty to honor its F/RAND or royalty-free licensing commitments with respect to the '879 patent, by, among other things, asserting its patents against IEEE 802.3 standards.

878.     A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '879 patent on F/RAND or royalty-free terms.

879.     The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

880.     Cisco seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

881.     As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '879 patent on F/RAND or royalty-free licensing terms.

882.     As an additional remedy for those breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## SEVENTY-THIRD CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '862 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

883.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

884.     As discussed above, Nortel voluntarily agreed to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, to the extent such technology is essential to comply with such IETF

170

standard.  (*See* Exhibit 81).

885.    As subsequent owners to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '862 patent.

886.    Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-free licensing commitments with respect to the '862 patent, by, among other things, asserting its patents against one or more implementations of RFC 4364, titled "BGP/MPLS IP Virtual Private Networks (VPNs)."

887.    A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '862 patent on F/RAND or royalty-free terms.

888.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

889.    Cisco seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

890.    Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '862 patent.

891.    Cisco further seeks a declaratory judgment that if Rockstar or Constellation refuse to offer licenses to the '862 patent to Cisco on F/RAND or royalty-free terms, the '862 patent shall be unenforceable as to Cisco and its customers.

## SEVENTY-FOURTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '618 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

892.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

893.    Nortel provided a letter of assurance agreeing to license the '618 patent on F/RAND terms to the extent necessary to practice IEEE standard 802.17.  (*See* Exhibit 67).

894.    As subsequent owners to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '618 patent.

895.    Rockstar and Constellation have publicly repudiated thei duty to honor its F/RAND or royalty-free licensing commitments with respect to the '618 patent, by, among other things, asserting its patents against Resilient Packet Rings as standardized in 802.17, titled "Resilient packet ring (RPR) access method and physical layer specifications."

896.    A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '618 patent on F/RAND or royalty-free terms.

897.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

898.    Cisco seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

899.    Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '618 patent.

900.     Cisco further seeks a declaratory judgment that if Rockstar or

Constellation refuse to offer licenses to the '618 patent to Cisco on F/RAND or royalty-free

terms, the '618 patent shall be unenforceable as to Cisco and its customers.

## SEVENTY-FIFTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '048 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

901.     Cisco realleges and incorporates by reference the allegations set forth in

the other sections of its Counterclaims.

902.     As discussed above, Nortel voluntarily agreed to make available

nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such

patent rights it owns, to the extent such technology is essential to comply with such IETF

standard.  (*See* Exhibit 81).

903.     As subsequent owners to the Nortel patent portfolio, Rockstar and

Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free

licensing commitments with respect to the '048 patent.

904.     Rockstar and Constellation have publicly repudiated their duty to honor its

F/RAND or royalty-free licensing commitments with respect to the '048 patent, by, among other

things, bringing suit against TWC for using RFC 4090 "Fast Reroute Extensions to RSVP-TE for

LSP Tunnels."

905.     A dispute therefore exists between the parties concerning whether

Rockstar and Constellation are obligated to offer licenses for the '048 patent on F/RAND or

royalty-free terms.

906.     The dispute is of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment.

907.    Cisco seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

908.    Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '048 patent.

909.    Cisco further seeks a declaratory judgment that if Rockstar or Constellation refuse to offer licenses to the '048 patent to Cisco on F/RAND or royalty-free terms, the '048 patent shall be unenforceable as to Cisco and its customers.

## SEVENTY-SIXTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '917 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

910.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

911.    As discussed above, Nortel voluntarily agreed to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, to the extent such technology is essential to comply with such IETF standard.  (*See* Exhibit 81).

912.    As subsequent owners to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '917 patent.

913.    Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-free licensing commitments with respect to the '917 patent, by, among other things, bringing suit against TWC and Windstream for using RFC 4090 titled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels."

174

914.    A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '917 patent on F/RAND or royalty-free terms.

915.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

916.    Cisco seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

917.    Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '917 patent.

918.    Cisco further seeks a declaratory judgment that if Rockstar or Constellation refuse to offer licenses to the '917 patent to Cisco on F/RAND or royalty-free terms, the '917 patent shall be unenforceable as to Cisco and its customers.

## SEVENTY-SEVENTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '389 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

919.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

920.    As discussed above, Nortel voluntarily agreed to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, to the extent such technology is essential to comply with 3GPP, ATIS, and/or ETIS standards, such as IMS.

921.    As subsequent owners to the Nortel patent portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free

175

licensing commitments with respect to the '389 patent.

922.    Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-free licensing commitments with respect to the '389 patent, by, among other things, asserting its patents against IMS, as standardized in various 3GPP Releases.

923.    A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '389 patent on F/RAND or royalty-free terms.

924.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

925.    Cisco seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to Cisco and its customers on terms consistent with F/RAND or royalty-free terms.

926.    Cisco further seeks a declaratory judgment setting forth the F/RAND or royalty-free terms for the '389 patent.

927.    Cisco further seeks a declaratory judgment that if Rockstar or Constellation refuse to offer licenses to the '389 patent to Cisco on F/RAND or royalty-free terms, the '389 patent shall be unenforceable as to Cisco and its customers.

## SEVENTY-EIGHTH CLAIM FOR RELIEF

### BREACH OF CABLELABS CONTRACTS WITH RESPECT TO THE '474 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

928.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

929.    One or more of Rockstar's and Constellation's predecessors in interest in the '474 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-

transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by them or their affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

930.    As a DOCSIS and PacketCable Licensor, Cisco obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '474 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

931.    As a DOCSIS and PacketCable Licensor and seller of Cisco products that are certified for compliance with DOCSIS and PacketCable, Cisco is an intended third-party beneficiary of the CableLabs agreements.

932.    Rockstar and Constellation have breached their express and implied licensing commitments by engaging in the following acts:

a.    Accusing Cisco's customers of infringing the '474 patent by using DOCSIS and/or PacketCable;

b.    Accusing Cisco's customers of infringing the '474 patent by using Cisco equipment that are certified for compliance with DOCSIS and/or PacketCable, including CMTSs, CMs, STBs, eMTAs, and Routers;

c.    Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.    Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, to pay

licensing fees for patents that are already licensed to those industry participants.

933.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

934.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

935.    As an additional remedy for Rockstar's and Constellation's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## SEVENTY-NINTH CLAIM FOR RELIEF

### BREACH OF CABLELABS CONTRACTS WITH RESPECT TO THE '197 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

936.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

937.    One or more of Rockstar's and Constellation's predecessors in interest in the '197 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by them or their affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

938.    As a DOCSIS and PacketCable Licensor, Cisco obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '197 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

939.    As a DOCSIS and PacketCable Licensor and seller of Cisco products that

are certified for compliance with DOCSIS and PacketCable, Cisco is an intended third-party beneficiary of the CableLabs agreements.

