**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOCKSTAR TECHNOLOGIES LLC, | |
| Plaintiff, | Civil Action No. 13-2020 (SLR) |
| v. | **REDACTED - PUBLIC VERSION** |
| CISCO SYSTEMS, INC., | |
| Defendant. | |
| | |
| CISCO SYSTEMS, INC., | |
| Counterclaim-Plaintiff, | |
| v. | |
| BOCKSTAR TECHNOLOGIES LLC, CONSTELLATION TECHNOLOGIES LLC, ROCKSTAR CONSORTIUM US LP, and SPHERIX INCORPORATED, | |
| Counterclaim-Defendants. | |

**CISCO SYSTEMS, INC.'S OPPOSITION TO
BOCKSTAR TECHNOLOGIES LLC'S MOTION TO DISMISS (D.I. 48)**

OF COUNSEL:

John M. Desmarais
Michael P. Stadnick
Jonas R. McDavit
Karim Z. Oussayef
Ameet A. Modi
Dustin F. Guzior
Edward Terchunian
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Counsel for Defendant/
Counterclaim-Plaintiff Cisco Systems, Inc.*

Original Filing:  August 4, 2014
Redacted Filing:  August 11, 2014

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS ............................1

SUMMARY OF ARGUMENT ..........................................................................................3

STATEMENT OF FACTS ...............................................................................................4

     A.    The Origin, Purchase, And Encumbrances Of The Rockstar Patents. ...................4

     B.    Rockstar's Patent Enforcement Campaign Against The Cable Industry, Including Cisco And Its Customers. ...................................................................5

     C.    Rockstar Created "Bockstar" And "Constellation" To Bring Separate Suits In Two Different Districts In Order To Divide Cable Equipment Providers And Cable Operators. ...................................................................................6

     D.    Rockstar's Litigation Campaign Continued Against Other MSOs. ......................7

ARGUMENT ..............................................................................................................7

     I.    Subject Matter Jurisdiction Exists Over Cisco's Disputed Declaratory Judgment Counterclaims For Non-Infringement (Claims 19-21). ........................7

            A.    Declaratory Judgment Jurisdiction Exists Because Rockstar's Allegations Concerning Infringement Of The Russell Patents Create An Actual Controversy As To Cisco's Liability For That Alleged Infringement. ...............................................................................8

            B.    Cisco's Indemnification Agreement Also Establishes Declaratory Judgment Standing. ...............................................................................9

     II.    This Court Has Subject Matter Jurisdiction Over Cisco's F/RAND Declaratory Judgment Counterclaims (Claims 65, 67, And 68). ........................10

     III.    Cisco's F/RAND Counterclaims (Claims 37, 39, 40, 51, 53, And 54) State Valid Contract Claims. .....................................................................................11

            A.    The Court Should Reject The Artificial, Litigation-Driven Distinction Between "Rockstar" and "Bockstar" In Evaluating Cisco's F/RAND Counterclaims. ...............................................................12

            B.    Cisco's Counterclaims Demonstrate That Rockstar Breached Those F/RAND Commitments. ...............................................................12

     IV.    Federal Question And Supplemental Jurisdiction Exist Over Cisco's F/RAND Counterclaims (Claims 37, 39, 40, 51, 53, And 54). ...........................14

i

A.      The Court Has Federal Question Jurisdiction Over Cisco's F/RAND Counterclaims. ........................................................................14

B.      The Court Can And Should Also Exercise Supplemental Jurisdiction Over Cisco's State Law Counterclaims. ..............................15

V.      Cisco's Counterclaim For Unfair Competition Under Delaware Law (Claim 93) Properly States A Claim And Should Not Be Dismissed. ..................17

VI.     Rockstar, Constellation, And Spherix Are Properly Joined In This Action Because The Same Underlying Conduct Implicates All Four Parties. .................18

A.      Joinder Is Required Under Rule 19. ....................................................18

B.      Joinder Is Proper Under Rule 20. .......................................................19

CONCLUSION .................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
    160 F.3d 1373 (Fed. Cir. 1998)..................................................................................16

*ABB, Inc. v. Cooper Indus., LLC*,
    635 F.3d 1345 (Fed. Cir. 2011).............................................................................10, 11

*Additive Controls v. Flowdata*,
    986 F.2d 476, 25 USPQ2d 1798 (Fed. Cir. 1993).......................................................15

*Arris Group, Inc. v. British Telecommunications PLC*,
    639 F.3d 1368 (Fed. Cir. 2011).........................................................................8, 9, 11

*Barnes & Noble, Inc. v. LSI Corp.*,
    849 F. Supp. 2d 925 (N.D. Cal. Feb. 2, 2012) .............................................................11

*Callaway Golf Co. v. Acushnet Co.*,
    585 F. Supp. 2d 592 (D. Del. 2008) ...........................................................................16

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ....................................................................................................15

*Conan Properties, Inc. v. Mattel, Inc.*,
    619 F. Supp. 1167 (S.D.N.Y. 1985) ...........................................................................19

*Crater Corp. v. Lucent Techs., Inc.*,
    255 F.3d 1361 (Fed. Cir. 2001)...................................................................................16

*Dougherty v. Mieczkowski*,
    661 F. Supp. 267 (D. Del. 1987) .................................................................................19

*ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*,
    541 F.3d 1373 (Fed. Cir. 2008)...................................................................................15

*Golden Bridge Tech. v. Apple Inc.*,
    5:12-CV-04882-PSG, 2014 WL 2194501 (N.D. Cal. May 18, 2014).............................17

*Google Inc. v. Rockstar Consortium US LP*,
    No. C 13-5933 CW, 2014 WL 1571807 (N.D. Cal. Apr. 17, 2014) ...............2, 12, 17, 18

*Hunter Douglas v. Harmonic Design, Inc.*,
    153 F.3d 1318 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus.,*
    *Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 2012).....................................15

*In re Bill of Lading Transmission and Processing System Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)................................................................11, 13

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012)...........................................................................20

*Johnson & Johnson v. Coopervision, Inc.*,
    720 F. Supp. 1116 (D. Del. 1989) .......................................................................18

*Maclean-Fogg Co. v. Edge Composites, L.L.C.*,
    CIV.A. 08 C 6367, 2009 WL 1010426 (N.D. Ill. Apr. 14, 2009)....................16

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ..............................................................................................7

*Microsoft Corp. v. DataTern, Inc.*,
    -- F.3d --, 2014 WL 1760882 (Fed. Cir. May 5, 2014) ....................................9

