## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOCKSTAR TECHNOLOGIES LLC,

      Plaintiff,

    v.

CISCO SYSTEMS, INC.,

      Defendant.

CISCO SYSTEMS, INC.,

      Counterclaim-Plaintiff,

    v.

BOCKSTAR TECHNOLOGIES LLC,
CONSTELLATION TECHNOLOGIES LLC,
ROCKSTAR CONSORTIUM US LP, AND
SPHERIX INCORPORATED,

      Counterclaim Defendants.

Civil Action No. 13-2020-SLR

**JURY TRIAL DEMANDED**

**REDACTED - PUBLIC VERSION**

**SPHERIX'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
AND ITS JOINDER WITH ROCKSTAR'S AND BOCKSTAR'S MOTIONS TO DISMISS
CISCO'S AMENDED COUNTERCLAIMS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................... 1

SUMMARY OF THE ARGUMENT .............................................................................................. 2

FACTUAL BACKGROUND........................................................................................................... 4

LEGAL STANDARDS .................................................................................................................... 5

ARGUMENT..................................................................................................................................... 6

I.      THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
        CISCO'S DECLARATORY JUDGMENT COUNTS OF
        NONINFRINGMENT ................................................................................................ 6

        A.      Spherix Never Accused Cisco of Infringing the Frantz Patents ................ 6

        B.      Spherix Never Accused Cisco's "Known Accused Customers" of
                Infringing the Frantz Patents....................................................................... 7

        C.      Rockstar's Letters Do Not Give Cisco an Actual Case and
                Controversy Regarding Direct Infringement ............................................. 9

        D.      Rockstar's Letters Do Not Give Cisco a Case and Controversy
                Regarding Indirect Infringement.................................................................. 9

        E.      Cisco Does Not Allege That It Must Indemnify ███████ or
                Charter for Alleged Infringement of the Frantz Patents .......................... 10

II.     THERE IS NO ACTUAL CASE AND CONTROVERSY REGARDING

        CISCO'S REMAINING COUNTS AGAINST SPHERIX ................................. 11

        A.      The Court Should Decline to Hear Cisco's Counts Against Spherix ...... 14

        B.      Spherix Does Not Belong in This Case. ................................................. 15

CONCLUSION................................................................................................................................ 16

# TABLE OF AUTHORITIES

## Cases

*Addington v. US Airline Pilots Ass'n,*
606 F.3d 1174 (9th Cir. 2010) ................................................................................................... 13

*ARRIS Group, Inc. v. British Telecomms. PLC,*
639 F.3d 1368 (Fed. Cir. 2011)................................................................................................. 10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................................................... 6

*AT&T v. Winback & Conserve Program, Inc*
2 F.3d 1421 (3d Cir. 1994)......................................................................................................... 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).................................................................................................................... 6

*Billops v. Magness Constr. Co.,*
391 A.2d 196 (Del. 1997) ........................................................................................................... 8

*Commil USA, LLC v. Cisco Sys., Inc.,*
720 F.3d 1361 (Fed. Cir. 2013).................................................................................................. 9

*Covington v. Int'l Ass'n. of Approved Basketball Officials,*
710 F.3d 114 (3d Cir. 2013)........................................................................................................ 8

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,*
424 F.3d 1293 (Fed. Cir. 2005)................................................................................................. 10

*In re EMC,*
677 F.3d 1351 (Fed. Cir. 2012)................................................................................................. 16

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,*
2007 U.S. App. LEXIS 18113 (3d. Cir. July 9, 2007)................................................................ 8

*Microchip Technology Inc. v. Chamberlain Group, Inc.,*
441 F.3d 936 (Fed. Cir. 2006)................................................................................................... 14

*Microsoft Corp. v. DataTern, Inc.,*
No. 2013-1184, 2013-1185, 2014 WL 1760882 (Fed. Cir. May 5, 2014)................................ 10

*Samsung Elecs. Co., Ltd. v. ON Semiconductor Corp.,*
541 F. Supp. 2d 645 (D. Del. 2008)............................................................................................ 5

*Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.,*
887 F.2d 1213, (3d Cir. 1989)................................................................................................... 14

*Trend Micro Corp. v. Whitecell Software, Inc.*,
   No. C-10-02248-WHA, 2011 WL 499951 (N.D. Cal. Feb. 8, 2011) ......................................... 9