940.    Rockstar and Constellation have breached their express and implied licensing commitments by engaging in the following acts:

a.      Accusing Cisco's customers of infringing the '197 patent by using DOCSIS and/or PacketCable;

b.      Accusing Cisco's customers of infringing the '197 patent by using Cisco equipment that are certified for compliance with DOCSIS and/or PacketCable including CMTSs, CMs, STBs, eMTAs, and Routers;

c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.      Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, to pay licensing fees for patents that are already licensed to those industry participants.

941.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

942.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

943.    As an additional remedy for Rockstar's and Constellation's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at

trial.

## EIGHTIETH CLAIM FOR RELIEF

### BREACH OF CABLELABS CONTRACTS WITH RESPECT TO THE '893 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

944.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

945.    One or more of Rockstar's and Constellation's predecessors in interest in the '893 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by them or their affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

946.    As a DOCSIS and PacketCable Licensor, Cisco obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '893 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

947.    As a DOCSIS and PacketCable Licensor and seller of Cisco products that are certified for compliance with DOCSIS and PacketCable, Cisco is an intended third-party beneficiary of the CableLabs agreements.

948.    Rockstar and Constellation have breached their express and implied licensing commitments by engaging in the following acts:

a.    Accusing Cisco's customers of infringing the '893 patent by using DOCSIS and/or PacketCable;

b.    Accusing Cisco's customers of infringing the '893 patent by using Cisco equipment that are certified for compliance with DOCSIS and/or PacketCable including CMTSs,

CMs, STBs, and eMTAs.

      c.    Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

      d.    Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

      e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, to pay licensing fees for patents that are already licensed to those industry participants.

    949.    As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

    950.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

    951.    As an additional remedy for Rockstar's and Constellation's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## EIGHTY-FIRST CLAIM FOR RELIEF

### BREACH OF CABLELABS CONTRACTS WITH RESPECT TO THE '253 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

    952.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

    953.    One or more of Rockstar's and Constellation's predecessors in interest in the '253 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all

current and future patents owned by them or their affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

954.     As a DOCSIS and PacketCable Licensor, Cisco obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '253 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

955.     As a DOCSIS and PacketCable Licensor and seller of Cisco products that are certified for compliance with DOCSIS and PacketCable, Cisco is an intended third-party beneficiary of the CableLabs agreements.

956.     Rockstar and Constellation have breached their express and implied licensing commitments by engaging in the following acts:

a.     Accusing Cisco's customers of infringing the '253 patent by using DOCSIS and/or PacketCable;

b.     Accusing Cisco's customers of infringing the '253 patent by using Cisco equipment that are certified for compliance with DOCSIS and/or PacketCable including CMTSs, CMs, STBs, and eMTAs;

c.     Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.     Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

e.     Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, to pay licensing fees for patents that are already licensed to those industry participants.

957. As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

958. As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

959. As an additional remedy for Rockstar's and Constellation's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## EIGHTY-SECOND CLAIM FOR RELIEF

### BREACH OF CABLELABS CONTRACTS WITH RESPECT TO THE '298 PATENT (AGAINST ROCKSTAR)

960. Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

961. One or more of Rockstar's and Constellation's predecessors in interest in the '298 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by them or their affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

962. As a DOCSIS and PacketCable Licensor, Cisco obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '298 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

963. As a DOCSIS and PacketCable Licensor and seller of Cisco products that are certified for compliance with DOCSIS and PacketCable, Cisco is an intended third-party

beneficiary of the CableLabs agreements.

964.   Rockstar has breached its express and implied licensing commitments by engaging in the following acts:

a.   Accusing Cisco's customers of infringing the '298 patent by using DOCSIS and/or PacketCable;

b.   Accusing Cisco's customers of infringing the '298 patent by using Cisco equipment that are certified for compliance with DOCSIS and/or PacketCable including CMTSs, CMs, eMTAs, and Routers;

c.   Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.   Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

e.   Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, to pay licensing fees for patents that are already licensed to those industry participants.

965.   As a result of those breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

966.   As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar of its obligations to provide licenses on royalty-free licensing terms.

967.   As an additional remedy for Rockstar's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## EIGHTY-THIRD CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CABLELABS CONTRACTS WITH RESPECT TO THE '474 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

968.     Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

969.     As discussed above, one or more of Rockstar's and Constellation's predecessors in interest signed license agreements with CableLabs committing to provide licenses to certain patents, including the '474 patent, on royalty-free terms.

970.     The CableLabs contractual commitments to license the '474 patent on royalty-free terms are irrevocable and run with the patent and, as successors in interest to the '474 patent, Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

971.     The CableLabs contractual commitments contain a covenant implied by law that the CableLabs licensors would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under the CableLabs contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under the CableLabs contractual commitments.

972.     At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under the CableLabs contractual commitments.

973.     As successors in interest to the '474 patent, Rockstar and Constellation were obligated to honor the CableLabs license commitments.

974.     Rockstar and Constellation have breached the covenant of good faith and

185

fair dealing implied in the CableLabs Agreements by engaging in the following acts:

a.      Accusing Cisco's customers of infringing the '474 patent by using DOCSIS and/or PacketCable;

b.      Accusing Cisco's customers of infringing the '474 patent by using Cisco equipment that are certified for compliance with DOCSIS and/or PacketCable including CMTSs, CMs, STBs, eMTAs, and Routers;

c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.      Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, to pay licensing fees for patents that are already licensed to those industry participants.

975.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under the CableLabs agreements, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '474 patent on royalty-free terms.

976.    As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

977.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide

licenses on royalty-free licensing terms.

978.    As an additional remedy for Rockstar's and Constellation's breaches,

Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at

trial.

## EIGHTY-FOURTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CABLELABS CONTRACTS WITH RESPECT TO THE '197 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

979.    Cisco realleges and incorporates by reference the allegations set forth in

the other sections of its Counterclaims.

980.    As discussed above, one or more of Rockstar's and Constellation's

predecessors in interest signed license agreements with CableLabs committing to provide

licenses to certain patents, including the '197 patent, on royalty-free terms.

981.    The CableLabs contractual commitments to license the '197 patent on

royalty-free terms are irrevocable and run with the patent and, as successors in interest to the

'197 patent, Rockstar and Constellation are obligated to honor the CableLabs contractual

commitments.

982.    The CableLabs contractual commitments contain a covenant implied by

law that the CableLabs licensors would deal with Cisco and its customers in good faith and with

fair dealing, would take no action that would deprive Cisco and its customers of their benefits

under the CableLabs contractual commitments, and would take such actions as were necessary to

protect Cisco's and its customers' enjoyment of their rights under the CableLabs contractual

commitments.

983.    At all relevant times, Cisco and its customers have duly performed all

material conditions, covenants, and promises on their part to be performed under the CableLabs

contractual commitments.

984.    As successors in interest to the '197 patent, Rockstar and Constellation were obligated to honor the CableLabs license commitments.

985.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the CableLabs Agreements by engaging in the following acts:

a.    Accusing Cisco's customers of infringing the '197 patent by using DOCSIS and/or PacketCable;

b.    Accusing Cisco's customers of infringing the '197 patent by using Cisco equipment that are certified for compliance with DOCSIS and/or PacketCable including CMTSs, CMs, STBs, eMTAs, and Routers;

c.    Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.    Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, to pay licensing fees for patents that are already licensed to those industry participants.