*Microsoft Corp. v. Motorola, Inc.*,
    2011 WL 11480223 (W.D. Wash. Jun. 1, 2011)................................... 11, 13, 17

*Schroeder v. West*,
    212 F.3d 1265 (Fed. Cir. 2000)...........................................................................15

*Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*,
    482 F.3d 1330 (Fed. Cir. 2007) ............................................................................7

*U.S. Valves, Inc. v. Dray*,
    212 F.3d 1368 (Fed. Cir. 2000)...........................................................................15

*Wacah Co. v. Kionix Inc.*,
    845 F. Supp. 2d 597 (D. Del. 2012) ...................................................................20

## **Statutes**

28 U.S.C. § 1338(a) ...............................................................................................15

28 U.S.C. § 2201(a) .................................................................................................7

## **Rules**

Fed. R. Civ. P. 19....................................................................................................18

Fed. R. Civ. P. 20..............................................................................................19, 20

## INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS

Like its corporate parent and alter-ego Rockstar Consortium US LP, Bockstar moves to dismiss certain counterclaims brought by Cisco.[1]  The motion to dismiss should be denied for the same reasons:   Rockstar's attempt to extort duplicative royalties from both Cisco and its customers contravenes patent law and fundamental fairness, this Court has jurisdiction to stop that misconduct, and Cisco has adequately pled counterclaims for corresponding relief.  *First*, this Court has jurisdiction to address Cisco's counterclaims for a declaration of non-infringement because an actual controversy exists in view of Rockstar's assertions of patent infringement against Cisco and its customers, its threats of (and institution of) litigation against Cisco's customers, and Cisco's agreements to indemnify those customers for patent infringement.  *Second*, Cisco's counterclaims concerning Rockstar's obligations to license patents on F/RAND or royalty-free terms—and Rockstar's breach of those obligations—are pled with more than ample facts to establish plausible claims for relief.   *Third*, Cisco's unfair competition counterclaim is likewise adequately pled with numerous facts detailing Rockstar's improper assertion tactics that wrongfully interfere with Cisco's business relationships. Rockstar/Bockstar's motion to dismiss should therefore be denied.

Armed with thousands of patents obtained from the Nortel Networks bankruptcy estate, in 2012, Rockstar initiated a patent enforcement campaign against cable equipment manufacturers and operators of cable networks, including Cisco and dozens of its customers.  As described below—and in even greater detail in Cisco's pleadings—the products, technologies, and services accused by Rockstar involve products manufactured by Cisco.  Moreover, Cisco has

---

[1] As used throughout this brief, and unless otherwise noted, "Rockstar" refers collectively to Rockstar Consortium US LP, Bockstar, Constellation, and Spherix Corporation.  As explained further below, Counterclaim-Defendant Rockstar Consortium US LP has created an elaborate corporate shell scheme whereby it divided ownership of certain patents amongst itself and wholly-owned subsidiaries, including the movant Bockstar Technologies LLC ("Bockstar") and Counterclaim-Defendant Constellation Technologies LLC ("Constellation").    Rockstar Consortium US LP and Constellation filed a separate motion to dismiss Cisco's counterclaims (D.I. 44); Cisco has filed its Opposition To Rockstar Consortium US LP And Constellation Technologies LLC's Motion To Dismiss concurrently herewith.

agreed to indemnify Rockstar-targeted customers for patent infringement.   But rather than engaging Cisco directly to resolve the underlying patent disputes, Rockstar chose to shake down Cisco's customers, improperly seeking to extract separate and duplicative royalties from each customer, while leaving the question of Cisco's potential liability for another day—in contravention of patent exhaustion principles.   Rockstar pursued that scheme at least by (1) blitzing Cisco's customers with accusations that they infringe Rockstar's patents, (2) frustrating Cisco's and its customers' ability to discuss indemnity and ensure Rockstar's compliance with non-discriminatory licensing obligations by demanding that Cisco and its customers enter into restrictive non-disclosure agreements as a precondition to negotiations, and (3) spinning patents off into wholly-owned shell entities (such as "Bockstar" and "Constellation") and other Rockstar-related entities,[2] again in an attempt to secure duplicative royalties from Cisco and its customers.

Although Rockstar has tried hard to make it impossible, Cisco simply seeks patent peace. Its amended answer and counterclaims efficiently address, in one forum, the disputes created by Rockstar's assertions:   (1) whether Cisco's products infringe the patents that Rockstar has accused Cisco and its customers of infringing; (2) whether Rockstar is bound by—and whether Rockstar has complied with—its obligation to license any of those patents, pursuant to prior commitments, on royalty-free or fair, reasonable, and non-discriminatory ("F/RAND") terms; and (3) whether Rockstar engaged in unfair competition in violation of Delaware law while conducting its aggressive enforcement campaign.

Rockstar/Bockstar's argument that Cisco lacks standing to bring non-infringement declaratory judgment claims concerning patents owned by shell entity Bockstar should be rejected.   Rockstar's repeated accusations against Cisco and its customers for infringement of those patents based on the implementation of Cisco products have left Cisco's business under a

---

[2] The Northern District of California recently held that Rockstar's formation of a similar entity, MobileStar Technologies LLC, was a "sham."   *Google Inc. v. Rockstar Consortium US LP*, No. C 13-5933 CW, 2014 WL 1571807, at *4 (N.D. Cal. Apr. 17, 2014).

cloud.   Moreover, Cisco has agreements to indemnify affected customers for infringement. Rather than wait indefinitely for Rockstar to make good on its threats of litigation, Cisco's non-infringement counterclaims seek to resolve those disputes once and for all.

Rockstar/Bockstar next contends that Cisco fails to adequately plead claims concerning Rockstar's obligation to license certain patents on F/RAND terms, as well as Rockstar's breach of those obligations.   But Cisco's pleading describes the factual predicates supporting those claims, including specific commitments Nortel, Rockstar's predecessor-in-interest, gave to standards development organizations to license certain patents on F/RAND terms, and allegations concerning Rockstar's breaches of those obligations.   Rockstar/Bockstar disregards those allegations.

Rockstar/Bockstar likewise argues that Cisco fails to adequately plead a claim for unfair competition.   But once again, Rockstar/Bockstar simply ignores the detailed allegations in Cisco's amended answer and counterclaims.   Those allegations—which demonstrate that Rockstar has wrongfully interfered with Cisco's business relationships with cable provider customers, resulting in the loss of good will and erosion of equipment sales—raise a plausible claim for unfair competition.