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*,
   473 F.3d 506 (3d Cir. 2007)......................................................................................................... 5

**Statutes**

35 U.S.C. § 271(c) ...................................................................................................................... 10

Fed. R. Civ. P. 20(a)(2)(A) ......................................................................................................... 15

**Treatises**

Restatement (Third) of Agency § 2.03 .......................................................................................... 8

## INTRODUCTION

Defendant Spherix Incorporated ("Spherix") submits this Opening Brief in Support of its Motion to Dismiss Cisco's Amended Counterclaims and its Joinder in the Motions to Dismiss Cisco's Amended Counterclaims that were filed by Rockstar Consortium US LP and Constellation Technologies LLC's (D.I. 43) and by Bockstar Technologies LLC (D.I. 47). Spherix joins in each of the grounds for dismissing Cisco's Amended Counterclaims set forth in the opening briefs supporting Rockstar's and Bockstar's Motions to Dismiss (D.I. 48, 49) and incorporates the arguments and authorities set forth in those briefs as if they were set forth herein. Spherix submits this brief to address issues concerning Cisco's Amended Counterclaims that are unique to Spherix.

## NATURE AND STAGE OF THE PROCEEDINGS

In January, one of Cisco's customers, Charter, filed an action for declaratory judgments and other relief against Spherix and others with counts directed to United States Patents 5,959,990 (the "'990 patent") and RE40,999 (the "'999 Patent") to Frantz et al. (collectively, "the Frantz patents"), which are owned by Spherix. *Charter Comm. Inc. et al. v Rockstar Consortium US LP et al.,* No. 1:14-cv-00055-SLR, Complaint (D.I. 1) (D. Del. Jan. 17, 2014). Spherix moved to dismiss Charter's counts for a lack of subject matter jurisdiction, and Charter agreed to dismiss those counts without prejudice. *Charter Comm. Inc. et al. v Rockstar Consortium US LP et al.,* No. 1:14-cv-00055-SLR, Stipulation of Dismissal (D.I. 48) (D. Del. June 5, 2014) and Order Approving Stipulation of Dismissal (D.I. 49) (D. Del. June 6, 2014). As part of the dismissal, Charter and Spherix agreed that before any future action on the Frantz patents was initiated, the parties would negotiate in good faith over a period of 90 days before any action was filed. Cisco's counsel in this litigation negotiated that standstill agreement on behalf of Charter. On June 6, 2014, the very same day that this Court approved the standstill

agreement and dismissed the case, without any notice or good faith negotiations with Spherix, Cisco filed its Amended Answer and Counterclaims (D.I. 31) in this action, asserting declaratory judgment and other counts against Spherix concerning the Frantz patents. Specifically, the Amended Counterclaims contain two counts seeking a declaration of noninfringement regarding the Frantz patents (counts 11 and 28). The remaining counts against Spherix closely parallel Charter's counts that have been dismissed. Specifically, the remaining counts allege that the Frantz patents are subject to FRAND obligations (counts 70-71), that Spherix purportedly breached or did not act in good faith regarding those obligations (counts 42-43 and 56-57), and that Spherix engaged in unfair competition regarding those obligations (count 93).

Cisco seeks to add Spherix to a case with 29 patents, 93 counterclaims, and five parties to address alleged disputes over two patents. None of the other 27 patents-in-suit are in the Frantz patent family, and no other party is a corporate affiliate of Spherix. Spherix is an independent, publicly traded company.

## SUMMARY OF THE ARGUMENT

1.      There is no actual case or controversy that provides a basis for jurisdiction over Cisco's counts for noninfringement of the Frantz patents (counts 11 and 28). Cisco never alleges that Spherix, the owner of the Frantz patents, ever stated that Cisco or any of its "Known Accused Customers" infringe those patents. Cisco merely alleges that a prior owner of the Frantz patents, Rockstar, stated that VLAN and Ethernet services provided by Cisco's customers, Charter and ⬛⬛⬛⬛, infringe the Frantz patents. Rockstar never made those statements on Spherix's behalf. Spherix had no ownership interests in the Frantz patents when Rockstar allegedly made those statements. Further, those statements do not give rise to any actual case and controversy regarding infringement by Cisco. Cisco does not allege that it performs any VLAN or Ethernet services or that it performs any activities that would make Cisco liable for

2

indirect infringement.  Further, Cisco does not allege that it would have to indemnify Charter or

███████████ for infringement of the Frantz patents.  Cisco merely seeks an impermissible

advisory opinion regarding noninfringement when no one has accused Cisco of infringement.