986.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under the CableLabs agreements, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '197 patent on royalty-free terms.

987.    As a result of the foregoing breaches, Cisco has been injured in its

business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

988.    As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

989.    As an additional remedy for Rockstar's and Constellation's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## EIGHTY-FIFTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CABLELABS CONTRACTS WITH RESPECT TO THE '893 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

990.    Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

991.    As discussed above, one or more of Rockstar's and Constellation's predecessors in interest signed license agreements with CableLabs committing to provide licenses to certain patents, including the '893 patent, on royalty-free terms.

992.    The CableLabs contractual commitments to license the '893 patent on royalty-free terms are irrevocable and run with the patent and, as successors in interest to the '893 patent, Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

993.    The CableLabs contractual commitments contain a covenant implied by law that the CableLabs licensors would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under the CableLabs contractual commitments, and would take such actions as were necessary to

189

protect Cisco's and its customers' enjoyment of their rights under the CableLabs contractual commitments.

994.    At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under the CableLabs contractual commitments.

995.    As successors in interest to the '893 patent, Rockstar and Constellation were obligated to honor the CableLabs license commitments.

996.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the CableLabs Agreements by engaging in the following acts:

a.    Accusing Cisco's customers of infringing the '893 patent by using DOCSIS and/or PacketCable;

b.    Accusing Cisco's customers of infringing the '893 patent by using Cisco equipment that are certified for compliance with DOCSIS and/or PacketCable including CMTSs, CMs, STBs, and eMTAs.

c.    Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.    Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers, to pay licensing fees for patents that are already licensed to those industry participants.

997.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco

and its customers under the CableLabs agreements, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '893 patent on royalty-free terms.

998.   As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

999.   As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

1000.   As an additional remedy for Rockstar's and Constellation's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## EIGHTY-SIXTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CABLELABS CONTRACTS WITH RESPECT TO THE '253 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

1001.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

1002.   As discussed above, one or more of Rockstar's and Constellation's predecessors in interest signed license agreements with CableLabs committing to provide licenses to certain patents, including the '253 patent, on royalty-free terms.

1003.   The CableLabs contractual commitments to license the '253 patent on royalty-free terms are irrevocable and run with the patent and, as successors in interest to the '253 patent, Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

191

1004.   The CableLabs contractual commitments contain a covenant implied by law that the CableLabs licensors would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under the CableLabs contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under the CableLabs contractual commitments.

1005.   At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under the CableLabs contractual commitments.

1006.   As successors in interest to the '893 patent, Rockstar and Constellation were obligated to honor the CableLabs license commitments.

1007.   Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the CableLabs Agreements by engaging in the following acts:

a.      Accusing Cisco's customers of infringing the '253 patent by using DOCSIS and/or PacketCable;

b.      Accusing Cisco's customers of infringing the '253 patent by using Cisco equipment that are certified for compliance with DOCSIS and/or PacketCable including CMTSs, CMs, STBs, and eMTAs;

c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.      Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

e.      Using the protections afforded it under non-disclosure agreements to

conduct its campaign to extort industry participants, including Cisco and/or its customers to, pay licensing fees for patents that are already licensed to those industry participants.

1008.   Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under the CableLabs agreements, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '253 patent on royalty-free terms.

1009.   As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

1010.   As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

1011.   As an additional remedy for Rockstar's and Constellation's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## EIGHTY-SEVENTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CABLELABS CONTRACTS WITH RESPECT TO THE '298 PATENT (AGAINST ROCKSTAR)

1012.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

1013.   As discussed above, one or more of Rockstar's predecessors in interest signed license agreements with CableLabs committing to provide licenses to certain patents, including the '298 patent, on royalty-free terms.

1014.   The CableLabs contractual commitments to license the '298 patent on royalty-free terms are irrevocable and run with the patent and, as a successor in interest to the '298 patent, Rockstar is obligated to honor the CableLabs contractual commitments.

1015.   The CableLabs contractual commitments contain a covenant implied by law that the CableLabs licensors would deal with Cisco and its customers in good faith and with fair dealing, would take no action that would deprive Cisco and its customers of their benefits under the CableLabs contractual commitments, and would take such actions as were necessary to protect Cisco's and its customers' enjoyment of their rights under the CableLabs contractual commitments.

1016.   At all relevant times, Cisco and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under the CableLabs contractual commitments.

1017.   As a successor in interest to the '298 patent, Rockstar was obligated to honor the CableLabs license commitments.

1018.   Rockstar has breached the covenant of good faith and fair dealing implied in the CableLabs Agreements by engaging in the following acts:

a.      Accusing Cisco's customers of infringing the '298 patent by using DOCSIS and/or PacketCable;

b.      Accusing Cisco's customers of infringing the '298 patent by using Cisco equipment that are certified for compliance with DOCSIS and/or PacketCable including CMTSs, CMs, eMTAs, and Routers;

c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.      Refusing to enter into licensing negotiations with Cisco and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Cisco and/or its customers to, pay licensing fees for patents that are already licensed to those industry participants.

1019.   Through the foregoing acts, Rockstar unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of Cisco and its customers under the CableLabs agreements, prevented Cisco and its customers from receiving the benefits they were entitled to receive under commitments to license the '298 patent on royalty-free terms.

1020.   As a result of the foregoing breaches, Cisco has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

1021.   As a remedy for those breaches, Cisco respectfully requests the equitable remedy of specific performance by Rockstar of its obligations to provide licenses on royalty-free licensing terms.

1022.   As an additional remedy for Rockstar's breaches, Cisco respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## EIGHTY-EIGHTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF DOCSIS AND PACKETCABLE LICENSE AND EXHAUSTION OF '474 PATENT RIGHTS (AGAINST ROCKSTAR AND CONSTELLATION)

1023.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

1024.   An actual controversy exists between Cisco and Constellation as to whether Cisco and its customers are beneficiaries of the fully sublicensable royalty-free license

Nortel (including its predecessors in interest LANcity and Bay) gave to CableLabs under the '474 patent, which CableLabs sublicensed to implementers of the DOCSIS standard or the PacketCable standard.

1025.   The issue of whether Cisco and its customers are the beneficiaries of a royalty-free license under the '474 patent is ripe for adjudication because Rockstar has insisted that Cisco's customers infringe the '474 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs using at least the following products:

a.      Cisco Cable Modem Termination Systems ("CMTSs"),

b.      Cisco Cable Modems ("CMs"),

c.      Cisco Set-Top Boxes ("STBs"),

d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

e.      Cisco Cable Cards, and

f.      Cisco Routers.

1026.   By alleging infringement of the '474 patent based solely on Cisco's customers' use of DOCSIS or PacketCable, Rockstar has alleged that the '474 patent is essential to DOCSIS and PacketCable.

1027.   Rockstar's allegations against Cisco's customers are barred pursuant to the licenses that Cisco holds to at least the '474 patent based on an express or implied license and/or the doctrine of patent exhaustion.