## SUMMARY OF ARGUMENT

1.    Subject matter jurisdiction exists over Cisco's disputed counterclaims of declaratory judgment of non-infringement (claims 19-21) because Rockstar's explicit accusations of patent infringement and threats of litigation directed towards Cisco and its customers create an actual controversy as to Cisco's liability for direct or indirect infringement of those patents.  Cisco's agreements to indemnify its customers for patent infringement likewise confer standing on Cisco for its non-infringement counterclaims.

2.    Cisco's disputed counterclaims concerning Rockstar's obligations to license certain patents on F/RAND or royalty-free terms—and Rockstar's breaches of those obligations—should not be dismissed (claims 37, 39, 40, 51, 53, 54, 65, 67, and 68).  Rockstar argues that Cisco's pleadings fail to establish that certain patents are essential to compliance with

an industry standard or that Rockstar's conduct constitutes a breach. But Cisco's pleadings meticulously detail the facts supporting those claims, including (1) the commitments Rockstar's predecessor-in-interest, Nortel, made to license standard-essential patents on F/RAND or royalty-free terms; (2) Rockstar's concessions that those patents are essential to various standards; and (3) Rockstar's conduct demonstrating that it breached those obligations.

3. Federal question jurisdiction exists over Cisco's F/RAND counterclaims (claims 37, 39, 40, 51, 53, 54, 65, 67, and 68) because those claims necessarily depend on resolution of a substantial question of patent law. Moreover, supplemental jurisdiction exists over Cisco's state law claims because those claims derive from common facts related to Bockstar, Rockstar, and other Rockstar-related entities.

4. Cisco's counterclaim for unfair competition under Delaware law (claim 93) should not be dismissed for the reasons set forth in Cisco's Opposition To Rockstar Consortium US LP and Constellation Technologies LLC's Motion To Dismiss, filed concurrently.

5. Rockstar, Constellation, and Spherix are properly joined with Bockstar in this action. Constellation, Bockstar, and Spherix operate under the control of or in partnership with Rockstar. Moreover, Cisco's claims stem from common transactions and occurrences involving all four entities, and the involvement of all four entities is required to afford Cisco complete relief.

## STATEMENT OF FACTS

### A. The Origin, Purchase, And Encumbrances Of The Rockstar Patents.

Rockstar purchased the patents in this case from the patent portfolio of Nortel Networks ("Nortel"), which Nortel auctioned during its bankruptcy proceedings. (D.I. 48 at 2; D.I. 31 ¶¶ 21-22, 100-105.) Before it filed for bankruptcy, Nortel had participated in multiple standards setting bodies involved in telecommunications. (D.I. 31 ¶¶ 29-30.) As part of participating in the standard-setting process, Nortel committed to license many of its patents, including several of the patents-in-suit, on F/RAND or royalty-free terms in accordance with the standard-setting bodies' licensing policies. (*Id.* ¶¶ 25-27, 31-33, *e.g.*, Exs. 29-40, 47-57.) Nortel sent letters of

assurance that it would license its standard-essential patents on F/RAND or royalty-free terms, including specific identification of some of the patents-in-suit and general commitments to license patents essential to implement those standards. (*Id.* ¶¶ 41-50, Exs. 64-65, 67-81.) Nortel identified those commitments as encumbrances before it sold its patent portfolio to Rockstar and its sponsors. (*Id.* ¶¶ 35, 37, 104.) Rockstar, upon acquiring those agreements, repudiated those commitments and announced its intent to enforce that Nortel patent portfolio. Its subsequent aggressive enforcement of those patents against Cisco and Cisco's customers ultimately led to this action. (*Id.* ¶¶ 105-107, 117-125, 189-220.)

**B.     Rockstar's Patent Enforcement Campaign Against The Cable Industry, Including Cisco And Its Customers.**

In March 2012, Rockstar began its patent assertion campaign against the cable industry, including Cisco's cable/multiple-system operator ("MSO") customers. Rockstar alleged that several MSOs[3] and other television, data, and telephone communications providers needed licenses to "exemplary patents" and demanded that those companies take licenses to Rockstar's entire portfolio of patents.[4] Rockstar accused services or technologies commonly offered by MSOs that operate using industry standards. (D.I. 31 ¶¶ 100-113, Exs. 94-99, 103, 111, 115, 117, 119, 122, 124.) At the same time, Rockstar sought to compartmentalize its assertions— separately and secretly accusing cable equipment providers and their customers—in an apparent attempt to gain double royalties and prevent coordination between accused entities. (*E.g.*, D.I. 31 at ¶¶ 221-227; D.I. 53 in Case No. 14-cv-55-SLR at ¶¶ 165-180.) Indeed, Rockstar does not permit its enforcement targets to share Rockstar's assertions or infringement contentions.

---

[3] Charter Communications, Inc., ("Charter"), WideOpenWest Finance, LLC a/k/a WOW! Internet, Cable & Phone ("WideOpenWest"), Knology, Inc. ("Knology" and, together with WideOpenWest, "WOW!"), Cequel Communications, LLC d/b/a Suddenlink Communications ("Suddenlink"), and Cable One, Inc. ("Cable One").

[4] D.I. 31 ¶ 120, Exs. 93-98; *see also* D.I. 31 ¶¶ 136-141, 146-149, 154-161, 182-188.

### C.   Rockstar Created "Bockstar" And "Constellation" To Bring Separate Suits In Two Different Districts In Order To Divide Cable Equipment Providers And Cable Operators.

In December 2013, Rockstar launched the second stage of its patent assertion campaign: separate lawsuits against cable equipment suppliers in Delaware and cable operators in Texas.  As part of its strategy to obtain excessive and undue royalties, Rockstar did not bring those actions on its own behalf, but artificially subdivided its patent portfolio among two Delaware-incorporated, wholly-owned shell subsidiaries, Bockstar and Constellation.  (D.I. 48 at 3; D.I. 31 ¶¶ 228-232.)   The officers and members of Bockstar and Constellation overlap with those of Rockstar Consortium.  (D.I. 31 ¶¶ 6-9, 232; D.I. 4; D.I. 48 at 18 n.12.)  Rockstar also transferred patents to Spherix Corporation ("Spherix"), which promptly asserted some of the assigned patents against Cisco and other telecommunications industry participants.  (D.I. 31 ¶¶ 10-12, 110.)  Rockstar is Spherix's largest shareholder, and Rockstar assigned patents to Spherix to assert against Cisco.  (D.I. 31 ¶¶ 10-12, 234-236.)