2.       There is no actual case and controversy that provides a basis for jurisdiction over

the remaining Cisco counts against Spherix.  These counts allege that Spherix has FRAND

obligations regarding the Frantz patents, that Spherix purportedly breached or lacked good faith

and fair dealing regarding those FRAND obligations, and Spherix purportedly engaged in unfair

competition by allegedly breaching those FRAND obligations (counts 42-43, 56-57, 70-71, and

93).  The only pertinent FRAND obligations are to provide a license under FRAND terms upon

request.  Cisco, however, never alleges that it requested any license from Spherix on the Frantz

patents.  Cisco merely speculates that if it had asked for such a license Spherix might have

refused to provide one and that Cisco might have suffered damages as a result.  An actual case

and controversy does not result from speculation about breaches or a lack of good faith and

dealing that might have occurred under scenarios that never took place and about damages that

could result from hypothetical breaches.

3.       The Court should also dismiss Cisco's counterclaims against Spherix in light of

the standstill Cisco's counsel negotiated on behalf of Charter.  For jurisdictional purposes, Cisco

argues that it should be allowed to stand in the shoes of Charter, relying on statements made to

Charter.  Yet, on the same day that Cisco filed its Amended Answer and Counterclaims, this

Court approved a dismissal of all of Charter's counts involving the Frantz patents.  As part of the

dismissal, Charter agreed to negotiate in good faith and provide ninety day notice before filing

any further action against Spherix regarding those patents.  Cisco's filing its counterclaims

against Spherix on the Frantz patents on the same day, using the same counsel cannot be coincidental. Those counts should not be allowed to go forward.

    4.    The Court should also dismiss Spherix from this action because all of Cisco's counts against Spherix concern only two Spherix patents, and a dispute between Cisco and Spherix regarding two patents does not belong in a lawsuit with 27 additional patents, 84 additional counterclaims and four additional parties. This is particularly true since the Frantz patents are not part of the same patent family as any other patent-in-suit, and Spherix is not a corporate affiliate of any other party in suit.

## FACTUAL BACKGROUND

Spherix was launched in 1967 as a scientific research company. (*See* Declaration of Anthony Hayes (Hayes Decl.), Ex. A ¶ 3.) Today, its common stock is publicly traded on the NASDAQ Capital Market system under the symbol SPEX. (*Id.*) For most of its history, Spherix has focused its operations on biotechnology research and development. (*Id.* ¶ 4.) Its own research has led to numerous patents and patent applications relating to innovative biotechnology inventions such as water purification, biodegradation management, and the use of D-tagatose for food and potentially medical and environmental applications. (*Id.*)

Spherix recently expanded its operations into commercialization of technology in the field of telecommunications and networking. (*Id.* ¶ 5.) As part of that expansion, Spherix acquired a portfolio of telecommunications patents from Defendant Rockstar. On July 10, 2013, Spherix entered into a Patent Purchase Agreement with Rockstar under which Spherix obtained seven patents related to cordless telephone technology. (*Id.* ¶ 6.) On December 31, 2013, Spherix entered into a separate agreement with Rockstar and acquired approximately 101 additional patents related to networking, including the Frantz Patents. (*Id.* ¶ 7.)

Spherix has never accused Cisco or any of what Cisco terms as the "Known Accused Customers" of infringing the Frantz patents. (*Id.* ¶ 8.) Indeed, prior to the filing of this lawsuit, there was no relationship or communication between Spherix and Cisco regarding the Frantz patents. (*Id.* ¶ 11.) Rockstar is not and has never been an agent of Spherix. (*Id.* ¶ 19.)