1028.   A judicial declaration is necessary and appropriate to decide whether Cisco and its customers are beneficiaries of a royalty-free license under the '474 patent.

1029.   In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between Cisco, Rockstar, and Constellation with respect to whether the '474

is expressly or impliedly licensed to Cisco and/or exhausted with respect to Cisco's customers.

1030.   Absent a declaration that Rockstar's and Constellation's rights in the '474 patents are expressly or impliedly licensed to Cisco and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '474 patent against Cisco's customers and thereby cause Cisco irreparable harm and injury.

1031.   Based on the forgoing, Cisco respectfully requests a declaratory judgment that Cisco is a beneficiary of a royalty-free license to the '474 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer royalty-free licenses to the '474 patent to Cisco, it shall be unenforceable as to Cisco and its customers with respect to DOCSIS and/or PacketCable.

1032.   Based on the forgoing, Cisco respectfully requests a declaratory judgment that the following Cisco products (and/or their use by Cisco and its customers) are licensed to the '474 patent to practice DOCSIS and/or PacketCable:

      a.      Cisco Cable Modem Termination Systems ("CMTSs"),

      b.      Cisco Cable Modems ("CMs"),

      c.      Cisco Set-Top Boxes ("STBs"),

      d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

      e.      Cisco Cable Cards, and

      f.      Cisco Routers.

## EIGHTY-NINTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF DOCSIS AND PACKETCABLE LICENSE AND EXHAUSTION OF '197 PATENT RIGHTS (AGAINST ROCKSTAR AND CONSTELLATION)

1033.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

1034.   An actual controversy exists between Cisco and Constellation as to whether Cisco and its customers are beneficiaries of the fully sublicensable royalty-free license Nortel (including its predecessors in interest LANcity and Bay) gave to CableLabs under the '197 patent, which CableLabs sublicensed to implementers of the DOCSIS standard or the PacketCable standard.

1035.   The issue of whether Cisco and its customers are the beneficiaries of a royalty-free license under the '197 patent is ripe for adjudication because Rockstar has insisted that Cisco's customers infringe the '197 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs using one or more of the following products:

      a.      Cisco Cable Modem Termination Systems ("CMTSs"),

      b.      Cisco Cable Modems ("CMs"),

      c.      Cisco Set-Top Boxes ("STBs"),

      d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

      e.      Cisco Cable Cards, and

      f.      Cisco Routers.

1036.   By alleging infringement of the '197 patent based solely on Cisco's customers' use of DOCSIS or PacketCable, Rockstar has alleged that the '197 patent is essential to DOCSIS and PacketCable.

1037.   Rockstar's allegations against Cisco's customers are barred pursuant to the licenses that Cisco holds to at least the '197 patent based on an express or implied license and/or the doctrine of patent exhaustion.

1038.   A judicial declaration is necessary and appropriate to decide whether Cisco and its customers are beneficiaries of a royalty-free license under the '197 patent.

1039.   In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between Cisco, Rockstar, and Constellation with respect to whether the '197 is expressly or impliedly licensed to Cisco and/or exhausted with respect to Cisco's customers.

1040.   Absent a declaration that Rockstar's and Constellation's rights in the '197 patents are expressly or impliedly licensed to Cisco and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '197 patent against Cisco's customers and thereby cause Cisco irreparable harm and injury.

1041.   Based on the forgoing, Cisco respectfully requests a declaratory judgment that Cisco is a beneficiary of a royalty-free license to the '197 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer royalty-free licenses to the '197 patent to Cisco, it shall be unenforceable as to Cisco and its customers with respect to DOCSIS and/or PacketCable.

1042.   Based on the forgoing, Cisco respectfully requests a declaratory judgment that the following Cisco products (and/or their use by Cisco and its customers) are licensed to the '197 patent to practice DOCSIS and/or PacketCable:

a.      Cisco Cable Modem Termination Systems ("CMTSs"),

b.      Cisco Cable Modems ("CMs"),

c.      Cisco Set-Top Boxes ("STBs"),

d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

e.      Cisco Cable Cards, and

f.      Cisco Routers.

## NINETIETH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF DOCSIS AND PACKETCABLE LICENSE AND EXHAUSTION OF '893 PATENT RIGHTS (AGAINST ROCKSTAR AND CONSTELLATION)

199

1043.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

1044.   An actual controversy exists between Cisco and Constellation as to whether Cisco and its customers are beneficiaries of the fully sublicensable royalty-free license Nortel (including its predecessors in interest LANcity and Bay) gave to CableLabs under the '893 patent, which CableLabs sublicensed to implementers of the DOCSIS standard or the PacketCable standard.

1045.   The issue of whether Cisco and its customers are the beneficiaries of a royalty-free license under the '893 patent is ripe for adjudication because Rockstar has insisted that Cisco's customers infringe the '893 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs using one or more of the following products:

a.      Cisco Cable Modem Termination Systems ("CMTSs"),

b.      Cisco Cable Modems ("CMs"),

c.      Cisco Set-Top Boxes ("STBs"), and

d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs").

1046.   By alleging infringement of the '893 patent based solely on Cisco's customers' use of DOCSIS or PacketCable, Rockstar has alleged that the '893 patent is essential to DOCSIS and PacketCable.

1047.   Rockstar's allegations against Cisco's customers are barred pursuant to the licenses that Cisco holds to at least the '893 patent based on an express or implied license and/or the doctrine of patent exhaustion.

1048.   A judicial declaration is necessary and appropriate to decide whether Cisco and its customers are beneficiaries of a royalty-free license under the '893 patent.

1049.   In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between Cisco, Rockstar, and Constellation with respect to whether the '893 is expressly or impliedly licensed to Cisco and/or exhausted with respect to Cisco's customers.

1050.   Absent a declaration that Rockstar's and Constellation's rights in the '893 patents are expressly or impliedly licensed to Cisco and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '893 patent against Cisco's customers and thereby cause Cisco irreparable harm and injury.

1051.   Based on the forgoing, Cisco respectfully requests a declaratory judgment that Cisco is a beneficiary of a royalty-free license to the '893 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer royalty-free licenses to the '893 patent to Cisco, it shall be unenforceable as to Cisco and its customers with respect to DOCSIS and/or PacketCable.

1052.   Based on the forgoing, Cisco respectfully requests a declaratory judgment that the following Cisco products (and/or their use by Cisco and its customers) are licensed to the '893 patent to practice DOCSIS and/or PacketCable:

 a.      Cisco Cable Modem Termination Systems ("CMTSs"),

 b.      Cisco Cable Modems ("CMs"),

 c.      Cisco Set-Top Boxes ("STBs"), and

 d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs").