On the same day Bockstar initiated this action against Cisco, Constellation brought infringement suits against two Cisco customers, TWC and Windstream, in the Eastern District of Texas.  (D.I. 31 ¶¶ 189-220.)  Bockstar's suit against Cisco in Delaware asserts six patents and accuses, among other things, Cisco routers, switches, and telephony products.  (D.I. 1.)  Constellation's suit against TWC in the Eastern District of Texas accuses, among other things, video on demand, telephony services, and MPLS networks, implemented using a combination of Cisco and ARRIS products.  (D.I. 31 ¶¶ 189-204, Exs. 125-126.)  Constellation's suit against Windstream in the Eastern District of Texas accuses, among other things, resilient packet ring networks, DSL services, and MPLS networks, implemented using a combination of Cisco and ARRIS products.  (D.I. 31 ¶¶ 205-220, Exs. 129-130.)  All of those services implicate Cisco equipment.  (*E.g.*, D.I. 31 ¶¶ 194, 197, 200, 203, 209, 213.)  Cisco also has an agreement to indemnify TWC for patent claims against that equipment.  (D.I. 31 ¶ 189, Ex. 66, 104, 107-110.)

### D.    Rockstar's Litigation Campaign Continued Against Other MSOs.

Not content with filing litigation against Cisco, TWC, and Windstream, Rockstar also sent patent assertion letters to several MSOs operating Cisco equipment.  (D.I. 31 ¶¶ 100-112, 114, Exs. 94-99, 103, 111, 115, 117, 119, 122, 124.)  Those letters accuse the MSOs of (1) patent infringement, (2) based on the use of Cisco equipment, and (3) based on the use of equipment complying with several cable industry standards.  (*E.g.* D.I. 31 at ¶¶ 111-114.)  Cisco has agreed to indemnify the MSOs against claims that those products infringe valid, enforceable patents. (D.I. 31 ¶¶ 115, 126, 136, 142, 150, 154, 162, 182, 185, 189, 205, Exs. 66, 101, 102, 105, 107-110, 113-114, 118, 121, 123, 128.)  Consequently, the MSOs seek indemnification for the use of Cisco products.  (D.I. 31 ¶¶ 116, 141, 145, 149, 153, 158, 204, Exs. 112, 116, 127.)  To protect its customers, and to remove the cloud of uncertainty over the use of Cisco equipment, Cisco brought counterclaims against Rockstar and its related entities seeking a declaratory judgment of non-infringement for the specific Cisco products that various MSOs use to implement the accused services or comply with the accused technologies.  (D.I. 31.)

## ARGUMENT

### I.    Subject Matter Jurisdiction Exists Over Cisco's Disputed Declaratory Judgment Counterclaims For Non-Infringement (Claims 19-21).

A party has standing to bring an action under the Declaratory Judgment Act if an "actual controversy" exists, 28 U.S.C. § 2201(a), which "is the same as an Article III case or controversy." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007).  An Article III case or controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citations omitted). "[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or

contributory infringement based on the alleged acts of direct infringement by its customers." *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011).

Rockstar/Bockstar argues that claims 19-21 of Cisco's counterclaims, which seek declaratory judgment of non-infringement of three patents[5] (the "Russell Patents") allegedly owned by Bockstar, should be dismissed for lack of subject matter jurisdiction because (1) Cisco has not "alleged any affirmative acts" as to those patents and (2) Cisco "has identified no actual indemnification obligation." (D.I. 48 at 13-14.)  At bottom, Rockstar/Bockstar contends that Cisco lacks standing to seek declaratory judgment of non-infringement of the Russell Patents because no substantial controversy allegedly exists between Cisco and Rockstar.  But the allegations in Cisco's amended counterclaims demonstrate otherwise.

### A. Declaratory Judgment Jurisdiction Exists Because Rockstar's Allegations Concerning Infringement Of The Russell Patents Create An Actual Controversy As To Cisco's Liability For That Alleged Infringement.

Rockstar/Bockstar contends that "Cisco has not alleged any affirmative acts as to the Russell Patents." (D.I. 48 at 13.)  That contention lacks merit.  Rockstar has directed letters to one of Cisco's customers, ▉▉▉▉▉▉▉ accusing the company of infringing all three of the Russell Patents.  (D.I. 31 at ¶ 155; *id.* at Ex. 115.)  Rockstar accused ▉▉▉▉▉▉ E-Line Service and Ethernet-over-optical transport service of infringement.  (*Id.*)  Those allegations of infringement center on ▉▉▉▉▉▉ compliance with widely-adopted standards implemented on Cisco equipment that ▉▉▉▉▉ uses, including Cisco ME 3600X Series Ethernet Access Switches and Cisco ONS 15xxx Series Multiservice Platform.  (*Id.* at ¶¶ 156-158, 160, 347-364.) Rockstar's allegations of infringement against ▉▉▉▉▉ therefore concern the operation of those products, creating an actual controversy between Cisco and Rockstar concerning Cisco's liability, if any, for infringement of the Russell Patents.  Those allegations—taken together with Rockstar's repeated and specific threats of litigation against other customers, examples of which are pled in Cisco's amended answer and counterclaims—clearly establish a justiciable

---

[5] U.S. Patent Nos. 6,584,118; 6,704,326; and 6,816,496.

controversy warranting declaratory judgment.  *See, e.g., Arris*, 639 F.3d at 1378 (recognizing that allegations against supplier's equipment designed specifically for compliance with industry standards created actual controversy concerning at least the supplier's liability for indirect infringement).[6]

### B.   Cisco's Indemnification Agreement Also Establishes Declaratory Judgment Standing.

Standing exists for the additional reason that Cisco has agreed to indemnify its customer, ███████████, for any patent infringement.[7]   Rockstar/Bockstar erroneously argues that Cisco "has identified no actual indemnification obligation," but rather only an indemnification *request* from a customer.  (D.I. 48 at 14.)  But that contention ignores Cisco's pleadings.  On March 13, 2012, Rockstar accused ██████████ of infringing the Russell patents.  (D.I. 31 ¶ 155, Ex. 115.)  As set forth in Cisco's counterclaims, Cisco sells the allegedly-infringing products to ███ ███████ on terms "under which Cisco is *obligated to indemnify claims for patent infringement*."  (D.I. 31 ¶ 154, Ex. 114.)  That obligation arises from ████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████

---

[6] Rockstar/Bockstar alternatively argues, citing the Federal Circuit's recent decision in *Microsoft Corp. v. DataTern, Inc.*, -- F.3d --, 2014 WL 1760882 (Fed. Cir. May 5, 2014), that Rockstar's communications with Cisco customer ██████████ fail to establish an actual controversy with respect to Cisco.  (D.I. 48 at 13.)  But in *DataTern*, the Court emphasized that the only claims asserted against the customer were method claims, and therefore "there [were] no arguments that there is a case or controversy between [the patentee] and [suppliers] on direct infringement." *DataTern*, 2014 WL 1760882, at *3.  By contrast, the allegations here against Cisco's customer relate to (among other claims) apparatus claims, and Rockstar's allegations of infringement against Cisco's customer therefore also present an actual controversy as to Cisco's potential liability for *direct* infringement.  (*See, e.g.*, D.I. 31, Ex. 13 at claim 14 ('118 patent); Ex. 14, claims 16-19 ('326 patent); Ex. 15, claim 1 ('496 patent).)