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) authorizes a defendant to bring a motion to dismiss a complaint for lack of subject-matter jurisdiction. A challenge to jurisdiction can be either facial or factual. *See U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). A facial challenge asserts that the allegations in the pleadings are insufficient, on their face, to establish jurisdiction. A factual challenge, on the other hand, asserts that there is no underlying factual basis supporting the Court's jurisdiction. *Id.* When either type of challenge to jurisdiction is presented, the burden of proof rests on the party asserting a count to establish the Court's jurisdiction. *See Samsung Elecs. Co., Ltd. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008). In deciding a facial challenge, the Court should limit its review to the allegations of the Complaint, and should take the well-pled allegations as true. *See Atkinson,* 473 F.3d at 514; *Samsung,* 541 F. Supp. 2d at 648. For a factual challenge, the Court may consider evidence outside the pleadings and make factual determinations. *See Atkinson,* 473 F.3d at 514; *Samsung,* 541 F. Supp. 2d at 648.

In this motion to dismiss, Spherix presents both a facial and factual 12(b)(1) challenge to the allegations that subject matter jurisdiction exists. Spherix challenges the sufficiency of

Cisco's allegations in establishing jurisdiction; and Spherix also presents sworn testimony via the declaration of Anthony Hayes to factually challenge the existence of subject matter jurisdiction.[1]

A motion under Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of a pleading. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must contain "more than labels and conclusions, " [] a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

## ARGUMENT

### I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER CISCO'S DECLARATORY JUDGMENT COUNTS OF NONINFRINGMENT

#### A. Spherix Never Accused Cisco of Infringing the Frantz Patents

Cisco does not allege any acts by Spherix that would give rise to an actual case or controversy with Cisco regarding noninfringement of the Frantz patents. While Cisco alleges that Known Accused Customers, namely Charter and ███████, were contacted regarding the Frantz patents, Cisco does not allege that Spherix contacted those parties. Cisco does not allege that Spherix has ever contacted Cisco, Charter or ███████ regarding licensing the Frantz patents, sent a cease and desist letter to Cisco, Charter or ███████, or made any allegations regarding infringement to those parties. Cisco does not allege that before the filing of its Amended Counterclaims that Cisco, ███████, or Charter have ever spoken with Spherix

---

[1]     Because evidence outside the pleadings should not be considered for purposes of a 12(b)(6) motion to dismiss for failure to state a claim, Spherix is not proffering the Anthony Hayes declaration in conjunction with the 12(b)(6) motion.

about patent licensing, or that Spherix has refused license the Frantz patents (on FRAND terms or otherwise).

Cisco's Amended Counterclaims are devoid of any such allegations because, as a factual matter, before the filing of Cisco's Counterclaims Spherix had never interacted regarding the Frantz patents with Cisco or ▮▮▮▮▮▮ in any way, and the only time Spherix spoke with Charter regarding the Frantz patents was when Spherix moved to dismiss Charter's counts regarding the Frantz patents for a lack of subject matter jurisdiction. (Hayes Decl. ¶¶ 11-13.)

The only interaction between Spherix and Cisco, ▮▮▮▮▮▮, or Charter alleged by Cisco is that Spherix had previously brought a suit for patent infringement against Cisco. Notably, in that case, Spherix did not accuse Cisco of infringing the Frantz patents. *Spherix Inc. v. Cisco Systems Inc.*, No. 1:14-cv-00393-SLR, Complaint (D.I. 1) (D. Del. Mar. 28, 2014). In fact, Spherix has not sued anyone on the Frantz patents. (Hayes Decl. ¶ 10.)

## B. Spherix Never Accused Cisco's "Known Accused Customers" of Infringing the Frantz Patents

Unable to allege facts related to Spherix's conduct, Cisco alleges that "Rockstar, for itself and on behalf of its partner, Spherix, has accused [Charter or ▮▮▮▮▮▮] of infringing [the Frantz patents] . . . ." (D.I. 31 ¶¶ 298, 402.) Cisco relies on letters purportedly sent by Rockstar on March 13, 2012 to Charter ("March 2012 Letter") and on September 6, 2012 to ▮▮▮▮▮▮ ("September 2012 Letter"). (D.I. 31 ¶¶ 159, 164.) Rockstar, however, did not send those letters on behalf of Spherix. At the time Rockstar purportedly sent these letters, Spherix had no ownership interest in the Frantz patents and had not entered into any business relationship with Rockstar. (Hayes Decl. ¶¶ 6-7.) Almost a year passed before Spherix acquired any patents from Rockstar, and it was not until fifteen months after the September 2012 letter that Spherix acquired the Frantz patents. (*Id.*)