**NINETY-FIRST CLAIM FOR RELIEF**

DECLARATORY JUDGMENT OF DOCSIS AND PACKETCABLE
LICENSE AND EXHAUSTION OF '253 PATENT RIGHTS
(AGAINST ROCKSTAR AND CONSTELLATION)

1053.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

201

1054.   An actual controversy exists between Cisco and Constellation as to whether Cisco and its customers are beneficiaries of the fully sublicensable royalty-free license Nortel (including its predecessors in interest LANcity and Bay) gave to CableLabs under the '253 patent, which CableLabs sublicensed to implementers of the DOCSIS standard or the PacketCable standard.

1055.   The issue of whether Cisco and its customers are the beneficiaries of a royalty-free license under the '253 patent is ripe for adjudication because Rockstar has insisted that Cisco's customers infringe the '253 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs using one or more of the following products:

   a.      Cisco Cable Modem Termination Systems ("CMTSs"),

   b.      Cisco Cable Modems ("CMs"),

   c.      Cisco Set-Top Boxes ("STBs"), and

   d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs").

1056.   By alleging infringement of the '253 patent based solely on Cisco's customers' use of DOCSIS or PacketCable, Rockstar has alleged that the '253 patent is essential to DOCSIS and PacketCable.

1057.   Rockstar's allegations against Cisco's customers are barred pursuant to the licenses that Cisco holds to at least the '253 patent based on an express or implied license and/or the doctrine of patent exhaustion.

1058.   A judicial declaration is necessary and appropriate to decide whether Cisco and its customers are beneficiaries of a royalty-free license under the '253 patent.

1059.   In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between Cisco, Rockstar, and Constellation with respect to whether the '253

is expressly or impliedly licensed to Cisco and/or exhausted with respect to Cisco's customers.

1060.   Absent a declaration that Rockstar's and Constellation's rights in the '253 patents are expressly or impliedly licensed to Cisco and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '253 patent against Cisco's customers and thereby cause Cisco irreparable harm and injury.

1061.   Based on the forgoing, Cisco respectfully requests a declaratory judgment that Cisco is a beneficiary of a royalty-free license to the '253 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer royalty-free licenses to the '253 patent to Cisco, it shall be unenforceable as to Cisco and its customers with respect to DOCSIS and/or PacketCable.

1062.   Based on the forgoing, Cisco respectfully requests a declaratory judgment that the following Cisco products (and/or their use by Cisco and its customers) are licensed to the '253 patent to practice DOCSIS and/or PacketCable:

a.      Cisco Cable Modem Termination Systems ("CMTSs"),

b.      Cisco Cable Modems ("CMs"),

c.      Cisco Set-Top Boxes ("STBs"), and

d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs").

### NINETY-SECOND CLAIM FOR RELIEF

DECLARATORY JUDGMENT OF DOCSIS AND PACKETCABLE
LICENSE AND EXHAUSTION OF '298 PATENT RIGHTS
(AGAINST ROCKSTAR)

1063.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

1064.   An actual controversy exists between Cisco and Rockstar as to whether Cisco and its customers are beneficiaries of the fully sublicensable royalty-free license Nortel

203

(including its predecessors in interest LANcity and Bay) gave to CableLabs under the '298 patent, which CableLabs sublicensed to implementers of the DOCSIS standard or the PacketCable standard.

1065.   The issue of whether Cisco and its customers are the beneficiaries of a royalty-free license under the '298 patent is ripe for adjudication because Rockstar has insisted that Cisco's customers infringe the '298 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs using one or more of the following products:

      a.        Cisco Cable Modem Termination Systems ("CMTSs"),

      b.        Cisco Cable Modems ("CMs"),

      c.        Cisco Embedded Multimedia Terminal Adapters ("eMTAs"), and

      d.        Cisco Routers.

1066.   By alleging infringement of the '298 patent based solely on Cisco's customers' use of DOCSIS or PacketCable, Rockstar has alleged that the '298 patent is essential to DOCSIS and PacketCable.

1067.   Rockstar's allegations against Cisco's customers are barred pursuant to the licenses that Cisco holds to at least the '298 patent based on an express or implied license and/or the doctrine of patent exhaustion.

1068.   A judicial declaration is necessary and appropriate to decide whether Cisco and its customers are beneficiaries of a royalty-free license under the '298 patent.

1069.   In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between Cisco and Rockstar with respect to whether the '298 is expressly or impliedly licensed to Cisco and/or exhausted with respect to Cisco's customers.

1070.   Absent a declaration that Rockstar's rights in the '298 patents are

expressly or impliedly licensed to Cisco and/or exhausted, Rockstar will continue to wrongfully assert the '298 patent against Cisco's customers and thereby cause Cisco irreparable harm and injury.

1071.   Based on the forgoing, Cisco respectfully requests a declaratory judgment that Cisco is a beneficiary of a royalty-free license to the '298 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar refuses to offer royalty-free licenses to the '298 patent to Cisco, it shall be unenforceable as to Cisco and its customers with respect to DOCSIS and/or PacketCable.

1072.   Based on the forgoing, Cisco respectfully requests a declaratory judgment that the following Cisco products (and/or their use by Cisco and its customers) are licensed to the '298 patent to practice DOCSIS and/or PacketCable:

  a.   Cisco Cable Modem Termination Systems ("CMTSs"),

  b.   Cisco Cable Modems ("CMs"),

  c.   Cisco Embedded Multimedia Terminal Adapters ("eMTAs"), and

  d.   Cisco Routers.

## NINETY-THIRD CLAIM FOR RELIEF

### UNFAIR COMPETITION IN VIOLATION OF DELAWARE LAW
### (AGAINST ROCKSTAR, BOCKSTAR, CONSTELLATION, AND SPHERIX)

1073.   Cisco realleges and incorporates by reference the allegations set forth in the other sections of its Counterclaims.

1074.   Rockstar, Bockstar, Constellation, and Spherix are Delaware entities subject to Delaware unfair competition law.

1075.   Cisco has business relationships with customers that Rockstar and Constellation have accused of infringement.  Cisco sells products and provides technical support

to those customers.

1076.   For example, Rockstar has accused WOW, Knology, ▮▮▮ CableOne,

▮▮▮▮▮▮, Suddenlink, and Charter of infringing the '474, '197, '893, '253, and '298 patents

for the use of DOCSIS and/or PacketCable.  On information and belief, WOW, Knology, ▮▮▮

CableOne, ▮▮▮▮▮▮, Suddenlink, and Charter use the following Cisco products to comply

with DOCSIS and PacketCable technology:

      a.      Cisco Cable Modem Termination Systems ("CMTSs"),

      b.      Cisco Cable Modems ("CMs"),

      c.      Cisco Set-Top Boxes ("STBs"),

      d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

      e.      Cisco Cable Cards, and

      f.      Cisco Routers.

1077.   As set forth above, Rockstar and Constellation have broadly accused any

number of the Known Accused Customers' products and services – if not their entire business

operation – of infringing any number of unidentified patents in Rockstar's and/or Constellation's

patent portfolio.