[7] *See Arris*, 639 F.3d at 1375 ("[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if . . . the supplier is obligated to indemnify its customers from infringement liability.").

(*Id.*, Ex. 114 ████████.)  Cisco therefore has "an interest in determining whether it would be liable for indemnification, which turn[s] on whether [its customer] would be liable for infringement," thereby creating an Article III case or controversy supporting declaratory judgment jurisdiction.  *See ABB, Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1349 (Fed. Cir. 2011).  Rockstar/Bockstar's motion simply disregards the actual allegations pled by Cisco.

## II.    This Court Has Subject Matter Jurisdiction Over Cisco's F/RAND Declaratory Judgment Counterclaims (Claims 65, 67, And 68).

Cisco's F/RAND declaratory judgment counterclaims (claims 65, 67, and 68) are based on detailed allegations that Rockstar breached contractual obligations to license the Russell Patents on F/RAND or royalty-free terms.    Rockstar/Bockstar seeks to dismiss those counterclaims because purportedly (1) Cisco has not alleged that the Russell Patents are standards-essential, and (2) Cisco has not pled that Rockstar and Bockstar are obligated to offer a F/RAND license to those patents.  (D.I. 48 at 15.)  The first contention ignores the allegations in Cisco's pleading, and the second misstates the law.

Cisco has expressly alleged that the Russell Patents fall under standards obligations requiring a F/RAND or royalty-free license.    For example, Cisco's pleadings allege that Rockstar's predecessor-in-interest, Nortel, disclosed the Russell patents as potentially essential to the G.707, G.709, G.783, G.798, and G.7041 ITU standards.  (D.I. 31 ¶ 44, Ex. 68-71 ('496 patent), ¶ 45, Ex. 72 ('118 and '326 patents).)    Those standards concern optical networking technology.  (*Id.* at ¶¶ 44-45.)    After it acquired the Russell Patents from Nortel, Rockstar launched a patent assertion campaign, asserting infringement of the Russell Patents against at least Cisco customer ████████ for its use of optical networking technology.  (*Id.* at ¶¶ 155-56, Ex. 115.)  The fact that Rockstar asserted the Russell patents against ***optical networking technology*** after Nortel disclosed them as potentially essential to ***optical networking standards*** supports the reasonable inference that the Russell Patents are standards-essential under

Rockstar's infringement contentions.   Accordingly, Cisco pleads sufficient facts to render the asserted inferences at least plausible.[8]

Rockstar/Bockstar also argues that Cisco cannot bring a claim premised on Bockstar's refusal to negotiate with Cisco's customers because there is no justiciable claim.  (D.I. 48 at 15.) But the failure of Rockstar to offer F/RAND licenses is directly linked to its infringement allegations and threats of litigation against Cisco's customers, such as ▮▮▮▮▮▮▮▮  As explained above in Section I, those assertions, as well as Cisco's ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ created a concrete and immediate controversy as to Cisco.  *See Arris*, 639 F.3d at 1375, 1378; *ABB*, 635 F.3d at 1349.  And contrary to Rockstar's assertions, Rockstar cannot escape a F/RAND claim by refusing to negotiate with Cisco and then faulting Cisco for failing to negotiate.  *Microsoft*, 2011 WL 11480223, at *3.

## III.   Cisco's F/RAND Counterclaims (Claims 37, 39, 40, 51, 53, And 54) State Valid Contract Claims.

Cisco's F/RAND contract counterclaims (37, 39, 40, 51, 53, 54) allege that Rockstar's patent assertions, along with the other acts enumerated in Cisco's amended complaint, support an inference that Rockstar (and its alter-ego subsidiary, Bockstar) breached Nortel's agreements with the ITU and/or the covenant of good faith and fair dealing associated with those agreements.  (*See* D.I. 31 ¶¶ 478, 506, 520, 673, 693, 703.)   Rockstar/Bockstar's dismissal arguments are contrary to Cisco's well-pled counterclaims, contrary to actual fact, contrary to law, or all of the above.[9]

---

[8] Rockstar/Bockstar implies that Cisco must itself admit Rockstar's position that the Russell Patents are essential to the ITU standards to properly allege breach of contract.  (D.I. 48 at 16.) But plausible inferences about a party's actions or conduct provide an independent basis to support a claim.  *See In re Bill of Lading Transmission and Processing System Patent Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012).  Indeed, in similar circumstances, Courts have found that another party's representation that a patent is standard-essential is sufficient to state a claim for breach of a F/RAND contract.  *See, e.g., Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 938 (N.D. Cal. Feb. 2, 2012); *Microsoft Corp. v. Motorola, Inc.*, 2011 WL 11480223, at *1 (W.D. Wash. Jun. 1, 2011).
[9] Rockstar/Bockstar repeats its arguments concerning standards-essentiality in discussing the breach of contract claims.  (D.I. 48 at 16.)  That argument fails for the reasons discussed *supra*, Section II.

### A. The Court Should Reject The Artificial, Litigation-Driven Distinction Between "Rockstar" and "Bockstar" In Evaluating Cisco's F/RAND Counterclaims.