7

Rockstar has never acted as Spherix's agent, and has never been given authority by

Spherix to act as its agent. (*Id.* ¶¶ 19-20.) Spherix has never authorized Rockstar to act on its

behalf—Rockstar is not and has never been an agent for Spherix. (*Id.* ¶ 19.) Spherix has never

given Rockstar any ability, express or implied, to act as an agent for Spherix. (*Id.*) There has

never been any agreement, express or implied, that Rockstar had any ability to license patents for

Spherix. (*Id.*)

While Cisco alleges that "Rockstar representatives were purporting to act not only on

behalf of itself, but also on behalf of Spherix," the allegation strains credulity given Spherix's

lack of involvement with either Rockstar or the Frantz patents at the time the letters Cisco cites

were sent. (*Id.* ¶¶ 6-7.) Moreover, as a matter of law, the allegation cannot establish jurisdiction.

As the Restatement makes clear, only the principal, and not the purported agent alone, can create

apparent authority.[2] The Restatement is expressly cited in and/or is in accord with a plethora of

case authority from Delaware and from other jurisdictions.[3]

Finally, the fact that Spherix purchased the Frantz patents from Rockstar is not a basis for

attributing Rockstar's actions to Spherix. *See Trend Micro Corp. v. Whitecell Software, Inc.*, No.

---

[2]     Restatement (Third) of Agency § 2.03 ("Apparent authority, as defined in §2.03, is
created by a person's ***manifestation that another has authority to act with legal consequences
for the person who makes the manifestation***, when a third party reasonably believes the actor to
be authorized and the belief is traceable to the manifestation.") (emphasis added).

[3]     *See, e.g. Covington v. Int'l Ass'n. of Approved Basketball Officials,* 710 F.3d 114, 120
(3d Cir. 2013) ("Apparent authority arises in those situations where ***the principal*** causes persons
with whom the agent deals to reasonably believe that the agent has authority . . . .") (emphasis
added); *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,* 2007 U.S. App. LEXIS 18113, at *9
(3d. Cir. July 9, 2007) ("As with actual authority, apparent authority is only established through
***manifestations by the principal***, and a third party's belief that the agent is authorized must be
'traceable to the manifestation.'") (citing the Restatement); *AT&T v. Winback & Conserve
Program, Inc.,* 42 F.3d 1421, 1440 (3d Cir. 1994) ("Under the doctrine of apparent authority, the
district court should have looked to ***the principal's actions*** and the third parties' reasonable
beliefs.") (emphasis added); *Billops v. Magness Constr. Co.,* 391 A.2d 196, 198 (Del. 1997) ("In
order to establish a chain of liability to the principal based upon apparent agency, a litigant must
show reliance on the indicia of authority ***originated by the principal*** . . . .") (emphasis added).

C-10-02248-WHA, 2011 WL 499951, at *3-*5 (N.D. Cal. Feb. 8, 2011) (dismissing declaratory judgment action for lack of a case or controversy where the patent was sold during the course of the suit and the new owner had made no attempt to assert the patent against the declaratory judgment plaintiff.). There is no basis for attributing Rockstar's March 2012 or September 2012 letters to Spherix and, therefore, there is no basis for Cisco's declaratory noninfringement counts.

### C.   Rockstar's Letters Do Not Give Cisco an Actual Case and Controversy Regarding Direct Infringement

Rockstar's March 2012 and September 2012 letters were not directed to Cisco nor any Cisco products. The letters identify VLAN and Ethernet services as being pertinent to the Frantz patents. (DI 31 ¶¶ 298, 402.) Cisco does not allege that it provides VLAN or Ethernet services that could infringe the Frantz patents. Therefore, there is no actual case and controversy regarding direct infringement by Cisco.

### D.   Rockstar's Letters Do Not Give Cisco a Case and Controversy Regarding Indirect Infringement

Cisco does not allege that it has performed any acts that create an actual case and controversy regarding indirect infringement by active inducement or contributory infringement. To actively induce infringement, a supplier must induce the acts its customer performs that constitute patent infringement with the knowledge of the existence of the patent and that the induced acts constitute patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367 (Fed. Cir. 2013). Cisco has not alleged that it has induced Charter or ███████████ to provide VLAN and Ethernet service or that it has done so with the knowledge of the Frantz patents and the knowledge that Charter's or ███████████ actions constitute infringement of the Frantz patents. Cisco has not alleged that anyone has accused Cisco of inducing infringement by Charter or ███████████.