1078.   Those broad accusations are made in bad faith because: (1) to the extent

that Rockstar and Constellation have identified specific products and services that infringe

specific patents – beyond the "exemplary" contentions in their patent assertion letters – they are

concealing those specific details from the Known Accused Customers and (2) to the extent that

Rockstar and Constellation have not identified specific products and services that infringe

specific patents – beyond the "exemplary" contentions in their patent assertion letters –  they

have no good faith basis for alleging further patent infringement.  Because these allegations are

vague and not detailed, it frustrates Cisco's ability to bring a declaratory judgment claim on specific patents to clear the air.

1079.   Those broad and bad faith accusations of unspecified patent infringement amount to unfair competition because they negatively interfere with the business relationship between Cisco and its customers.  Because any number of unspecified products that a customer purchases from Cisco could fall under Rockstar and Constellation's broad and bad faith patent infringement allegations, future purchases are negatively impacted.

1080.   As set forth above, despite the fact that Cisco is licensed to the '474, '197, '893, '253, and '298 patents to the extent those patents are essential to use DOCSIS or PacketCable, Rockstar has wrongfully accused Cisco customers of infringing those patents based solely on their use of DOCSIS or PacketCable.

1081.   As set forth above, Rockstar, Bockstar, Constellation, and Spherix unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Cisco's enjoyment of its rights under these F/RAND or royalty-free licensing commitments, prevented Cisco from receiving the benefits it was entitled to receive under commitments to license the Asserted Alleged SEPs on F/RAND or royalty-free terms. This conduct amounts to unfair competition under Delaware law.

1082.   As set forth above, Rockstar has refused to enter into licensing negotiations with Cisco and/or its customers in the absence of highly-restrictive non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations, and extort industry participants, including Cisco, that have adopted well-established digital telecommunication standards.  These agreements prevent Cisco's customers from freely disclosing Rockstar's allegations to Cisco to seek assistance or indemnification, and Rockstar's

actions amount to unfair competition under Delaware law.

1083.   Counterclaim Defendants' unfair competition has interfered with Cisco's relationship with its customers.

1084.   As a result of the foregoing unfair competition, Cisco has been damaged in its business or property and is threatened by imminent loss of profits and customers.

1085.   Cisco respectfully requests equitable relief sufficient to eliminate the effects of the Counterclaim Defendants' unlawful and unfair business acts.  Cisco therefore respectfully requests injunctive relief including, but not limited to: (1) an injunction requiring Rockstar, Constellation, Bockstar, and Spherix to identify all patents from the Nortel Portfolio that have been assigned to each and that each entity presently owns, (2) an injunction requiring Rockstar, Constellation, Bockstar, and Spherix to identify each of Cisco's customers to which it has sent patent assertion letters or otherwise asserted infringement so that Cisco can bring appropriate declaratory judgment claims, and to the extent that Counterclaim Defendants cannot or refuse to particularize their allegations, enjoin Counterclaim Defendants from continuing to lodge unsupported and vague infringement allegations, which cast a cloud over the business of Cisco and its customers, (3) an injunction requiring Rockstar, Constellation, Bockstar, and Spherix to identify with specificity all patent infringement claims against Cisco or any of Cisco's customers to which either entity has sent a patent assertion letter or otherwise asserted infringement (including, but not limited to, the Known Accused Customers) based on all patents identified in response to item (1) of this paragraph, (4) an injunction preventing Rockstar, Constellation, Bockstar, and Spherix from bringing further patent infringement claims based on the patents identified in item (1) of this paragraph against Cisco or any of Cisco's customers to which either entity has sent a patent assertion letter or otherwise asserted infringement, to the

extent those allegations are not made pursuant to item (3) of this paragraph, (5) an injunction preventing Rockstar, Constellation, Bockstar, and Spherix from further accusing Cisco or Cisco's customers of patent infringement based on patents to which Cisco owns a license, (6) any injunction requiring Rockstar and Constellation to provide non-confidential, corrective, written statements that they have no basis upon which to believe that Plaintiffs have infringed, either directly or indirectly, any patents identified in response to item (1) of this paragraph, or otherwise show cause to this Court that they have a basis to make such assertions and enjoining Defendants from any further allegations of infringement of those patents until Defendants have so complied.

1086.   Cisco also respectfully requests: (1) a declaration that the non-disclosure agreements that Rockstar, Constellation, Bockstar, and Spherix have forced its customers to sign in order to negotiate a license to either entity's patents are void and unenforceable and (2) an injunction preventing Rockstar, Constellation, Bockstar, and Spherix from requiring Cisco or its customers to sign a non-disclosure agreement in order to negotiate a license to either entity's patents.

1087.   As a remedy for Counterclaim Defendants' unfair competition, Cisco also respectfully requests compensatory damages, punitive damages, and such other relief as this cause of action allows.

## PRAYER FOR RELIEF

WHEREFORE, Cisco seeks the following relief:

1.     A declaration from the Court that Cisco's products (and/or their use by Known Accused Customers and any other customers), including at least Cisco's Catalyst 2950, 3560, and 3750 switches do not directly or indirectly infringe any claim of the '245 Patent.

2.     A declaration from the Court that Cisco's products (and/or their use by Known

Accused Customers and any other customers), including at least Cisco's Catalyst 3750-E, 3750, 3560-E, 3560, 2975, and 2960 switches and/or Cisco's "Smart Install" feature do not directly or indirectly infringe any claim of the '241 Patent.

3.      A declaration from the Court that Cisco's products (and/or their use by Known Accused Customers and any other customers), including at least Cisco's 12000 Series and XR 12000 Series routers, and CRS-1 products do not directly or indirectly infringe any claim of the '9895 Patent.

4.      A declaration from the Court that Cisco's products (and/or their use by Known Accused Customers and any other customers), including at least Cisco's Catalyst 6500 Series, Catalyst 4500 Series, ASR 1000 Series, ASR 9000 Series, CRS-1, and 7600 Series router products, do not directly or indirectly infringe any claim of the '080 Patent.

5.      A declaration from the Court that Cisco's products (and/or their use by Known Accused Customers and any other customers), including at least Cisco's Unified CallManager software, do not directly or indirectly infringe any claim of the '508 Patent.

6.      A declaration from the Court that Cisco's products (and/or their use by Known Accused Customers and any other customers), including at least Cisco's Unified Contact Center Express, do not directly or indirectly infringe any claim of the '653 Patent.

7.      A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '474 Patent:

          a.      Cisco Set-Top Boxes ("STBs"),

          b.      Cisco Cable Modems ("CMs"),

          c.      Cisco Cable Cards,

      d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

      e.      Cisco Cable Modem Termination Systems ("CMTSs"), and

      f.      Cisco Routers.

8.      A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '862 Patent:

      a.      Cisco Routers, including ISR and ASR Routers.

9.      A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '197 Patent:

      a.      Cisco Set-Top Boxes ("STBs"),

      b.      Cisco Cable Modems ("CMs"),

      c.      Cisco Cable Cards,

      d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

      e.      Cisco Cable Modem Termination Systems ("CMTSs"), and

      f.      Cisco Routers.