In the motion to dismiss, Bockstar makes a halfhearted effort to disavow the conduct of Rockstar, its parent and the former owner of the Russell Patents. (D.I. 48 at 16-17.) But the corporate shell game that spawned Bockstar does not launder Rockstar's bad acts. Rockstar formed Bockstar one month before bringing suit against Cisco. (D.I. 31 ¶ 232.) Bockstar is a wholly-owned shell entity that is merely a front for Rockstar and its agents. (*Id.* at ¶¶ 6, 232.) Indeed, Rockstar and Bockstar share employees, officers, and members. (*Id.* at ¶ 232; D.I. 4; Ex. A). Accordingly, this Court should reject Bockstar's attempts to divorce itself from Rockstar's behavior and pronouncements and treat them as they actually are—the same entity. *See, e.g., Google*, 2014 WL 1571807, at *4 (explaining that Rockstar's formation of another entity under similar circumstances (MobileStar Technologies, LLC) "strongly suggest that Rockstar formed MobileStar as a sham entity. . . ."). As successor-in-interest to part of the Nortel patent portfolio, Rockstar inherited certain licensing obligations and commitments made by Nortel. Those obligations pass through to Rockstar's alter-ego subsidiary, Bockstar. Accordingly, Rockstar's breaches of those obligations and commitments are equally attributable to Bockstar.

### B. Cisco's Counterclaims Demonstrate That Rockstar Breached Those F/RAND Commitments.

Rockstar/Bockstar argues that Cisco's counterclaims do not allege Rockstar's breach of F/RAND obligations. (D.I. 48 at 16-17.) That contention lacks merit. Cisco alleges numerous facts, including four independent examples, of how Rockstar breached its F/RAND obligations. First, Cisco alleges that Rockstar breached its F/RAND obligations by repudiating those obligations in public statements. (D.I. 31 ¶106, Ex. 93) (Rockstar CEO John Veschi's statement that Rockstar and its related entities "are separate" from the owners of the Rockstar Consortium, and that the F/RAND commitments Rockstar's predecessors-in-interest made do "not apply to [Rockstar].") Indeed, in its brief, Rockstar/Bockstar attempts to *reinterpret* Mr. Veschi's

statement.   (*See* D.I. 48 at 16-17.)   But a choice among competing plausible inferences is insufficient to support a motion to dismiss.[10]

Second, Cisco alleges that Rockstar has not offered F/RAND licenses to Cisco.  Indeed, as alleged in Cisco's counterclaims, Cisco's requests to Rockstar to negotiate a F/RAND license that would have covered the Russell Patents was met with silence.  (D.I. 31 ¶ 226, Ex. 131.) Cisco also alleges that Rockstar failed to offer F/RAND licenses before sending assertion letters to ████████ (D.I. 31 ¶¶ 155-56, Ex. 115.)  And contrary to its argument (*see* D.I. 48 at 17), Rockstar cannot escape a F/RAND claim by refusing to negotiate with Cisco and then faulting Cisco for failing to negotiate.  *See Microsoft*, 2011 WL 11480223, at *3.  Cisco's factual allegations—including Rockstar's refusal to negotiate with Cisco and its assertions against Cisco customers—raise a plausible claim that Rockstar breached its obligations to grant fair, reasonable, and non-discriminatory licenses.  *Id*.   Likewise, Cisco's factual allegations— including Rockstar's refusal to entertain requests to negotiate licenses on F/RAND terms and the fact that such behavior frustrated the ability of Cisco and its customers to obtain the benefit of F/RAND licenses—raise a plausible claim that Rockstar breached the covenant of good faith and fair dealing.  *Id*.

Third, Cisco alleges that Rockstar has breached its F/RAND obligations by entering into non-disclosure agreements ("NDAs") for the purpose of negotiating discriminatory license terms.  (D.I. 31 ¶¶ 221-25.)  Rockstar/Bockstar asserts that *in general* it is permissible to enter into NDAs to engage in licensing discussions.  (D.I. 48 at 17.)  But the authority cited by Rockstar/Bockstar does not address Cisco's allegations that in the particular case of "fair, reasonable, and *non-discriminatory*" obligations, when a patentee is subject to obligations to grant licenses on "fair, reasonable, and *non-discriminatory*" terms, use of NDAs to discriminate between different parties amounts to a breach of the F/RAND contract.   At a minimum,

---

[10] *Bill of Lading*, 681 F.3d at 1340 ("Nothing in *Twombly* or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible.").

Rockstar's alleged behavior (as well as that of its alter-ego subsidiary, Bockstar) raises a plausible claim that such behavior breached the covenant of good-faith and fair dealing because it frustrates the ability of Cisco and its customers to negotiate F/RAND licenses by concealing information about the license terms that have been offered or accepted by other parties.

Finally, Cisco alleges that Rockstar has transferred its patents to other controlled entities, including Bockstar, knowing that Bockstar would not abide by its F/RAND obligations. The detailed factual allegations recited in Cisco's counterclaims raise a plausible claim for breach of contract and breach of the covenant of good faith and fair dealing. For example, Cisco's allegations include specific facts concerning the manner in which Rockstar, its other subsidiaries, and its partners, have improperly asserted their F/RAND-encumbered patents, including the following: (1) Rockstar alleged infringement of the Russell Patents and then transferred them to subsidiaries or partners without informing Cisco or other assertion targets (D.I. 31 ¶ 228-36); (2) Rockstar owns 100% of Bockstar and Constellation, and they all share employees (*Id.* at ¶ 6, 232); (3) Rockstar owns a significant interest in Spherix, to which it transferred patents that are subject to F/RAND commitments (*Id.* at ¶ 236); (4) Constellation brought suit on F/RAND patents without first offering a F/RAND license (*Id.* at ¶¶ 190-91, 206-07); and (5) Spherix's CEO has announced that it intends to monetize F/RAND patents at an exorbitant rate. (*Id.* at ¶ 11.) Rockstar's control over Bockstar and influence over Spherix support a reasonable inference that Rockstar was also aware that they would breach their F/RAND obligations once they obtained the F/RAND-encumbered patents (including the Russell Patents) from Rockstar.

## IV. Federal Question And Supplemental Jurisdiction Exist Over Cisco's F/RAND Counterclaims (Claims 37, 39, 40, 51, 53, And 54).

### A. The Court Has Federal Question Jurisdiction Over Cisco's F/RAND Counterclaims.

Rockstar/Bockstar argues that the Court should decline supplemental jurisdiction over Cisco's state-law F/RAND counterclaims. (D.I. 48 at 18.) But the Court need not reach the issue of supplemental jurisdiction here because those claims arise under federal patent law, and accordingly the Court has federal question jurisdiction over the F/RAND counterclaims.