9

To contributorily infringe a patent, a supplier must provide a "material part of the invention" and "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005). Cisco does not allege that it provides any product that is a material part of the inventions claimed in the Frantz patents nor does Cisco allege that any such product has no substantial noninfringing use. Cisco does not allege that anyone has accused Cisco of contributorily infringing the Frantz patents by supplying a product to Charter or ███

███ that is a material part of the claimed inventions of the Frantz patents and lacks a substantial noninfringing use. Cisco has not alleged facts giving rise to declaratory judgment jurisdiction based on indirect infringement. *Microsoft Corp. v. DataTern, Inc.*, No. 2013-1184, 2013-1185, 2014 WL 1760882 at *4 (Fed. Cir. May 5, 2014).

### E. Cisco Does Not Allege That It Must Indemnify ███ or Charter for Alleged Infringement of the Frantz Patents

A supplier can try to stand in the shoes of its customers to assert jurisdiction if it is required to indemnify its customers for the alleged infringement. *ARRIS Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011). Cisco, however, never alleges that it must indemnify Charter or ███ for infringement of the Frantz patents. Cisco merely alleges it has contracts with Charter and ███ that define and limit the indemnification obligations Cisco has with those companies. In particular, Cisco states that Charter and ███ purchase equipment "under terms and conditions which also set forth the conditions under which Cisco is obligated to indemnify claims for patent infringement." (D.I. 31 ¶¶ 154, 162.) Cisco does not allege that those terms and conditions actually require Cisco to indemnify Charter or ███ for infringement of the Frantz patents. ███

███

10

 Cisco

does not even alleged that Charter or ███████ requested that Cisco indemnify them regarding the Frantz patents.

Moreover, Charter itself never claimed to have an actual case and controversy against Spherix concerning noninfringement of the Frantz patents. Instead, Charter asserted counts that parallel the allegations concerning Spherix's FRAND obligations regarding the Frantz patents. *Charter Comm. Inc. et al. v Rockstar Consortium US LP et al.,* No. 1:14-cv-00055-SLR, Complaint (D.I. 1) (D. Del. Jan. 17, 2014). Tellingly absent from Charter's complaint was any allegation that it had any actual case and controversy with Spherix regarding noninfringement of Frantz patents. *Id.* While attempting to stand in Charter's shoes, Cisco cannot have an actual case and controversy that Charter lacked. Cisco has no actual case and controversy with Spherix based on indemnification.

## II. THERE IS NO ACTUAL CASE AND CONTROVERSY REGARDING CISCO'S REMAINING COUNTS AGAINST SPHERIX

Cisco's remaining counts against Spherix allege that Spherix was obligated to provide FRAND licenses under the Frantz patents, that Spherix purportedly breached or failed to act in good faith regarding its FRAND obligations, and that by doing so has engaged in unfair competition (counts 42-43, 56-57, 70-71, and 93). These counts should be dismissed for all of the reasons set forth in Rockstar's opening brief in support of its motions to dismiss, including for failure to state a claim upon which relief could be granted and a lack of subject matter jurisdiction.

11

These counts should also be dismissed because they are all premised upon an obligation to provide a FRAND license "upon written request." (Cisco Exs. 76-77.) Cisco, however, never alleges that it or any of its customers were denied a FRAND license by Spherix on the Frantz patents or even that they requested such a license (in writing or orally). Cisco merely speculates that if Cisco or its customers had requested a license under the Frantz patents Spherix might not have given Cisco such a license and that Cisco might have suffered damages as a result. Cisco bases its speculation on the following allegations:

- Rockstar and Spherix purportedly stated that Nortel's FRAND commitments would not be honored, refused to license standard essential patents to Cisco or unspecified customers (presumably meaning Charter and ▮▮▮▮▮▮▮) on FRAND terms, refused to enter into licensing negotiations without NDA agreements that were designed to produce licenses with non-uniform terms and obligations, and refused to publicize existing license terms;

- Rockstar warranted that the seven patents described in Spherix's November 19, 2013 SEC filings were not subject to licensing obligations;

- Spherix's CEO, Mr. Hayes, stated that the patents bought by Spherix are worth 60 million dollars, "reflecting a value far above F/RAND rates" and

- Spherix acquired other patents under an agreement to promptly bring a patent infringement suit."