10.      A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '0397 Patent:

      a.      Cisco Cable Modems ("CM"),

      b.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

      c.      Cisco Cable Modem Termination Systems ("CMTSs"), and

      d.      Cisco Routers.

11.     A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '990 Patent:

       a.     Cisco Switches.

12.     A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '298 Patent:

       a.     Cisco Cable Modems ("CM"),

       b.     Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

       c.     Cisco Cable Modem Termination Systems ("CMTSs"), and

       d.     Cisco Routers.

13.     A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '649 Patent:

       a.     Cisco Set-Top Boxes ("STBs"),

       b.     Cisco Video Servers, and

       c.     Cisco Universal Session and Resource Manager ("USRM").

14.     A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '893 Patent:

       a.     Cisco Cable Modems ("CMs"),

       b.     Cisco Cable Modem Termination Systems ("CMTSs"),

       c.     Cisco Embedded Multimedia Terminal Adapters ("eMTAs"), and

   d.  Cisco Routers.

15. A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '2397 Patent:

   a.  Cisco Cable Modems ("CMs"), and

   b.  Cisco Routers, including uBR10000, ISR, and ASR series.

16. A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '253 Patent:

   a.  Cisco Cable Modems ("CM"),

   b.  Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

   c.  Cisco Cable Modem Termination Systems ("CMTSs"), and

   d.  Cisco Routers.

17. A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '923 Patent:

   a.  Cisco DSL Modems, and

   b.  Digital Subscriber Line Access Multiplexers ("DSLAMs").

18. A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '519 Patent:

   a.  Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

       b.      Cisco ONS 15xxx Series Multiservice Platform.

19.    A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '118 Patent:

       a.      Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

       b.      Cisco ONS 15xxx Series Multiservice Platform.

20.    A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '326 Patent:

       a.      Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

       b.      Cisco ONS 15xxx Series Multiservice Platform.

21.    A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '496 Patent:

       a.      Cisco Switches, including ME 3600X Series Ethernet Access Switches, and

       b.      Cisco ONS 15xxx Series Multiservice Platform.

22.    A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '389 Patent:

       a.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs"), and

      b.      Cisco Routers.

23.     A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '048 Patent:

      a.      Cisco Routers.

24.     A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '879 Patent:

      a.      Cisco Set-Top Boxes ("STBs").

25.     A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '4895 Patent:

      a.      Cisco DSL Modems, and

      b.      Cisco Digital Subscriber Line Access Multiplexers ("DSLAMs").

26.     A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '917 Patent:

      a.      Cisco Routers.

27.     A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '299 Patent:

      a.      Cisco Set-Top Boxes ("STBs"),

      b.      Cisco Video Servers, and

    c.  Cisco Universal Session and Resource Managers ("USRMs").

28. A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '999 Patent:

    a.  Cisco Switches, including Cisco ME 3600X Series Ethernet Access Switches.

29. A declaration from the Court that at least the following Cisco products (and/or their use by Cisco or the Known Accused Customers and any other customers) do not directly or indirectly infringe any claim of the '618 Patent:

    a.  Cisco's ONS 15xxx Series Multiservice Platforms.

30. A declaration from the Court that the claims of the '245, '241, '9895, '080, '508, and '653 Patents are invalid.

31. Specific performance by Rockstar, Bockstar, Constellation, and Spherix of their obligations to provide licenses on F/RAND or royalty-free licensing terms to standard-essential patents including the '2397, '496, '519, '118, '326, '4895, '990, '999, '879, '862, '618, '048, '917, and '389 patents.

32. Restitution and/or expectancy damages from Rockstar, Bockstar, Constellation, and Spherix for breaches of F/RAND or royalty-free licensing commitments.

33. Restitution and/or expectancy damages from Rockstar, Bockstar, Constellation, and Spherix in an amount to be proven at trial for breaches of their obligations to deal fairly and act in good faith under F/RAND licensing commitments.

34. An injunction requiring Rockstar, and to the extent Rockstar has the power and/or control to do so, to require Rockstar's subsidiaries, Bockstar and Constellation, and

Rockstar's partner, Spherix, to honor F/RAND or royalty-free commitments attached to patents from the Nortel patent portfolio.

35.    A declaratory judgment setting forth the F/RAND or royalty-free terms for the '2397, '496, '519, '118, '326, '4895, '990, '999, '879, '862, '618, '048, '917, and '389 patents.  Cisco agrees to be bound by any final, non-appealable judgment determining F/RAND or royalty-free licensing terms for any SEP that is valid, enforceable, and infringed by Cisco, provided such license fully protects Cisco's direct and indirect customers.

36.    A declaratory judgment that if Rockstar, Bockstar, Constellation, and Spherix refuse to offer licenses to the '2397, '496, '519, '118, '326, '4895, '990, '999, '879, '862, '618, '048, '917, and '389 patents to Cisco on F/RAND or royalty-free terms, they shall be unenforceable as to Cisco and its customers.

37.    A declaratory judgment that Cisco is a beneficiary of a royalty-free license to the '474, '197, '893, '253, and '298 patents to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer royalty-free licenses to the '474, '197, '893, '253, and '298 patents to Cisco, they shall be unenforceable as to Cisco and its customers with respect to DOCSIS and/or PacketCable.

38.    A declaratory judgment that the following Cisco products (and/or their use by Cisco and its customers) are licensed to the '474 patent to practice DOCSIS and/or PacketCable:

   a.    Cisco Cable Modem Termination Systems ("CMTSs"),

   b.    Cisco Cable Modems ("CMs"),

   c.    Cisco Set-Top Boxes ("STBs"),

   d.    Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

e.     Cisco Cable Cards, and

f.     Cisco Routers.

39.     A declaratory judgment that the following Cisco products (and/or their use by Cisco and its customers) are licensed to the '197 patent to practice DOCSIS and/or PacketCable:

a.     Cisco Cable Modem Termination Systems ("CMTSs"),

b.     Cisco Cable Modems ("CMs"),

c.     Cisco Set-Top Boxes ("STBs"),

d.     Cisco Embedded Multimedia Terminal Adapters ("eMTAs"),

e.     Cisco Cable Cards, and

f.     Cisco Routers.

40.     A declaratory judgment that the following Cisco products (and/or their use by Cisco and its customers) are licensed to the '893 patent to practice DOCSIS and/or PacketCable:

a.     Cisco Cable Modem Termination Systems ("CMTSs"),

b.     Cisco Cable Modems ("CMs"),

c.     Cisco Set-Top Boxes ("STBs"), and

d.     Cisco Embedded Multimedia Terminal Adapters ("eMTAs").

41.     A declaratory judgment that the following Cisco products (and/or their use by Cisco and its customers) are licensed to the '253 patent to practice DOCSIS and/or PacketCable:

a.     Cisco Cable Modem Termination Systems ("CMTSs"),

b.     Cisco Cable Modems ("CMs"),

      c.      Cisco Set-Top Boxes ("STBs"), and

      d.      Cisco Embedded Multimedia Terminal Adapters ("eMTAs").