Federal courts have jurisdiction over claims that arise under federal patent law. 28 U.S.C. § 1338(a). A claim arises under patent law when plaintiff's well-pleaded complaint establishes a cause of action based on patent law or where "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). Whether a "substantial question of patent law" exists is evaluated on a "lenient standard"—the requirement is met where it is necessary for the court to interpret patents and determine whether infringement occurred. *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000). Accordingly, federal courts have exercised original jurisdiction in a case where a plaintiff alleged breach of contract through the sale of allegedly infringing products;[11] over a claim of injurious falsehood concerning patent enforcement;[12] and over a claim of disparagement where a defendant claimed the plaintiff infringed its patent.[13]

Here, Cisco's F/RAND counterclaims involve a comparison of patent claims with the standards they are alleged to cover. Specifically, the contract counterclaims involve determinations of the proper claim scope (including claim construction determinations) for each of those patents; whether each of those patents reads on a particular industry standard; and whether Cisco implements that industry standard. At least the first two determinations hinge on resolution of a substantial question of patent law. Accordingly, the Court has federal question jurisdiction over Cisco's F/RAND counterclaims. *U.S. Valves, Inc.*, 212 F.3d at 1372.

**B.     The Court Can And Should Also Exercise Supplemental Jurisdiction Over Cisco's State Law Counterclaims.**

Rockstar/Bockstar also contends that the Court should decline supplemental jurisdiction. (D.I. 48 at 18.) Courts exercise supplemental jurisdiction to conserve judicial resources and avoid multiplicity in litigation. *See Schroeder v. West*, 212 F.3d 1265, 1270 (Fed. Cir. 2000).

---

[11] *U.S. Valves, Inc.*, 212 F.3d at 1372.
[12] *Hunter Douglas v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 2012).
[13] *Additive Controls v. Flowdata*, 986 F.2d 476, 25 USPQ2d 1798 (Fed. Cir. 1993).

Three requirements must be satisfied for the exercise of supplemental jurisdiction:  "(1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative facts; and (3) the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding."  *Callaway Golf Co. v. Acushnet Co.*, 585 F. Supp. 2d 592, 599 (D. Del. 2008) (quotations omitted).   No dispute exists that Cisco's non-infringement counterclaims confer subject matter jurisdiction; accordingly, only the second and third prongs are in dispute.[14]

As to the second prong, factual overlap, Cisco's contract counterclaims are inextricably tied to its non-infringement counterclaims.  For each of the relevant patents, both Cisco's non-infringement and contract claims involve the same technology.  Legally, both sets of claims require the Court to adjudicate common legal questions, including claim construction underlying a determination of infringement.   The overlap between those claims confers supplemental jurisdiction.[15]  The third prong is also satisfied, as it is most efficient to adjudicate those contract claims at the same time as evaluating damages connected to the non-infringement case.  *See, e.g.*, *Golden Bridge Tech. v. Apple Inc.*, 5:12-CV-04882-PSG, 2014 WL 2194501, at *4 (N.D. Cal.

---

[14] Rockstar relies on *Callaway* to argue that a non-infringement claim and a breach of contract claim regarding the same patent implicate neither common legal questions nor common operative facts.  (*See* D.I. 48 at 18.)  But that argument misreads *Callaway* and ignores the basis of Cisco's claims.  The contract claims in *Callaway* involved only the "legal question of whether defendant's filing of an *inter partes* reexamination with the PTO violated the language of . . . the Agreement."  585 F. Supp. 2d at 599.  *Callaway* was therefore limited to the specific contract claims at issue; it was not—as Rockstar/Bockstar contends—a broad decree that contract claims and "patent-related" claims can never share a common nucleus of operative fact.  Rockstar/Bockstar also directs the Court to *Maclean-Fogg Co. v. Edge Composites, L.L.C.*, CIV.A. 08 C 6367, 2009 WL 1010426 (N.D. Ill. Apr. 14, 2009).  In *Maclean-Fogg*, the plaintiff failed to disclose the facts its former employee allegedly shared in violation of a confidentiality agreement.  2009 WL 1010426, at *3.  Consequently, the *Maclean-Fogg* court could not determine whether the contract claim was factually related to the patent infringement claim and declined supplemental jurisdiction on that basis.  *Id.*

[15] *See, e.g.*, *Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1370 (Fed. Cir. 2001) (finding that original jurisdiction over patent infringement claims conferred supplemental jurisdiction over state law claims of breach of contract and misappropriation of trade secrets even after the patent claims were dismissed); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) (determining that trade libel and unfair competition claims based on state law went "hand-in-hand" with federal patent infringement claims and were properly brought in federal district court).

May 18, 2014) (noting that Courts and experts can, and have, "modified the *Georgia–Pacific* factors to FRAND hypothetical negotiations") (citing *Microsoft Corp. v. Motorola, Inc.*, 2013 WL 2111217, at *14-15).   Accordingly, the Court can and should exercise supplemental jurisdiction over Cisco's F/RAND counterclaims.

**V.    Cisco's Counterclaim For Unfair Competition Under Delaware Law (Claim 93) Properly States A Claim And Should Not Be Dismissed.**

Bockstar's motion to dismiss the unfair competition counterclaim depends entirely on the position—already rejected by the one District Court that has evaluated it—that it is not the same entity as Rockstar.  *See supra* Section III.A; *Google*, 2014 WL 1571807, at *4 (referring to a recently-created wholly-owned subsidiary of Rockstar as a "sham entity.").  Bockstar is liable for that conduct because it perpetuates the unfair and anticompetitive scheme put into motion by its parent-owner and alter-ego, Rockstar.  That is especially true because Rockstar broadly and in bad faith accused Cisco's customers of infringing its "patent estate" before transferring a number of those patents to its wholly-controlled instrumentality Bockstar.  (D.I. 31 ¶ 108.)  In fact, it is presently difficult—if not impossible—to determine which patents any given Rockstar entity or subsidiary owns after Rockstar's "shuffle" of the portfolio.  (*Id.* at ¶ 122.)  Cisco and its customers need not continue operating their businesses under the cloud of patent infringement— a cloud that Rockstar and its instrumentalities have created—without a remedy that extends to Rockstar's instrumentality, Bockstar.  With respect to Bockstar's contention that Cisco does not substantively state a claim for unfair competition, Cisco incorporates by reference Section III of Cisco Systems, Inc.'s Opposition To Rockstar Consortium US LP And Constellation Technologies LLC's Motion To Dismiss, submitted concurrently.[16]

---

[16] Rockstar's two-sentence conclusion that Cisco's unfair competition claim is preempted by federal patent law (D.I. 48 at 19) is incorrect because Cisco pleads bad faith.  Contrary to Rockstar's assertion, Cisco supports that pleading with numerous factual allegations, as explained in Section III of Cisco Systems, Inc.'s Opposition To Rockstar Consortium US LP And Constellation Technologies LLC's Motion To Dismiss, submitted concurrently.