(D.I. 31 ¶¶ 550, 565, 723, 734.) None of these allegations give rise to subject matter jurisdiction or state a claim for relief. First, before the filing of its Amended Counterclaims, Cisco, Charter, and ▮▮▮▮▮▮▮ never asked Spherix for a license to any FRAND patent. (Hayes Decl. ¶ 17.) Spherix never refused to provide a FRAND license to Cisco, Charter, and ▮▮▮▮▮▮▮. (*Id.*)

Before the filing of Cisco Amended Counterclaims, Spherix never demanded an NDA from Cisco, Charter and ████████ for a FRAND discussion. (*Id.* ¶ 14.) Spherix has never demanded an NDA for the purpose of producing FRAND licenses with non-uniform terms or obligations. (*Id.* ¶ 16.) Spherix has every intention of fulfilling any FRAND commitments attached to patents owned by Spherix. (*Id.* ¶ 18.)

Second, Rockstar's warranty that the seven patents that were the subject of Spherix's November 19, 2013 SEC filing were not subject to FRAND obligations is a red-herring. None of those seven patents are any of the Frantz patents. (Cisco Ex. 24 at 17.) Spherix did not obtain the Frantz patents until a month after that SEC filing. (Hayes Decl. ¶ 7.) And Cisco has not alleged that any of the seven patents described in Spherix's November 19, 2013 SEC filing are subject to any FRAND obligations.

Third, Cisco's allegation that Mr. Hayes' valuation for Spherix's patent portfolio is too high and that it would prevent Spherix from meeting its FRAND obligations for two patents requires multiple layers of speculation. One has to speculate whether that valuation is too high. Then one has to speculate how that valuation of more than one hundred patents purchased by Spherix would affect Spherix's valuation of two Frantz patents. Then one has to speculate how the valuation of those two patents would affect Spherix's compliance with FRAND obligations and how an alleged breach would have harmed Cisco. And all this speculation is required only because Cisco, Charter, or ████████ never requested a license under the Frantz patents before the filing of Cisco's Amended Counterclaims. Unwarranted speculation does not provide an actual case and controversy. *Addington v. US Airline Pilots Ass'n,* 606 F.3d 1174, 1179 (9th Cir. 2010) ("A question is fit for decision when it can be decided without considering 'contingent

future events that may or may not occur as anticipated, or indeed may not occur at all.'") (citations omitted).

Fourth, Cisco's allegation that Spherix was required to bring suit on some patents does not provide an actual case and controversy regarding the Frantz patents. Cisco does not allege that Spherix was required to bring suit on the Frantz patents. Spherix was not. (Hayes Decl. ¶ 7.) While Cisco alleges Spherix was required to bring suit on patents acquired on July 10, 2013. (D.I. 31 ¶ 10), the Frantz patents were acquired on December 31, 2013. (Hayes Decl. ¶ 7.) As Cisco's allegations set forth, Spherix's obligation to bring suit expired months before Cisco filed its Amended Counterclaims. (D.I. 31 ¶ 10.) Indeed, Spherix has not sued anyone on the Frantz patents and has no obligation to do so. (Hayes Decl. ¶¶ 9-10.)

## A.   The Court Should Decline to Hear Cisco's Counts Against Spherix

Even if the Court concludes that it would otherwise have jurisdiction over Cisco's counterclaims regarding the Frantz patents, the Court should decline to exercise jurisdiction based on the standstill that Charter entered with Spherix. *Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.,* 887 F.2d 1213, 1222 (3d Cir. 1989) (holding that courts have discretion whether to entertain declaratory judgment claims); *Microchip Technology Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 942–44 (Fed. Cir. 2006) (vacating summary judgment in favor of a declaratory judgment plaintiff, in part because parties had a previous settlement agreement in place and plaintiff did not have a reasonable apprehension of being sued). Cisco attempts to stand in the shoes of Charter and ▓▓▓▓▓▓▓ in asserting its counts against Spherix. Cisco's alleged jurisdictional hook for its counterclaims against Spherix are letters sent to Charter and ▓▓▓▓▓▓. Cisco's counsel represented Charter against Spherix and negotiated a dismissal and a standstill between Charter and Spherix regarding those patents. *Charter Comm. Inc. et al. v Rockstar Consortium US LP et al.,* No. 1:14-cv-00055-SLR, Stipulation of Dismissal (D.I. 48) (D. Del. June 5, 2014)