      42.     A declaratory judgment that the following Cisco products (and/or their use by Cisco and its customers) are licensed to the '298 patent to practice DOCSIS and/or PacketCable:

      a.      Cisco Cable Modem Termination Systems ("CMTSs"),

      b.      Cisco Cable Modems ("CMs"),

      c.      Cisco Set-Top Boxes ("STBs"), and

      d.      Cisco Routers.

      43.     Equitable relief sufficient to eliminate the effects of the Counterclaim Defendants' unlawful and unfair business acts, including, but not limited to: (1) an injunction requiring Rockstar, Constellation, Bockstar, and Spherix to identify all patents from the Nortel Portfolio that have been assigned to each and that each entity presently owns, (2) an injunction requiring Rockstar, Constellation, Bockstar, and Spherix to identify each of Cisco's customers to which it has sent patent assertion letters or otherwise asserted infringement so that Cisco can bring appropriate declaratory judgment claims, and to the extent that Counterclaim Defendants cannot or refuse to particularize their allegations, enjoin Counterclaim Defendants from continuing to lodge unsupported and vague infringement allegations, which cast a cloud over the business of Cisco and its customers, (3) an injunction requiring Rockstar, Constellation, Bockstar, and Spherix to identify with specificity all patent infringement claims against Cisco or any of Cisco's customers to which either entity has sent a patent assertion letter or otherwise asserted infringement (including, but not limited to, the Known Accused Customers) based on all patents identified in response to item (1) of this paragraph, (4) an injunction preventing Rockstar,

Constellation, Bockstar, and Spherix from bringing further patent infringement claims based on

the patents identified in item (1) of this paragraph against Cisco or any of Cisco's customers to

which either entity has sent a patent assertion letter or otherwise asserted infringement, to the

extent those allegations are not made pursuant to item (3) of this paragraph, (5) an injunction

preventing Rockstar, Constellation, Bockstar, and Spherix from further accusing Cisco or

Cisco's customers of patent infringement based on patents to which Cisco owns a license, (6)

any injunction requiring Rockstar and Constellation to provide non-confidential, corrective,

written statements that they have no basis upon which to believe that Plaintiffs have infringed,

either directly or indirectly, any patents identified in response to item (1) of this paragraph, or

otherwise show cause to this Court that they have a basis to make such assertions and enjoining

Defendants from any further allegations of infringement of those patents until Defendants have

so complied.

        44.     A declaration that the non-disclosure agreements that Rockstar,

Constellation, Bockstar, and Spherix have forced Cisco's customers to sign in order to negotiate

a license to either entity's patents are void and unenforceable.

        45.     An injunction preventing Rockstar, Constellation, Bockstar, and Spherix

from requiring Cisco or its customers to sign a non-disclosure agreement in order to negotiate a

license to either entity's patents.

        46.     As a remedy for Counterclaim Defendants' unfair competition, Cisco also

respectfully requests compensatory damages, punitive damages, and such other relief as this

cause of action allows.

        47.     Declaring that judgment be entered in favor of Cisco and against

Counterclaim Defendants on each of Cisco's claims.

48.     Finding that this to be an exceptional case under 35 U.S.C. § 285.

49.     Awarding Cisco its costs and attorneys' fees in connection with this

action.

50.     Such further and additional relief as the Court deems just and proper.

### JURY DEMAND

Cisco hereby demands a trial by jury on all issues properly triable before a jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
_____

OF COUNSEL:

John M. Desmarais
Paul Bondor
Michael P. Stadnick
Jonas R. McDavit
Ameet A. Modi
Karim Z. Oussayef
Dustin F. Guzior
Alex Henriques
Edward Terchunian
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Defendant*

June 6, 2014  -Original Filing Date
8299318
 June 13, 2014 - Redacted Filing Date

221

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 6, 2014, upon the following in the manner indicated:

Adam W. Poff, Esquire                                    *VIA ELECTRONIC MAIL*
Monté T. Squire, Esquire
Gregory J. Brodzik, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff Bockstar Technologies*
*LLC*

Robert T. Haslam, Esquire                                *VIA ELECTRONIC MAIL*
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA  94065
*Attorneys for Plaintiff Bockstar Technologies*
*LLC*

Robert D. Fram, Esquire                                  *VIA ELECTRONIC MAIL*
Winslow Taub, Esquire
Scott Schrader, Esquire
Nathan Shafroth, Esquire
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA  94111
*Attorneys for Plaintiff Bockstar Technologies*
*LLC*

Philip A. Irwin, Esquire                          *VIA ELECTRONIC MAIL*
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
*Attorneys for Plaintiff Bockstar Technologies*
*LLC*

Brian E. Farnan, Esquire                          *VIA ELECTRONIC MAIL*
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Counterclaim-Defendants*
*Rockstar Consortium US LP and Constellation*
*Technologies LLC*

Jason Sheasby, Esquire                            *VIA ELECTRONIC MAIL*
Alan Heinrich, Esquire
Joseph M. Lipner, Esquire
Benjamin W. Hattenbach, Esquire
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
*Attorneys for Counterclaim-Defendants*
*Rockstar Consortium US LP and Constellation*
*Technologies LLC*

Melissa R. McCormick, Esquire                     *VIA ELECTRONIC MAIL*
Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
*Attorneys for Counterclaim-Defendants*
*Rockstar Consortium US LP and Constellation*
*Technologies LLC*

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)

2

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 13, 2014, upon the following in the manner indicated:

Adam W. Poff, Esquire                                *VIA ELECTRONIC MAIL*
Monté T. Squire, Esquire
Gregory J. Brodzik, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff Bockstar Technologies
LLC*

Robert T. Haslam, Esquire                            *VIA ELECTRONIC MAIL*
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA  94065
*Attorneys for Plaintiff Bockstar Technologies
LLC*

Robert D. Fram, Esquire                              *VIA ELECTRONIC MAIL*
Winslow Taub, Esquire
Scott Schrader, Esquire
Nathan Shafroth, Esquire
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA  94111
*Attorneys for Plaintiff Bockstar Technologies
LLC*

Philip A. Irwin, Esquire                        *VIA ELECTRONIC MAIL*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
*Attorneys for Plaintiff Bockstar Technologies*
*LLC*

Brian E. Farnan, Esquire                        *VIA ELECTRONIC MAIL*
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Counterclaim-Defendants*
*Rockstar Consortium US LP and Constellation*
*Technologies LLC*

Jason Sheasby, Esquire                          *VIA ELECTRONIC MAIL*
Alan Heinrich, Esquire
Joseph M. Lipner, Esquire
Benjamin W. Hattenbach, Esquire
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
*Attorneys for Counterclaim-Defendants*
*Rockstar Consortium US LP and Constellation*
*Technologies LLC*

Melissa R. McCormick, Esquire                   *VIA ELECTRONIC MAIL*
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
*Attorneys for Counterclaim-Defendants*
*Rockstar Consortium US LP and Constellation*
*Technologies LLC*

                                    */s/ Jack B. Blumenfeld*

                                    _____

                                    Jack B. Blumenfeld (#1014)