**VI.   Rockstar, Constellation, And Spherix Are Properly Joined In This Action Because The Same Underlying Conduct Implicates All Four Parties.**

Rockstar's misjoinder arguments depend on the underlying premise that Bockstar is actually independent and separate from its corporate parent and sister entities, Rockstar and Constellation.  The Court should reject that fiction, as has been done before.  *Google*, 2014 WL 1571807, at *4.  Instead, this Court should treat Bockstar, Rockstar, and Constellation as they actually are—the same entity.[17]   Rockstar's behavior necessitates their inclusion in order for Cisco to obtain complete relief.  Rockstar, Bockstar, Constellation, and Spherix are all properly joined in this action.

**A.   Joinder Is Required Under Rule 19.**

Rockstar, Constellation, and Spherix are required parties for Cisco's counterclaims numbers 7-29 and 37-93 (non-infringement and F/RAND counterclaims).  Bockstar hinges its misjoinder arguments entirely on the (unfounded) presumption that the Court will dismiss those counterclaims.  (D.I. 48 at 8-9.)  Because those counterclaims are properly pled and the Court has subject matter jurisdiction over those counterclaims, Bockstar's argument should be rejected.

Moreover, joinder of Rockstar, Constellation, and Spherix is required because without those entities, complete relief cannot be afforded to Cisco; the disposition of the action would prejudice, as a practical matter, Cisco's ability to protect its own interest; and Cisco would be subject to a substantial risk of multiple or inconsistent obligations.  Fed. R. Civ. P. 19; *Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116, 1121-22 (D. Del. 1989).  Those entities are assignees of the patents that are the subject of Cisco's counterclaims; they are acting with concerted behavior that is the subject of Cisco's unfair competition counterclaim; and they have stepped into Nortel's shoes with respect to its F/RAND licensing commitments.  *See supra* Section III.A.  Accordingly, the Court should deny Bockstar's arguments under Rule 19.

---

[17]  Similarly, Rockstar has contractually partnered with Spherix for the purpose of asserting certain patents in parallel against common targets.  (D.I. 31 ¶¶ 10-12.)

### B.     Joinder Is Proper Under Rule 20.

Because Rockstar, Constellation, and Spherix are necessary parties, the Court need not reach this issue.  But even if it does, those entities are also properly joined under Fed. R. Civ. P. 20.  Cisco's counterclaims arise from the same transactions or occurrences, *i.e.* Rockstar's actual or threatened patent actions, and raise common, logically-related questions of law and fact, *i.e.* non-infringement of common equipment, invalidity, claim construction, and damages. *Dougherty v. Mieczkowski*, 661 F. Supp. 267, 277 (D. Del. 1987) ("The liberal rule for joinder of parties is designed to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." (internal citations omitted)).  As examples, Cisco's counterclaims raise common issues of fact and law concerning the assertion of the Nortel patents by Rockstar, its wholly-owned subsidiaries, and Spherix, their disregard of royalty-free and F/RAND encumbrances to which many of those patents were subject, and their interference with Cisco's customer relationships in violation of Delaware unfair competition law.

Moreover, as discussed above, joinder is proper because Rockstar, Constellation, Bockstar, and Spherix are bound by total or partial ownership and/or contract, and they are acting in concert. (D.I. 31 ¶¶ 100-116, 228-236, 1073-1087.)  Bockstar and Constellation are wholly-owned subsidiaries of Rockstar, they were created by Rockstar, their corporate officers overlap with Rockstar's officers, and they do not act independently of Rockstar. (*Id.* at ¶¶ 6-9, 11-12, 108-109, 228-233, 236.)  *See Conan Properties, Inc. v. Mattel, Inc.*, 619 F. Supp. 1167, 1170 (S.D.N.Y. 1985) (finding joinder proper for a parent company of a subsidiary when the subsidiary is controlled and dominated by the parent).  Meanwhile, Rockstar has substantial influence over Spherix.  Rockstar is Spherix's largest shareholder, Spherix has made certain contractual commitments to Rockstar with respect to litigation conduct, and Rockstar has engaged in license negotiations for the patents before assigning them to Spherix. (D.I. 31 ¶¶ 11-

12, 234-236.)[18]   Joinder of Rockstar, Constellation, and Spherix is therefore appropriate under Rule 20.

## CONCLUSION

For the foregoing reasons, Cisco respectfully requests that this Court deny Bockstar's motion to dismiss in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

_____

OF COUNSEL:

John M. Desmarais
Michael P. Stadnick
Jonas R. McDavit
Karim Z. Oussayef
Ameet A. Modi
Dustin F. Guzior
Edward Terchunian
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

August 1, 2014

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Counsel for Defendant/*
*Counterclaim-Plaintiff Cisco Systems, Inc.*

---

[18] For those reasons, Bockstar's reliance on *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), and *Wacah Co. v. Kionix Inc.*, 845 F. Supp. 2d 597 (D. Del. 2012) is unavailing.  (*See* D.I. 48 at 9-10.)   *EMC* addressed joinder of "**independent** defendants (*i.e.*, situations in which the defendants are not acting in concert)." *In re EMC*, 677 F.3d at 1359. *Wacah* addressed joinder of defendants who do not have "**any corporate or business relationship[s]**." *Wacah*, 845 F. Supp. 2d at 600).   Here, Rockstar and Spherix are acting in concert pursuant to agreements between those separate entities.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 1, 2014, upon the following in the manner indicated:

Adam W. Poff, Esquire                                            *VIA ELECTRONIC MAIL*
Monté T. Squire, Esquire
Gregory J. Brodzik, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff Bockstar Technologies
LLC*

Robert T. Haslam, Esquire                                       *VIA ELECTRONIC MAIL*
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA  94065
*Attorneys for Plaintiff Bockstar Technologies
LLC*

Robert D. Fram, Esquire                                         *VIA ELECTRONIC MAIL*
Winslow Taub, Esquire
Scott Schrader, Esquire
Nathan Shafroth, Esquire
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA  94111
*Attorneys for Plaintiff Bockstar Technologies
LLC*

Philip A. Irwin, Esquire                                      *VIA ELECTRONIC MAIL*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
*Attorneys for Plaintiff Bockstar Technologies
LLC*

                                          */s/ Maryellen Noreika*
                                          _____
                                          Maryellen Noreika (#3208)