14

and Order Approving Stipulation of Dismissal (D.I. 49) (D. Del. June 6, 2014). That standstill prevents Charter from asserting any claims against Spherix regarding any Spherix patent without good faith negotiations and ninety-day notice. (*Id.* ¶ 3.) If Cisco is able to stand in Charter's shoes, then Cisco has violated Charter's standstill agreement. On the very same day that this Court dismissed Charter's claims against Spherix, Cisco asserted counts against Spherix on the Frantz patents. (D.I. 31.) Cisco did so without any notice and without any good faith negotiations. (Hayes Decl. ¶ 11.) The fact that Charter dismissed its actions against Spherix demonstrates that there is no pressing case and controversy between Charter and Spherix, and hence none between Cisco and Spherix.

### B.   Spherix Does Not Belong in This Case.

As set forth in Bockstar's opening brief in support of its Motion to Dismiss, Spherix should not be added to this action. Cisco's counts against Spherix do not arise from the same transaction, occurrence or series of transactions or occurrences as any other disputes in this litigation. Spherix is an independent, publicly traded company that is not an affiliate of any party in this case. (*Id.* 3.) The two patents owned by Spherix (the Frantz patents) relate to VLAN technology. (Cisco Exs. 5, 22.) None of the other 27 patents are part of the Frantz patent family, and Cisco does not allege that any of those 27 patents relate to VLAN technology. (Cisco Exs. 1-4, 6-23; Bockstar Exs. 1-6.) Cisco's FRAND claims against Spherix are based on allegations that the Frantz patents are essential to the use of IEEE standards 802.3ac, 802.1ah, and 802.1q. (D.I. 31 ¶¶ 47-49, 160, 540, 545-47, 556, 561-63, 859, 868.) Cisco does not allege that any of the other patents relate to these standards. In short, the Frantz patents are not part of "

the same transaction, occurrence, or series of transactions or occurrences" as required for proper joinder. Fed. R. Civ. P. 20(a)(2)(A).

In addition, the Court should exercise its discretion to refuse joinder to "avoid[] prejudice and delay, ensur[e] judicial economy, [and] safeguard[] principles of fundamental fairness." *In re EMC*, 677 F.3d 1351, 1359 (Fed. Cir. 2012) (citation and internal quotation marks omitted). To force Spherix to address a two patent dispute with Cisco in a mega-case with 29 patents, 93 counterclaims, and five parties would unduly burden Spherix and would undermine judicial economy. This Court is already addressing disputes between Spherix and Cisco in another litigation. *Spherix Inc. v. Cisco Systems Inc.*, No. 1:14-cv-00393-SLR, Complaint (D.I. 1) (D. Del. Mar. 28, 2014). There is no reason for the Court to address an additional alleged dispute between Spherix and Cisco concerning two patents in this mega-case. Spherix should be dismissed from this action.

## CONCLUSION

For the foregoing reasons, Spherix's Motion to Dismiss Plaintiffs' Complaint should be granted, and Spherix should be dismissed from this case.

Dated:          August 25, 2014                    Respectfully Submitted:

By: */s/ Damien Nicholas Tancredi*

_____
Damien Nicholas Tancredi (DE No. 5395)
*Attorney for Counterclaim Defendant*,
Spherix Incorporated
Cozen O'Connor
1201 North Market Street Suite 1001
Wilmington, DE 19801
Telephone: 302.295.2034
Facsimile: 302.250.4356
Email: dtancredi@cozen.com

Walter E. Hanley, Jr
John R. Kenny
Lewis V. Popovski
Mark A. Hannemann
*Attorneys for Counterclaim Defendant*,
Spherix Incorporated
KENYON & KENYON LLP
One Broadway
New York, NY  10004
Telephone: 212.425.7200
Facsimile: 212.425.5288
Email: WHanley@kenyon.com
Email: JKenny@kenyon.com
Email: LPopovski@Kenyon.com
Email: MHannemann@kenyon.com

17